IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RODNEY WASHINGTON,

|                          |                    |
|--------------------------|--------------------|
| Petitioner,              | OPINION AND ORDER  |
| v.                       | 14-cv-208-wmc      |

GARY BOUGHTON, Warden,
Wisconsin Secure Program Facility,

Respondent.[1]

---

State inmate Rodney Washington has filed a petition for a writ of habeas corpus, challenging his state court conviction in Milwaukee County Case No. 00CF1310 under 28 U.S.C. § 2254.  The respondent has filed an answer and both parties have submitted briefing.  Because Washington is not entitled to the relief sought, his petition will now be dismissed.

## BACKGROUND

On March 16, 2000, shortly before the statute of limitations was set to expire, the State filed a John Doe complaint in Milwaukee County Case No. 00CF1310, charging "John Doe # 5" with four counts of first-degree sexual assault with use of a dangerous weapon, one count of second-degree sexual assault with use of force, and three counts of robbery.  John Doe # 5 was identified in the caption of the complaint by a specific DNA profile.  All of the crimes were alleged to have occurred between March 27, 1994, and

---

[1] Gary Boughton succeeded Tim Haines as Warden of the Wisconsin Secure Program Facility. Therefore, Boughton is automatically substituted as the proper respondent pursuant to Fed. R. Civ. P. 25(d).

January 14, 1995.  Relying on the criminal complaint itself, the circuit court found probable cause and issued an arrest warrant for John Doe # 5 the same day the complaint was filed.

On June 25, 2007, over seven years after issuing an arrest warrant in Milwaukee County Case No. 00CF1310, the Wisconsin State Crime Lab matched Washington's DNA to DNA found on each of the victims.  The State promptly filed an amended criminal complaint, naming Washington as the defendant.  Following a trial, a jury found Washington guilty of four counts of first-degree sexual assault with the use of a dangerous weapon and three counts of second-degree sexual assault of a child.  The circuit court then sentenced Washington to imprisonment for 100 years.

On direct appeal, Washington argued that the trial court lacked personal jurisdiction over him because the criminal complaint and arrest warrant that were filed in 2000 did not identify him with reasonable certainty and therefore failed to toll the statute of limitations.  Reasoning that the complaint was deficient, Washington argued further that his trial counsel was ineffective for failing to file a motion to dismiss.  In addition, Washington argued that the trial court erred when it denied his request to represent himself at trial and his alternative request for substitution of counsel.

The Wisconsin Court of Appeals rejected all of Washington's arguments on the merits and affirmed the conviction.  *See State v. Washington*, 2013 WI App 55 347 Wis. 2d 550, 830 N.W.2d 723 (unpublished).  The Wisconsin Supreme Court denied Washington's petition for review, *see State v. Washington*, 2013 WI 87, 350 Wis. 2d 729,

838 N.W.2d 637 (unpublished), and the United States Supreme court denied his request for a writ of certiorari.  *See Washington v. Wisconsin*, 134 S. Ct. 1313 (2014).

In his pending federal habeas corpus petition, Washington raises essentially the same claims that he presented on direct appeal.  The respondent argues that Washington's first ground for relief fails as a matter of law because it articulates, at most, a state law claim.  The respondent argues further that none of Washington's claims warrant relief.


OPINION

To prevail, a federal habeas corpus petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c), 2254(a).  In deciding whether a habeas corpus petition merits relief, a reviewing court looks to the "last reasoned state-court opinion" to address the petitioner's claims.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *see also Ford v. Wilson*, 747 F.3d 944, 949 (7th Cir. 2014) ("[O]ur inquiry focuses entirely on what occurred in the state court.  In so doing, we look at 'the decision of the last state court to rule on the merits of the petitioner's claim.'") (citation and quotation omitted).  To the extent that Washington's claims were addressed on the merits by the Wisconsin Court of Appeals, he must show that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or reaches a different conclusion than the Supreme Court based on materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000).  A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *See Brown v. Payton*, 544 U.S. 133, 141 (2005); *McNary v. Lemke*, 708 F.3d 905, 913 (7th Cir.), *cert. denied*, 134 S. Ct. 136 (2013).  In this context, an "unreasonable application of" federal law means "objectively unreasonable, not merely wrong; even 'clear error' will not suffice."  *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)).

The standard outlined in § 2254(d)(1) is exacting and "highly deferential," *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 15 (2013), demanding that state courts be given "the benefit of the doubt." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786 (2011). Relief is authorized only in cases "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Richter,* 131 S. Ct. at 786.

To prevail, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.  In addition to the "formidable barrier"

4

posed by this standard, *Titlow*, 134 S. Ct. at 16, the petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Alternatively, a petitioner must show that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(2). None of petitioner Washington's challenges begin to overcome this extraordinarily high bar.

## I.   Sufficiency of the Criminal Complaint

Washington first contends that the criminal complaint filed in March 2000 was insufficient to identify him with reasonable certainty and, therefore, did not toll the statute of limitations for the charged offenses. If so, the complaint should have been dismissed for lack of personal jurisdiction.

The respondent correctly notes that the sufficiency of a state criminal charging instrument presents, at most, an issue of state law. So is application of the state statute of limitation in this instance. *See* Wis. Stat. 939.74(1); *State v. Jennings*, 2003 WI 10, ¶¶ 15-27, 259 Wis. 2d 523, 657 N.W.2d 393 (outlining the legislative history of the Wisconsin criminal statute of limitation, tolling and the sufficiency of a criminal complaint for personal jurisdiction).

Because Washington did not fairly present a federal claim concerning the criminal complaint on direct appeal, respondent argues that he has procedurally defaulted such a

claim on federal habeas review.   *See, e.g.*, *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Ward v. Jenkins*, 613 F.3d 692, 696–97 (7th Cir. 2010).   While a habeas petitioner *may* overcome procedural default by demonstrating cause for the default and actual prejudice, this would require a showing that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 7 750 (1991).   Here, Washington neither attempts to demonstrate cause, nor to show that any other exception to the doctrine of procedural default applies.   Accordingly, Washington is procedurally barred from pursuing any review of a potential federal constitutional claim concerning the sufficiency of the state's charging instrument.

Moreover, because there is no federal constitutional right to a grand jury indictment in state prosecutions, *see Hurtado v. California*, 110 U.S. 516 (1884), the sufficiency of a state charging instrument is governed by state law.   *See Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984) (observing that a state charging instrument is fatally defective only when there are no circumstances under which there could be a valid conviction based on that instrument, and that "determination can be made *only* by looking to the law of the state" (emphasis in original)).   In that respect, the sufficiency of a state indictment "is not a matter for federal habeas corpus relief unless the indictment is so defective that the convicting court had no jurisdiction." *Evans v. Cain*, 577 F.3d 620, 624 (5th Cir. 2009).

Unfortunately for Washington, the Wisconsin Court of Appeals already considered this argument, and it concluded rather persuasively that "the original complaint and arrest

warrant were sufficiently specific to toll the statute of limitations and to confer the trial court with personal jurisdiction" for the following reasons:

> "Personal jurisdiction in criminal cases involves the power of the circuit court over the physical person of the defendant." [*State v. Dabney*, 2013 WI App 108, ¶ 10, 264 Wis. 2d 843, 851, 663 N.W.2d 366]. In order to confer personal jurisdiction: (1) a complaint or indictment must be filed stating that there is probable cause to believe that a crime has been committed and that the defendant probably committed it, and (2) there must be compliance with the relevant statute of limitations.[2] *Id*.

> Throughout his brief, Washington argues that the original complaint and arrest warrant failed to identify him with "reasonable certainty," thereby failing to toll the statute of limitations. However, in doing so, Washington mistakenly applies the "reasonable certainty" requirement to both the complaint and the arrest warrant. *See id*., ¶ 12. "The 'reasonable certainty' requirement is specific to the warrant only." *Id*. Wisconsin Stat. § 968.04(3)(a)4. requires an arrest warrant to "[s]tate the name of the person to be arrested, if known, or if not known, designate the person to be arrested by any description by which the person to be arrested can be identified with *reasonable certainty*." (Emphasis added.) The complaint need only set forth a written statement of the essential facts constituting the offense, including answering the question of who is being charged and why. *Dabney*, 264 Wis. 2d 843, ¶ 12, 663 N.W.2d 366. We interpret Washington's appeal as arguing that the original complaint insufficiently identifies "who" is being charged. Regardless, the complaint and arrest warrant here meet both standards.

> In *Dabney*, we held that a John Doe complaint and arrest warrant that identified the defendant by a DNA profile satisfied the requirements that a complaint state "who" is charged and that the arrest warrant describe the person to be arrested with "reasonable certainty." *Id*., ¶¶ 8–15. In [*State v. Davis*], we reaffirmed that "the State is permitted to file a complaint, which identifies the defendant only by his DNA profile." [2005 WI App 98, ¶ 32, 281 Wis. 2d 118, 698 N.W.2d 823]. The trial court relied on both *Dabney* and *Davis* when finding that the original complaint and arrest warrant here adequately identified Washington. Washington attempts to distinguish this case, arguing that the complaints and arrest warrants in *Dabney* and *Davis* included the defendants' entire DNA profile, whereas here, the complaint and

---

[2] The parties agree that the statute of limitations for Washington's crimes in 1994 and 1995 was six years. *See* Wis. Stat. § 939.74(1) (1993–94). Washington does not argue that the original complaint was not filed within the statute of limitations.

arrest warrant did not include a DNA profile, but rather, only included the locations of six DNA markers that are common to all human beings.

While Washington is correct that the original complaint and arrest warrant in this case do not include an individual DNA profile, we conclude that they are nevertheless specific enough to describe who committed the crime and do so with reasonable certainty.

* * *

As noted by the State, and left unchallenged by Washington, the original complaint set out in exacting detail how the DNA samples in this case were collected, stored, and analyzed. Moreover, it explicitly stated that the defendant in this case is the individual whose DNA "[m]atch[es]" the DNA collected from the victims, and as the complaint notes, the chances of a random match for a nonrelative are substantially greater than one in a billion. While Washington finds fault with the fact that the actual DNA profile was not included in either the original complaint or the arrest warrant, the language in each requiring the defendant to be the individual who "[m]atch[es]" the DNA on file at the locations listed in the complaint and warrant is sufficient to describe "who" with "reasonable certainty." *See Dabney*, 264 Wis.2d 843, ¶ 15, 663 N.W.2d 366 ("a DNA profile is arguably the most discrete, exclusive means of personal identification possible").

* * *

Given the specificity in the rest of the complaint, and the language stating that the defendant is the individual whose DNA "[m]atch[es]" the DNA profile collected through the process described, the failure to include the specific DNA in the original complaint or arrest warrant is not dispositive.

*State v. Washington*, 2013 WI App 55, ¶¶ 17-23, 347 Wis.2d 550, 830 N.W.2d 723

(footnote [renumbered] in original).

As the state court's decision reflects, the question whether a state trial court was deprived of jurisdiction by a fatally defective indictment was squarely presented to the Wisconsin Court of Appeals, which held that the trial court had jurisdiction. To the extent that Washington's claim relies solely on state law and on the Wisconsin court's

interpretation of its own law, his claim is not cognizable on federal habeas corpus review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.").

## II.    Ineffective Assistance of Counsel

Washington also contends that he was denied the right to effective assistance of counsel because his attorney failed to file a motion to dismiss the complaint for lack of jurisdiction. Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Strickland*, 466 U.S. at 687.

Washington's ineffective-assistance claim was rejected by the Wisconsin Court of Appeals for much the same reason it rejected his attack on the sufficiency of the complaint.  Having concluded that the original complaint and arrest warrant were sufficient to confer the trial court with jurisdiction, the court found that "Washington's trial counsel could not have been ineffective for failing to raise a meritorious claim[.]"

9

*Washington*, 2013 WI App 55, ¶ 16, 347 Wis. 2d 550, 830 N.W.2d 723 (following the standard outlined in *Strickland*).

As a result, the central question here is not whether '"the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable — a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)). Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* (citing *Youngblood v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, this standard is "doubly deferential" on habeas corpus review. *Id.*; *see also Richter*, 131 S. Ct. at 788 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted).

Regardless of the standard, as the Wisconsin Court of Appeals noted, Washington's argument that the trial court lacked jurisdiction was doomed by pre-existing authority. *See Dabney*, 2003 WI App 108, 264 Wis. 2d 843, 663 N.S.2d 366; *Davis*, 2005 WI App 98, 281 Wis. 2d 118, 698 N.W.2d 823. Washington's defense counsel testified at a hearing on post-conviction review that he chose not to pursue dismissal based on defects in the complaint and arrest warrant because such an argument was foreclosed by precedent upholding the validity of John Doe warrants in Wisconsin. *See* Dkt. # 23, *Post-Conviction Hearing Trans*. at 41-42, 47-48. Washington does not otherwise show that a motion to dismiss would have been successful if one had been filed.

10

Under these circumstances, defense counsel is not deficient for failing to file a meritless motion or objection.  *See Northern v. Boatwright*, 594 F.3d 555, 561 (7th Cir. 2010); *see also United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003) (a lawyer has "no duty to make a frivolous argument").  Absent a showing that counsel's performance was deficient and that he suffered prejudice as a result, Washington cannot establish that the state court's decision was unreasonable.  Therefore, Washington is not entitled to relief on this claim.

## III.    Denial of the Right to Proceed *Pro Se*

Washington next contends that the trial court violated his constitutional rights by denying his request to represent himself, which he first made on the day of trial.  The trial court denied his last-minute request, noting that the case involved complicated DNA evidence from multiple victims of sexual assault, all of whom Washington would have to cross-examine.  The trial court also noted that Washington's irrational behavior and lack of decorum led to the conclusion that he was not competent to represent himself.

While the Sixth Amendment generally guarantees a defendant the right to have counsel present at all critical stages of a criminal proceeding, it also includes the right of a competent criminal defendant to represent himself at trial.  *See Faretta v. California*, 422 U.S. 806, 835-36 (1975).  However, because an accused who elects to represent himself relinquishes the traditional benefits associated with the right to counsel, a defendant who invokes this right must first make a knowing and intelligent waiver of his right to counsel.

11

*Faretta*, 422 U.S. at 835 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938)). Thus, before allowing a defendant to represent himself, a court must conduct a two-step inquiry: (1) to ascertain that the defendant is competent to waive the right to counsel, where competence might appear to be at issue; and (2) to "satisfy itself that the [defendant's] waiver of his constitutional rights is knowing and voluntary." *Godinez v. Moran*, 509 U.S. 389, 400-01 (1993).

In this case, the trial court did not undertake a *Faretta* colloquy at step two because it concluded as an initial matter that Washington was not competent to represent himself. The Wisconsin Court of Appeals affirmed the trial court's decision, observing that there were "numerous facts in the record to support the trial court's finding that Washington was not competent to represent himself."

> "Whether a defendant is competent to proceed *pro se* is 'uniquely a question for the trial court to determine.'" [*State v. Imani*, 2010 WI 66, 326 Wis. 2d 179, ¶ 37, 786 N.W.2d 40 (citation omitted)]. "'It is the trial judge who is in the best position to observe the defendant, his conduct and his demeanor and to evaluate his ability to present at least a meaningful defense.'" *Id*. (citation omitted). Appellate "review is limited to whether the [trial] court's determination is 'totally unsupported by the facts apparent in the record.'" *Id*. (citation omitted).
>
> * * * *
>
> The trial court accurately noted that DNA evidence was central to the State's case. There was no dispute that the four victims had been sexually assaulted. All four testified that they were accosted by a stranger who said he had a gun, took them to a secluded area, and forced them to have mouth-to-penis intercourse; he also had penis-to-vagina intercourse with two of the victims. The victims described their assailant as a black man with a pockmarked or scarred face, but none of them identified Washington. In short, the DNA evidence was critical to determining Washington's guilt, and Washington needed to be able to understand and decipher that evidence to properly represent himself.

* * *

The record shows that Washington's behavior leading up to his request to proceed *pro se* on the eve of trial was irrational and disruptive. In his written request to proceed *pro se*, Washington mentions a complaint he filed with the Department of Justice, the Director of State Courts, and the clerks of the circuit court and court of appeals, in which he asks that charges be brought against the trial court, the prosecutor, and defense counsel "for fabricating two John Doe arrest warrants and a complaint on the dates of Feb. 14, 2008 and March 3, 2008." Washington maintained throughout the trial court proceedings that the original arrest warrant did not bear a court seal, that the John Doe warrant that the prosecutor produced in 2008 was a forgery, and that he was the victim of an elaborate plot between defense counsel, the State, and the trial court.

Defense counsel did not share in Washington's belief that the warrant lacked a court seal, and informed the court that Washington's fixation on his fabrication theory left Washington unable "to get beyond the motion issues and deal with the case itself and how to proceed with the trial and discuss the strategy." In fact, Washington's obsession with a conspiracy theory led to frequent disruptions in the courtroom, during which Washington interrupted and stalled proceedings, and in some instances refused to participate in proceedings or even physically come to court.

Such irrational and obsessive behavior led defense counsel to question Washington's competency to stand trial. And while, after an evaluation, it was ultimately determined that Washington was competent to stand trial, the trial court could reasonably and rationally rely on that behavior to conclude that Washington was not competent to represent himself. His inability to recognize and follow proper courtroom decorum or to identify and argue legitimate legal issues in his own defense, made it logical to conclude that Washington would not be able to properly focus on and understand the complicated DNA evidence that was critical to the State's case. *See State v. Marquardt*, 2005 WI 157, ¶ 61, 286 Wis. 2d 204, 705 N.W.2d 878 ("the record must demonstrate an identifiable problem or disability that may prevent a defendant from making a meaningful defense"). As such, the trial court did not erroneously exercise its discretion when it denied Washington's motion to proceed *pro se*.

*State v. Washington*, 2013 WI App 55, ¶¶ 29-35, 347 Wis. 2d 550, 830 N.W.2d 723.

According to the United States Supreme Court, "the Constitution permits judges

to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." *Indiana v. Edwards*, 554 U.S. 164, 177-78 (2008).   To determine whether a particular defendant has the requisite competence to represent himself, Wisconsin courts are generally required to "consider factors such as 'the defendant's education, literacy, fluency in English, and any physical or psychological disability which may significantly affect his ability to communicate a possible defense to the jury.'" *State v. Klessig*, 211 Wis. 2d 194, 212, 564 N.W.2d 716 (1997) (quoting *Pickens v. State*, 96 Wis. 2d 549, 569, 292 N.W.2d 601 (1980)).

Likewise, the Supreme Court has recognized that a court properly pretermits self-representation by a defendant who deliberately engages in serious, obstructionist misconduct.   *See Faretta*, 422 U.S. at 835, n.46 ("The right of self-representation is not a license to abuse the dignity of the courtroom.   Neither is it a license not to comply with relevant rules of procedural and substantive law.").

The findings of fact made by the Wisconsin Court of Appeals are supported by the trial transcripts, which show that Washington requested leave to represent himself on the scheduled day of trial, that he made irrational arguments and that he engaged in disrespectful, disruptive behavior during the proceeding.   (Dkt. # 15.)   Moreover, Washington does not refute these findings, which are presumed correct for purposes of federal habeas corpus review. *See* 28 U.S.C. § 2254(e)(1).   Based on this record, Washington's claim of competence was wholly undermined by his irrational, disruptive

14

behavior, the state court did not unreasonably apply *Faretta* or any other clearly established precedent from the United States Supreme Court with regard to the right of self-representation.   Accordingly, Washington is not entitled to relief on this claim.

## IV.    Request for New Counsel

Finally, after the trial court denied Washington's request to represent himself, Washington requested a different lawyer.  With the trial about to start, the trial court understandably denied that request.  Washington nevertheless contends that the trial court violated his rights by refusing his request for a new lawyer.

The Wisconsin Court of Appeals disagreed, concluding that the trial court properly exercised its discretion:

> While Washington is correct in his assertion that indigent defendants are guaranteed the right to appointed counsel, "this guarantee does not include the right to the particular attorney of the defendant's choosing." *See State v. Darby*, 2009 WI App 50, ¶ 28, 317 Wis. 2d 478, 766 N.W.2d 770.  Whether to grant a defendant's request for new counsel is a matter within the trial court's discretion. *Id*. We must uphold that "discretionary decision if the [trial] court logically interpreted the facts, applied the proper legal standard to the relevant facts, and used a rational process to reach a reasonable conclusion." *Id*. Having reviewed the record, we conclude that the trial court properly exercised its discretion here.

> Washington complains that the trial court denied his request for a third attorney "based solely on [the] timing" of his request and contends that the breakdown in communication between himself and his lawyer went far beyond mere disagreement over strategy.  The record belies his contention.

> The record shows that the primary problem between Washington and his attorney was strategy, in particular, his attorney's refusal to pursue Washington's claim that the John Doe arrest warrant did not bear the court

15

seal and that the warrant in the file bearing the seal was a forgery.  We
agree with the State that the record shows that had the trial court
appointed a new lawyer, the same scenario undoubtedly would have ensued.
The trial court had already addressed Washington's concerns about the seal,
but Washington refused to let the issue go, allegedly believing the court to
be part of a conspiracy against him. Washington's compulsive unwillingness
to drop the warrant issue and discuss anything else about the case makes it
clear that he was unlikely to accept anyone appointed to represent him.

Furthermore, the trial court properly took into consideration whether
granting Washington's request for new counsel would unnecessarily delay
the administration of justice.  *See, e.g., State v. Jones*, 2007 WI App 248, ¶
13, 306 Wis. 2d 340, 742 N.W.2d 341. The crimes in this case had been
committed over twenty years earlier and Washington's request came on the
eve of trial.  Because there was simply no indication that Washington
would be any happier with new counsel than he had been with his two prior
lawyers, it was reasonable and rational for the trial court to conclude that
granting Washington's request would be an unnecessary delay in the
resolution of this case.  As such, we affirm the trial court's decision to deny
Washington's request for a new attorney.

*State v. Washington*, 2013 WI App 55, ¶¶  37-40, 347 Wis. 2d 550, 830 N.W.2d 723.

The Sixth Amendment right to counsel "guarantees a defendant the right to be
represented by an otherwise qualified attorney whom that defendant can afford to hire, or
who is willing to represent the defendant even though he is without funds." *United States
v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale, Chartered v.
United States*, 491 U.S. 617, 624-625 (1989)).   The Sixth Amendment does not guarantee
an indigent defendant the counsel of his choice.   *See Wheat v. United States*, 486 U.S. 153,
159 (1988) (observing that a defendant has no right to representation by an attorney
whom he cannot afford, who does not wish to represent him or who has a conflict of
interest); *United States v. Oreye*, 263 F.3d 669, 71 (7th Cir. 2001) ("[A]n indigent
defendant has a right to competent counsel but not a right to counsel of his choice[.]")

(citing *Caplin & Drysdale*, 491 U.S. at 624).  Likewise, the Sixth Amendment does not guarantee "a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 13 (1983).  Nor does it "give an accused the power to manipulate his choice of counsel to delay the orderly progress of his case." *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 952 (7th Cir. 1986) (internal quotation marks omitted).

In this instance, the trial court denied Washington's request for a new lawyer, noting that it was made on the day scheduled for trial, that the prosecution's witnesses were present, and that his appointed defense counsel (Washington's second lawyer) was prepared to try the case.  Washington does not show that the Wisconsin Court of Appeals erred in upholding the trial court's decision or that doing so resulted in an unreasonable application of clearly established Supreme Court precedent.  Because Washington has failed to demonstrate that any of his claims have merit, his petition will be denied.

## V.   Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner.  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S.

274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"   *Miller-El*, 537 U.S. at 336.   Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case.   For the reasons already stated, the court concludes that petitioner has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court.   Because reasonable jurists would not otherwise debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED that:

1. The federal habeas corpus petition filed by Rodney Washington is DENIED and this case is DISMISSED with prejudice.

2.  A certificate of appealability is DENIED.   If petitioner wishes he may seek

a certificate from the court of appeals under Fed. R. App. 22.

Entered this 16th day of August, 2016.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

19