UNITED STATES COURT OF APPEALS SEVENTH CIRUIT

RODNEY WASHINGTON
    Petitioner,

    v.

GARY BOUGHTON,
    Respondent

U.S.C.A. – 7th Circuit
RECEIVED

AUG 22 2016

GINO J. AGNELLO
CLERK

CASE No. 14-CV-208 WMC

Petitioner Petition for Certificate of Appealibility
Under 28 U.S.C. § 2253 of the Federal STATUTE And Fed. R. App. 22

Let the record reflect that the petitioner Washington is filing this certification of Appealibility to this court because the petitioner is in objection to the Western District of Wisconsin United States District Court decision in this case which was unreasonable and wrongful by all means.

let the record reflect that this is a miscarriage of justice. A grossly unfair outcome in a judicial proceeding, as when a defendant is convicted dispite a lack of evidence on an essential element of the crime. See "Unreasonable" in this context means something like lying well outside the boundaries of opinion. See Wood v. McBride, 430 F. 3d 813, 816-17 (Cir 7th 2005).

Let the record reflect that the Evidence that the petitioner Washington will be presenting to this court as documentary evidence will clearly speak for itself. For what the Wisconsin court system has done, whereas let the record reflect that the Wisconsin court system has clearly violated the petitioner Washington constitutional rights under the 4th Amendment 5th and 14th amendment to the United States Constitution, and has also violated the rules of the code of conduct under Federal statutes U.S.C.S Judicial conduct and disability proceeding 3H misconduct, which the United States Western District Court of Wisconsin turned a blind eye to in the petitioner writ of habeas corpus.

Whereas let the record reflect that this kind of vigilante justice is directed at the petitioner who is a people of color and who is financially challenged.

Also let the record reflect that the petitioner Washington is entitled to relief on his claim on the grounds that the petitioner Washington did indeed present his claim to the Court of Appeals, the trial court, and the Wisconsin Supreme Court as a Federal claim concerning the criminal complaint on direct Appeal, whereas the petitioner Washington did indeed fairly present it to the court of Appeals. Whereas let the record reflect that Washington has not procedurally defaulted such a claim on Federal habeas review.

Let the record reflect that your court has stated clearly, initially, the State court must have had a fair opportunity to consider a question of constitutional import before Federal collateral review on that question is appropriate Kurzawa v. Jordan 146 F.3d 435, 441 (7th Cir 1988) (citing Burgin v. Broglio, 900 F.2d 990, 996 (7th Cir 1990). See Also Patrasso v. Nelson 121 F.3d 297, 301 (7th Cir 1997).

Your Court has also stated, to provide the State with the necessary "opportunity" the prisoner must "fairly present" his claim in each appropriate court, State Court (including a state supreme court with power of discretionary Review), thereby alerting that court to the nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 1019, 1025 (7th Cir 2004). Also your court has stated, An inmate must present "both the operative facts and the legal principles that control each claim to the state judiciary." Wilson v. Briley, 243 F.3d 325, 327 (7th Cir 2001). See Also Ellsworth v. Levenhagen, 248 F.3d 634, 639 (7th Cir 2001).

Let the record reflect that your court has also stated that in determining whether a petitioner has fairly presented a federal constitutional claim to the state judiciary, the habeas court should examine four factors: (1) whether the petitioner relied on federal cases that engage in a constitutional analysis. Let the record reflect that the petitioner Washington did indeed relied on federal cases that engage in a constitutional analysis, Please see Exhibit 1A the petitioner Response to a No merit Report Filed By Donald C. Dudley Attorney of Law, and the Court of Appeals decision which is also attach to Exhibit 1A. Whereas let the record reflect that the petitioner States clearly on pages 5, 6, and 4 that the petitioner relied on Federal cases that engage in a constitutional analysis, citing Powe v. Chicago 644 F.2d 639, 646 (7th Cir 1981) on Page 4, And then again on page 5, citing United States v. Spilotro 800 F.2d 959, 963, (9th Cir 1986) And then again on Page 6, citing United States v. Jarvis 560 F.2d 494 (2 nd Cir 1977) Cert denied (***25) with dissent 435 U.S. 934 98 S.Ct. 511, 55 L Ed 2d 532 1978. Also citing United States v. Espinosa 485 U.S 968, 108 S.Ct. 1243, 99 L. Ed 2d 441 1987.

Also let the record reflect that your court stated (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts. Let the record reflect that the petitioner did indeed relied on state cases which apply a constitutional analysis to similar facts. Please see Exhibit 2A, the petitioner Post hearing Response Page 5, citing United States v. Spilotro and the State v. Belts cases, on the trial court level in the Milwaukee County Court house. Whereas let the record reflect that the petitioner did indeed relied on state cases which apply a constitution analysis to similar facts, citing State v. Belt 285 949, 961-62, 179 P.3d 443 (Kaw 2008) citing United States v. Spilotro, 800 F.2d 959, 963. (9th Cir 1986). Please see page 5 of Exhibit 2A.

Also let the record reflect that your court has also stated (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; let the record reflect that the petitioner did indeed fairly framed the claim in terms so particular as to call to mind a specific constitutional right. Please see Exhibit 3A on Direct Appeal to the Court of Appeals District one page 13, whereas let the record reflect that the petitioner Washington states clearly on page 13 which states Addictionally, this is a constitutional requirement under the 4th and 14th Amendment to the United States constitution citing Baker v. McCollan, 443 U.S 137 (1979) (indicating that an attack on the validity on a warrant could give rise to a claim under the Constitution; Also citing Powe v. Chicago, 644 F.2d 639 (7th Cir 1981) holding that an arrest warrant that incorrectly names the person to be arrested will usually be deemed insufficient to meet the Fourth Amendments particular requirement.

let the record reflect that your court has also stated (3) whether the claimant frames ex the claim in terms so particular as to call to mind a specific constitutional right, Please see exhibit 1A pages 4, 5, 6 and the court of Appeal District 4 decision. Also see exhibit 2A Page 5, And Also Exhibit 3A page 13, Whereas let the record reflect that the petitioner has fairly presented a Federal constitutional claim to the State judiciary.

Also let the record reflect that your court has also stated (4) whether the petitioner alleged a pattern that is. well within the mainstream of constitutional litigation. let the record reflect that once again the petitioner has alleged a pattern of Facts that is well with the mainstream of constitutional litigation. Please once again see exhibit 1A pages 4, 5, and 6, Also exhibit 2A Page 5 And Also Exhibit 3A Page 13, Also Exhibit 4A page 2 of the petition for Review stating criteria For Review which states (1) A Real and significant question of Federal or State law is presented. The first issue in this case is whether the complaint and warrant sufficiently identified washington directly implicates the Fourth Amendment to the United States constitution, and Article 1, S 11 of wisconsin constitution.

Let the record reflect that Judge Conley of the Western District United States District court of Wisconsin decision is Non sence, because washington did fairly present a Federal Claim concerning the criminal complaint not only on Direct Appeal, but Also on All of his arguements presented to the courts before he filed a direct Appeal, whereas the court of Appeals was well aware of the claim being Filed and presented as a Federal Claim not only on the criminal complaint, but also on the John Doe arrest warrant issued in this case. Also let the record reflect that on direct Appeal which is Exhibit 3A the petitioner states again on page 3 in his Argument which states statement of the case and facts.

Facts Relating on related to the insufficiency of the Criminal Complaint And Warrant, stating that the actual DNA profile of John Doe was not included anywhere in the complaint which makes the complaint invalid and the John Doe arrest warrant, the District Court Judge Conley and the court of Appeals District ONE of Wisconsin wants everyone to believe that the complaint was valid and that the petitioner has violated the law by not fairly presenting a Federal claim concerning the criminal complaint on direct Appeal.

Let the record Reflect that the Western District Court Judge of Wisconsin Conley stated that the Wisconsin Court of Appeals stated that the Circuit court obtains person Jurisdiction when two requirment are satisfied (1) An complaint or indictment must be filed stating probable cause to believe A crime has been committed and that the defendant probably committed it.

Also (2) states that a criminal prosecution may be commenced when a warrant or summons is issued, An indictment is found or information is filed Wis. Stats. 939. 74(1) See State v. Jennings 2003 WI. 10 P 1 259, Wis. 2d 523, 657, 2d 393. Also see Dabney 2003 WI App 108.
Let the record reflect that in Dabney the court held that a John Doe complaint and arrest warrant that identified the defendant by a DNA profile satisfied that a complaint state who is being charged, and that the arrest warrant describe the person to be arrested with reasonable certainty, the court of Appeal Also in the Davis case re affirmed that the State is permitted to file a complaint which identified the defendant only by his DNA Profile.
Let the record reflect that is the law of the land when it comes to issuing the DNA John Doe complaints and warrants, please see 150 U. P.A. L. Rev. 1079 Meredith A. Biebie Comments (2002) on meeting the Statute of Limitation or Beating it, when it come to the DNA John Doe Criminal complaint and arrest warrant, when issued.
Let the record reflect that the criminal complaint and arrest warrant in this case did not set forth the information thats require which the DNA profile satisfied the requirement that a complaint state "who is charged, and that the arrest warrant describe the person to be arrested with reasonable certainty, let the record reflect that this was not done in the petitioner case, whereas let the record reflect that the State only listed DNA location. Your Honor let the record reflect that the state only listed DNA location. in the criminal complaint and arrest warrant issued in this case which is common to all human being around the world, let the record reflect that the court of Appeals stated clearly that Washington is correct that the original complaint and arrest warrant in this case did not include an individual DNA Profile, And then turn around in stab the defendant in the back by stating that we concluded that they are nevertheless specific enough to describe who committed the crime and do so with reasonable certainty As set forth by the State, whereas let the record reflect that the court know that they are way out of line, because they the court is well aware that the DNA Profile in the criminal complaint and arrest warrant is the reasonable certainty in satisfied the requirement that a complaint state who is being charged, And that the arrest warrant describe the person to be arrested with reasonable certainty.
Also let the record reflect that the Court of Appeals District One was the First Court to Rule on this issue on the DNA Profile being listed in the warrant and court complaints, which let the record reflect that every court in this country has Follow the case law and the guide lines in the Dabney case of Wisconsin when it comes to the DNA profile being listed in the complaint, Arrest warrant or Affidavit.

(4)

Also let the record reflect that in the Western District United States court and the court of Appeals District one has bought into the State theory whereas that State is now using a different procedural and a Double standard whereas as on Monday the State wants ham and eggs and then on tuesday they want Beans and Rice, but let the record reflect that this is not Burger King, this is the courts whereas thare are laws and rules that everyone must follow, whereas in this case let the Record reflect that the DNA Profile in the John Doe complaint and arrest warrant that identified the Defendant by a DNA profile satisfied the requirements that a complaint state who is being charged and that the arrest warrant describe the person to be arrested with reasonable certainty, see Dabney 264 wis 2d 843 ¶ 15 stating that a (DNA profile is arguably the most discrete, exclusive means of personal identification possible), Let the Record reflect that now the United State District Court Judge Conley of the Western District Court in Wisconsin alone with the Wisconsin Court of Appeals district one Judges is Allowing the state to used this new set of principles permitting greater opportunity for one class of peoples than For Another, this Double Standard is based on a difference such as Race and many other improper reasons, which has lead directly to discrimination under the Federal law including title VII of the Civil rights Act,

Let the Record reflect that the Court of Appeal has stated along with Judge William Conley of the Western United State District Court of Wisconsin, states as noted by the State, And left unchallenged by Washington the original complaint set out in exact, ing detail how the DNA samples in this case were collected stored, and Analyed, the Court of Appeals And the United States district Court of the Western District of Wisconsin agree on, while Washington finds fault with the fact that the actual DNA Profile was not included in either the complaint on warrant, which is the reasonable certainty require in Answer the who is charged question for the complaint and that the Arrest warrant describe who is charged question for the complaint and that the Arrest warrant describe the person to be Arrest with reasonable certain,

Let the Record reflect that the petitioner Washington is not finding fault with the fact that the Actual DNA Profile was not included in either the complaint or the fact that the Actual DNA Profile was not included in either the complaint or warrant, because it should have been there For reasonable certain, and to toll the statute of Limitations from Running. please once Again see 150 U.P.A.L. Rev. 1079 on meeting the statute of Limitation or beating it using the John Doe complaints and warrant Also Dabney 264 wis 2d 843 ¶ 15 (stating that a DNA Profile is Arguably the most discrete exclusive means of person identification possible,

Let the record reflect that it is the State who is looking to Find fault, and that is in fault, because they are the ones who did not list the DNA Profile in the warrant on the complaint issued in the petitioner case thats required by law.

Let the Record reflect that the defendant State listed the DNA decoding as their
DNA Profile in this case in the Complaint and warrant please see the
April 28, 2008 Jury trial pages 19 And 25 whereas the State ADA Statement
can be found And Judge Wagner Statement can be found, ADA Norman Gahn
Statement can be found on Page 19 And Judge Wagner Statement can be found
on Page 25 of the petitioner Exhibit 5A, which the petition is presenting
to this Court as Documentary Evidence.

Also let the record reflect that the petitioner is Also presenting to this
Court as documentary evidence at this time exhibit 6A which is the
Jan 11, 2012 state response to defendant Post hearing Filing. Please see
page 2 whereas ADA Norman Gahn statement can be found, whereas the
State begin to used after stating on the record that that the
DNA Profile was listed in the complaint and warrant stating it to
be sworn to by Detective Gaglione who also stated that the DNA
profile was listed in the caption of the complaint and warrant,
these statements was Made April 28, 2008, but let the Record reflect
that on the Date of Sept 29, 2011 the Court conducted A hearing on
Washington post conviction motion. Two witnesses testified KAREN DAILY
A DNA expert and Washington trial attorney Scott F. Anderson, Please see
exhibit 2A page (1), whereas KAREN DAILY testified that the 2000
criminal complaint identifying John Doe #5 contained no DNA Profile,
but only six genetic loci, Daily further testified that the six loci
Are common to every person And that without more information they
cannot identify a single individual, and to identified an individual, A
specific DNA Profile must be develope from those six locations,
Let the Record reflect that once the DNA Expert exposed the State Argument
of the DNA Profile not being listed in the Caption of the complaint And
warrant as stated by the State on the Date of April 28, 2008 As being
listed in the Caption of the complaint and warrant, thats when the state
begin to used a difference Procedual And a Double Standard, whereas let
the Record reflect on the Date of Jan 11, 2012 he changed his position
on the Profiles being listed in the warrant, And begin to state that he
crafted the John Doe complaint And warrant to Account For specificity And
particularitys by requiring that John Doe having the matching DNA Profile at the
designated genetic locations listed in the caption of the complaint and warrant
issued in this case, A complete turn around from what was stated on April 28, 2008
that was sworn under OATH, on page 19 of exhibit 5A. Which Judge Wagner
Rule on As being VAlid see Judge Wagner Statements on Page (25) of Exhibit 5A.

Let the record reflect this to ADA Norman Gahn who has been using this trickery on the courts and suspects for a very long time now, because he has been well aware of the John Doe complaints and warrants from day one, issued that they where invalid because they only listed DNA locations in them that is common to all human beings. Also let the record reflect that ADA Norman Gahn was using these complaints and warrants for a tactical advantage in trial court and under false pretends, whereas he was not just using this skillful technique method for matching DNA profile at genetic locations, but let the record reflect that he was also using them for a tactical advantage in trial court stating that the DNA profile was listed in the caption of the complaints and warrants, knowing in having knowledge that it was not.

Whereas let the record reflect that the State was manipulating the courts of wisconsin with this misleading information which has lead directly to a wrong conviction by the courts, because of his trickery in vicious skillful ways.

Let the record reflect that the State and Respondent is still manipulating the court now with new information stating that the petitioner Washington did not fairly present a federal claim concerning the criminal complaint on direct appeal, This ruling by the District court is out of bounds, and the petitioner would just like to say that court got a lot of guts to say that the petitioner he is barred, because he did not fairly present a federal claim concerning the criminal complaint on direct appeal.

Let the record reflect that the Wisconsin court of Appeals court and the District court of the United State Western district along with the State and the Respondent has clearly violated the petitioner constitution rights on the ground that they have not fairly presented or respected the petitioner claim which is the John Doe complaint or Arrest Warrant did not set forth the Unique DNA profile thats required by law to state who is being charge in why in the complaint.

Under Wisconsin law either a valid complaint or a valid warrant is sufficient to toll the Statute of limitation see State v. Jenning 2003 WI. 10 ¶23, 259 Wis. 2d, 523, 657 N.W 2d. 393. In Washington case both the original complaint and warrant did not set forth a unique DNA profile, therefore the information was deficient, Therefore that complaint and warrant did not identify the petitioner with reasonable certainty. Dabney, 2003 WI. App 108, ¶ 12.

Let the Case law of United States v. Marion be upheld or accepted, because it has been usesed like a carpenter usesds his tods. And under false pretends and for a tactical advantage in trial court and he is now trying to used it again by stating that the patitioner washngto has procedurally defaulted his claim because he has not fairly presented a federal claim concerning the criminal complaint on direct appeal. Let the record that the State claim and the respondent claim along with the courts ruling should be REVERSE immediately by this court on grounds that it is them who has not being fairly presenting their claim or who are not following the law concerning the petitioner case. whereas let the record reflect that now that the State has brought this bogus claim to the court stating that the DNA Profile was in the complaint and warrant this court should bar the ADA from pacticing law in the State of wisconsin because of his Misconduct.

Let the record reflect that the Case Law of United States v. Marion 404, U.S. 307, 92 S. Ct, 455, 30 L. Ed 2d, 468 (1971), has stated whereas the court stated that the pre-indictmant delay may violate the due process clause if the delay "caused substantial prejudice to the Appellees right to a fair trial, and if the delay was an intentional devise to gain a tactical advantage over the accused.

Let the record reflect that the evidance the petitioner has presented to this court speaks for itself for what ADA Norman Gahw has done in this case, and he should be held Accountable for his Actions.

Whereas also let the record reflect that your court state "UNREASONABLE in this context means something like lying well outside the boundaries of permissible differences opinion. Citing Woods v. McBride, 430 F 3d, 813, 816–17 (7TH Cir 2005) (quoting Hardaway v. Young, 302 F. 3d 757, 762. (7th Cir 2002).

Also let the record reflect that also the State of Wisconsin Judges should be held to the same standard as the federal court judges when it comes to Misconduct, Affirmative misconduct and official misconduct. Whereas it states in the federal statute under U.S. C.S Judicial conduct and Judicial disability proceeding 3 H Misconduct, which state no judge shall use the judges office to obtain special treatment for friend or relative or having imprope discussion's with parties or counsel for one side in a case, let the record reflect that this is exactly what the wisconsin state court has done to the petitioner in this case who has been railroad by use of insufficient evidence, and corrupt violations of duties by a judge, which has lead directly to a wrongful conviction.

Let the record reflect that the petitioner is asking this court to grant the petitioner for certificate of Appealibility and also for permission to proceed in the 7th Circuit court of Appeals in Forma pauperis on the grounds that the petitioner Washington is poor. "Please see" the last six months Trust Account statements sheets, which is exhibit 7 A.

Let the record reflect that the United States District court of the western district of Wisconsin Judge William Conley denied the petitioner petition for writ of habeas corpus on the date of Aug 16, 2016; his reason for denying the writ of habeas corpus is that Washington is barred, because Washington did not fairly present a federal claim concerning the criminal complaint on direct Appeal.

Let the record reflect that petitioner Washington is in objection to that Ruling because that is not true, because Washington did indeed present his claim as a State and Federal claim not just in Direct Appeal but also in the other state courts of Wisconsin please see Exhibit 1A, 2A, 3A And 4A whereas the petitioner exhibit will show that Washington fairly presented his claim as a State and Federal claim concerning the complaint and warrant in all the state courts including on direct Appeal Also let the record reflect that the criminal complaint in this case was not a valid complaint, And was also being use in the trial court for a tactical Advantage stating that the DNA profile was listed in the caption of the complaint sworn under oath, and then in seeing that it was it, in that the complaint was insufficient, he turn Around 3 yrs later in used that same criminal complaint again against me, this time in the Post conviction hearing, stating that the complaint And warrant was crafted to Account for specificitys And particularities stating that John Doe have a Matching DNA profile at the designate genetic location listed in the complaint and warrant.

Let the record reflect that I was convict because the State claim that the DNA profile was in the caption of the complaint which the trial court agree in sentence me to 100 yrs in prison, then on Post conviction motion in hearing when the DNA expert witness testified that it was no DNA profile listed there in the complaint and warrant, he then changed his position in 2011 from the 2008 position, on the warrant and complaints, now he is using the same complaint again for a tactical Advantage this time claiming that the petitioner did not fairly present

(9)

A Federal Direct Appeal
Now once again the court Agrees with the state Argument, when the complaint is not even a valid complaint, how can the court in the state of Wisconsin not see this, whereas let the record reflect that there court was the frist to rule and convict on the validity of the DNA profile being listed in the warrant and complaint now every state in this country has follow Wisconsin Dabney case guidelines on the DNA profile must be listed in the John Doe complaint and warrant in order to be valid and that a DNA profile satisfied the requirement that a complaint state who is changed, and that the arrest warrant decribe the person to be arrested with reasonable certainty. Let the record reflect that this is a "mis carriage of justice" alone with "unreasonable" and at this time the petitioner is asking this court again to grant the petitioner with certificate of Appealibility under Fed. R. App. 22.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this Day 8-18-16

Signed By: Rodney Washington
532165

(10)

( Exhibit 1 A )

Wisconsin Court of Appeals
Office of the Clerk

110 East Main Street Suite 215
PO Box 1688
Madison, Wi 53701-1688

To David R. Schanker, Clerk of Court )  Case No.:  00CF001310
                                      )
Of Appeals,                           )  Response To No Merit Report
                                      )
            Plaintiff,                )
                                      )
    vs.                               )
                                      )
Rodney Washington #532165,            )
                                      )
            Defendant                 )
                                      )
---------------------------------------

        This report is being file in response to the no merit report Attorney

Donald C. Dudley has file under **Wis. Stat. 809.32** on the date of **October 1,**

**2009** with the Court Of Appeals stating the reason why the defendant case has

no merits grounds. Whereas at this time the defendant intent to show the

Court that this case do not just only have legal merits, but the defendant

also will prove that **Court Officials** and the **State Attorneys Office** alone

with the **Milwaukee Police Department** has committed a crime and also has

violated my **United States Constitutional Rights** by forging Court documents

purporting them to be made by another in a Court of law. This response to

the no merit report is also being file under **Haines v. Kerner 404 U.S. 519**

literal construction of prisoner litigation. And also against **Attorney**

**Donald C. Dudley** under **Wis. Stats. SCR 20:8.4 Misconduct.** Whereas it states

it is professional misconduct for a lawyer to: (C) engage in conduct

1

1   involving dishonest, fraud, deceit or misrepresentation which he has done in

2   this case.

3   Whereas at this time I will start by stating that the **Milwaukee County Court**

4   has violated the defendant **United States Constitution Fourth Amendment Right**

5   **Also Wis. Stat. 968.04 (3)(A)4** Whereas **Statements of facts**: By the Court Of

6   Appeals who has ruled in the **State v. Dabney 2003 App. 108 264 Wis. 2d**

7   **843,663 N.W.2d 366 2003 Wisc App Lexis 427 case**. Also in the **State v. Davis**

8   **2005  WI App 98 281 Wis.2d 118,698 N.W.2d 823 (2005)  case.**

9       Whereas the **Court Of Appeals** states that the **United States**

10  **Constitution Fourth Amendment** states (1) That an arrest warrant should

11  contain the name of the defendant, or if not known any name or description

12  by which the defendant can be identified with reasonable certainty. And

13  (2)An arrest warrant or supporting affidavit inclusion of a unique DNA

14  profile can qualify as a description by which a defendant can be identified

15  with reasonable certainty. Whereas let the record reflect mere listing of

16  DNA locations in the warrant or supporting affidavit cannot. Whereas the

17  John Doe #5 DNA arrest warrant that was issued in this case did not set

18  fourth the unique DNA profile of their subject, the John Doe #5 DNA arrest

19  warrant was a mere listing of DNA locations that's common to all human

20  beings, whereas it was a near complete lack of identifying information,

21  whereas neither the John Doe #5 arrest warrant nor the complaint or a

22  affidavit supporting them set forth the unique DNA profile of their subject.

23       Also the arrest warrant bears no seal purporting to be that of the

24  **Milwaukee County Court House**, and hadn't been "File" with the Clerk of

25  Courts. Pursuant to **Wis. Stats. 753.04** Writs how issued. The warrant

26  infirmity was a near-complete lack of identifying information and there was

2

1   no reason the state could not have particularly described the perpetrator

2   unique DNA profile in the warrant or the supporting affidavit, because if

3   the unique DNA profile was known it should have been sent out in the

4   warrant, and for that reason alone with many more reasons the warrants are

5   invalid and the prosecution of the defendant in the Milwaukee District Court

6   did not commence within the applicable Statute of limitations under Wis.

7   Stats. 939.74(1).

8        Also let the record reflect your Court has ruled that the Circuit

9   Court obtains person jurisdiction when two requirements are satisfied (1) An

10  complaint or indictment must be filed stating probable cause to believe a

11  crime has been committed and that the defendant probably committed it. See

12  State V. Smith 131, Wis. 2D 220,238,388, N.W. 2D 601 (1986). And (2) there

13  must be in compliance with the applicable Statute of limitations, see State

14  v. Pohlhammer 78 Wis. 2d 516,523,254 N.W. 2d. 468 (1977). Whereas it states

15  clearly to satisfy the Statute of limitations, an action must be commenced

16  before the statute expires. Your Court has stated clearly in a criminal

17  prosecution an action is commence when a warrant or summon is issued, an

18  indictment is found, or information is filed Wis. Stats 939.74 (1). See

19  State v. Jennings 2003 WI.10 P1 259, Wis. 2d 523,657,2d 393. Also See State

20  v. Dabney 2003 WI App 108.

21       Your Court has also stated clearly that the reasonable certainty is

22  specific to the warrant only, and that the particularity or reasonable

23  certainty requirement do not absolutely require that a person's name appear

24  in the complaint or warrant. When the name is unknown, the person may be

25  identified with the best description available, and that a John Doe arrest

26  warrant satisfied the particularity requirements, if it describes the person

1   occupation, his appearance, peculairities, place or other means of residents

2   of identification. Wisconsin case law suggest that the complaint and warrant

3   satisfy the sufficient standard when description clearly demonstrates that

4   the law enforcement authorities have probable cause to arrest a particular

5   person of committing a crime. Also see *Powe v. City of Chicago* 644 F 2d 639

6   646 (7th cir. 1981). Whereas let the record reflect that do not mean listing

7   DNA locations in the warrant that's common to all human beings as a **Profile**

8   which is D1S7, D2S44, D4S139, D5S110, D10S28, *and* D17S79. Which those are

9   DNA locations and don't identified anyone genetic code DNA profile in the

10  arrest warrants in order to commence the prosecution and thus avoid the

11  running of the statute. Let the record reflect that those types of warrants

12  were ruled on by Kansas Supreme Court v. Belt as being **Invalid Warrants.**

13  Whereas the State of Kansas District Court brought in to testified at the

14  hearing in the Belt case Dr. Dean Stetler, an Associate Professor in

15  Molecular Biosciences at the University of Kansas. Whereas Stetler testified

16  that the DNA profile listed in the complaints and warrants were common to

17  all human beings. Inessence the profile were merely addresses devoid of

18  identifying content:

19      Whereas statement of facts: The same information given in the DNA John

20  Doe warrant in Kansas in the Douglas S. Belt case is the same DNA

21  information given in the defendant Rodney Washington John Doe DNA arrest

22  warrant profile here in Wisconsin John Doe Warrant, which is D1S7, D2S44,

23  D17S79, D10S28, D4S139. Which is "Impossible" because Douglas S. Belt is not

24  my twin brother, but share's the same Genetic Code DNA profile in the John

25  Doe #5 DNA arrest warrant issued in the defendant case on 3-16-00. Please

26  pursuant to the case law on the State of Kansas Supreme Court v. Douglas S.

4

1  Belt 285 Kan. 949;179 P. 3d 443; 2008 Kansas Lexis 77. **And whereas the State**

2  **of Kansas State Attorneys Office Also Concedes that the warrants at issue**

3  **there contained insufficeint identifying information. Whereas the warrants**

4  **mentioned only DNA Locations that's common to all human beings.** And also

5  whereas the State position is that reference to the existence and the

6  location of the unique DNA autoradiographs in the supporting affidavit cured

7  the warrants lack of particularity problems.

8      Whereas let the record reflect that the **Supreme Court of Kansas**

9  directed there cases to two of there sister jurisdiction see. **People v.**

10  **Robinson** 156 Cal App 4th 508, 67 Cal. Rptr. 3d 392 (2007). Also see. **State v.**

11  **Davis** 2005 Wis. App 98, 281, Wis. 2d 118, 698 N.W. 2d 823 (2005), also **State**

12  **v. Dabney** 2003 WI App. 108, 264 Wis. 2d 843, 663 N.W. 2d 366{2003}.Whereas

13  the **State of Kansas Supreme Court** states clearly that they do not disagree

14  with **California**, nor **Wisconsin** proposition in the abstract, because Kansas

15  proposition is the same see. **Kansas. 22-2304**. But states clearly there case

16  is "**Concrete**". Because neither the John Doe warrants nor affidavits

17  supporting them set forth the unique DNA profile of their subject.

18  Also once again there was no reason the State could not have particularly

19  described the perpetrator unique DNA profile in the warrant or the

20  supporting affidavit in the defendant Rodney Washington case, because if the

21  unique profile was known it should have been set out in the warrant.

22      See eg. **United States v. Spilotro** 800 F 2d 959, 963 (9th Cir.1986) (one

23  factor relevant in appraising specificity whether government could have

24  included particulars at the time warrant issue). That **genetic information**

25  **was necessary to (***451) provide a evidentiary baseline for probable cause,**

26  **the fact that it would need to be verified scientifically once the defendant**

1   was seized did not eliminate the need for this baseline to be drawn in the

2   warrant in the first place. The affidavit to unattached, unsworn, extrinsic

3   evidence was insufficient to fulfill the Constitutional and Statutory

4   requirement and cure the defective warrants.

5       Also see United States v. Jarvis 560 F.2d 494 (2d Cir. 1977) cert.

6   denied (***25) with dissent 435 U.S. 934 98 S. CT. 511 , 55 L. ED 2d 532

7   (1978) . John Doe warrant without name, description by which defendant could

8   be identified with reasonable certainty invalid, could not be cured by

9   availability of extrinsic evidence arrest nevertheless because Federal agent

10  had probable cause for warrantless arrest. Also see United States v.

11  Espinosa 485 U.S. 968, 108 S CT. 1243, 99 L. ED. 2d 441 (1987). Previous

12  cases in which (*961) affidavits supplied information missing in warrants

13  simply provided little persuasive authority in these circumstances. Also

14  see, Comments: By Meredith A. Bieber 150 U. PA. L. Rev. 1079. In Meeting The

15  Statute or beating It, Using John Doe Indictment Based On DNA To Meet The

16  Statute Of Limitations.

17      Also I the defendant United States Constitution 5th and 6th  Amendment

18  "Due Process" Of The Law Rights has also  been violated. Whereas the State

19  delayed in filing the complaint and issuing an arrest warrant. Whereas the

20  State intentionally delayed this case to fabricate Court documents to

21  illegally arrest the defendant . Whereas the Original Complaint had a

22  backward Clerk of Court filing stamp date on it purporting to be put on by

23  another in a court of law with the date March 16, 2000 put on it.

24      Also two John Doe #5 arrest warrants one with no Court seal on it, and

25  neither had been file with the Clerk of Court, and then after I the

26  defendant seen that the March 16, 2000 John Doe #5 DNA arrest warrant was

1  defective because it did'nt have a Court seal on it,I directed my Attorney

2  to file a motion to dismiss because the warrant was insufficient to toll the

3  Statute of limitations,which the Attorney Scott F. Anderson filed on Feb.

4  29, 2008 which is a part of exhibit (23) that's when the State again delay

5  this case to again fabricate more illegally documents to the Court to

6  illegally keep the defendant incarcerated on the date of March 3, 2008,

7  whereas the State produced a second John Doe #5 DNA arrest warrant this time

8  with a Court seal on it, purporting to also been put on by another, which

9  was also Fabricated.

10    Whereas statement of facts: Whereas it was a completely different

11 warrant from the first warrant issued on Feb. 14, 2008 with no court seal on

12 it, and whereas the dates and signatures on both warrants was identically

13 the same every letter and numbers line up exactly the same on both warrants,

14 but the warrants are two different warrants, whereas the warrant with no

15 Court seal on it has writing all the way down the side, whereas the warrant

16 with the Court seal on it don't have anything going down the side which

17 indicates that the arrest warrant issued on Feb. 14, 2008 with no Court seal

18 on it was used to trace the dates and signatures to the March 3, 2008 John

19 Doe #5 DNA arrest warrant purporting it to be put on by another. Which is

20 exhibits (20) and (23) which those documents have been forge, which is

21 Forgery.

22    Whereas the State again used a tactical advantage which was improper

23 whereas the State created a tactical advantage for the State. Which the

24 State also did in Court on Augs 21, 2007 when Court Commissioner Gevena E.

25 Mckinley dismiss this case, because she had notice the backward filing stamp

26 date on the March 16, 2000 complaint, but still allow the State to cover

1  there tracks by stating the case was never dismiss, but past to amend the

2  complaint, Whereas those documents was being made up right in that courtroom

3  on the date of Augs. 21, 2007, so that the State could have a tactical

4  advantage against the defendant.

5        Whereas let the record reflect that once the complaint was dismiss on

6  Augs. 21, 2007 there was no valid complaint that the Court could review that

7  would resuscitate the now expired Statute of limitations. Also let the

8  record reflect that I the defendant 5th and 14th Amendment to the United

9  States Constitution also has been violated alone with. Art.I Sec. 8 of the

10 Wisconsin Constitution and Wis. Stats. 939.71 and Wis. Stats. 939.07.

11 Whereas the Double Jeopardy law should have applied Statute of limitations

12 violation. "Please" Pursuant to the Augs. 21, 2007 transcripts, also see P.7

13 lines 2-3 whereas Court Commissioner Gevena E. Mckinley dismiss this case in

14 this matter. Which is exhibit (26).

15       Also I would like the Court of Appeals to pursuant to the April 28

16 2008 pages 19-29 transcripts whereas ADA Norman Gahn admits that he had

17 issued a March 16, 2000  John Doe #5 arrest warrant in this case, that so

18 happens to be a extradition arrest warrant, but he ADA Norman Gahn admits

19 that he used a "Different Procedure" from the Dabney case and the Davis case

20 there in the Milwaukee County Court House. Whereas he had to go to Court

21 Commissioner Barry Slagle on Augs 8, 2007 to file a complaint to issue a

22 extradition warrant for Washington arrest, whereas that arrest warrant was

23 signed by Court Commissioner Barry Slagle on the date of Augs 8, 2007. Which

24 is exhibit (24). Also see Milwaukee Police Dept. Incident Report. Dated July

25 11, 2007.

26

1    Also let the record reflect that the Barry Slagle Augs 8, 2007 arrest

2   warrant was beyond the Statute of Limitations. Whereas the Milwaukee Circuit

3   Court had no "Jurisdiction" to hear the charges against the defendant Rodney

4   Washington in a Court of law in this case. Also if ADA Normam Gahn had a

5   John Doe #5 DNA complaint and arrest warrant that matched the defendant DNA

6   profile the defendant would have never been release from the Ill. prison on

7   the date of July 2, 2007, so where did those John Doe #5 DNA arrest warrants

8   come from in this case? Whereas let the record reflect they were fabricated.

9   Also see the April 29, 2008 transcripts. Also for the record I the

10  defendant is sending with this response to the no merit report all the

11  exhibits that would support my case, whereas the State fabricated court

12  documents to be used for a tactical advantage in this case to convict the

13  defendant. These exhibits also was sent off to the Department of Justice on

14  the date of March 4, 2009 in a Notice of Complaint whereas I the defendant

15  is seeking charges against the State of Wisconsin, Milwaukee State Attorneys

16  Office, under Wis. Stats. 943.38 For Forgery.

17      Also I have sent copies to Attorney Donald C. Dudley, and to the Court

18  of Appeals that same day, which the Clerk stated he had received the Notice

19  of Complaint, and accompanying documents and that regrettably the Court of

20  Appeals can only review matter that are pending before it in Accordance with

21  provisions of ch. 809 of the Wisconsin Statute, which at this time you do

22  not have a case pending in the Court of Appeals.

23      So I don't know if the Court of Appeals has those documents or the

24  Clerk, but in any event I the defendant is sending that information to the

25  Court of Appeals again, which is exhibit 20 thur 26, which exhibit (25) is

26  my DNA genetic code profile which is completely different from the DNA

1  genetic code profile given in the John Doe #5 DNA arrest warrants and

2  complaints, from the date of March 16, 2000 signed by **Judge John Dimotto**, or

3  so call signed by **Judge John Dimotto on March 16, 2000** to stop the Statute

4  of Limitations from running and to arrest whoever matches the genetic code

5  profile giving in the John Doe #5 DNA arrest warrant. Also in support of my

6  appeal I presented to the **Trial Court on July 15, 2008** in my defense

7  **exhibits 1-19** which I would like also for the Court to review. Also let the

8  record reflect your Court has ruled that a DNA John Doe arrest warrant is

9  valid, if it identified the suspect only by his genetic code profile in

10 order to commence the prosecution and thus avoid the running of the statute,

11 and that a genetic code describes a person with far greater precision than a

12 physical description or name. See **State v. Dabney** 2003 WI APP. 108 and **State**

13 **v.Davis** 2005 WI APP. 98.

14     But let the record reflect that the defendant **Rodney Washington** case

15 is **"Concrete"**. Because neither the John Doe warrant, compliant or a

16 affidavit supporting them set forth the unique genetic code DNA profile of

17 their subject to toll the Statute of Limitations from running. Also at this

18 time I am asking the Court to pursuant to **exhibits 20-26** and the filing of

19 the **Notice of Complaint** filed on **March 4, 2009**.  Also Wis. Stats. 972.14(2)

20 Statement before Sentencing on the date that of **July 15, 2008.** Whereas I

21 presented to the Court exhibits 1-19 as **Documentary Evidence under Wis.**

22 **Stats. 889.01** which **exhibits 1-19** will show that the State fabricated and

23 forge those documents that I had presented to the Court that date as forge

24 documents in this case on I the defendant sentencing day, before I was

25 sentence in Court on the date of **July 15, 2008**. To show that the State

26 intentionally used those documents for a tactical advantage against I the

1  defendant Rodney Washington to convict I the defendant in this case in a

2  Court of law, and by knowing and intentionally forging those documents to

3  the Court the State violated my **Civil Rights** alone with I the defendant

4  $5^{th}, 6^{th}$, 14th and 4th Amendment to the United States Constitution.

5      Whereas let the record reflect that **(1)** this case was Prejudice right

6  **from the start as a result of the** Misconduct **of the** Court Officials, the

7  State Attorneys Office, **and the** Milwaukee Police Dept. **as of the result of**

8  delaying, and delay that arose as a result of improper purpose, so as to

9  afford the State a tactical advantage over I the defendant in this case.

10      And **(2)** whereas for the record let it reflect that the State had

11  **knowledge of the defendant being incarcerated in the** Illinois State Prison

12  on the date of June 25, 2007 **and knew that the defendant would be release on**

13  July 2, 2007, **because the State never had a John Doe #5 DNA arrest warrant**

14  **that existed from the date of** March 16, 2000 **in this case that would match**

15  **the defendant DNA profile to the crime scene. So the State delay this case**

16  **until the State could fabricate Court documents for the year of** March 16,

17  2000 **then went to the Court to obtain an arrest warrant for the defendant**

18  **Rodney Washington on** Augs 8, 2007 **knowing that the** Statute of Limitations

19  **had expired in this case.**

20      But took the law into their own hands, by **Fabricating Court documents**

21  **for the year of March 16, 2000** purporting them to be made by another in a

22  Court of law, knowing that the John Doe #5 DNA arrest warrant at issue did

23  not match the defendant genetic code profile, but the State used them anyway

24  to there advantage with the help of the **Milwaukee County Court house**

25  **Officials** and the **Milwaukee Police Dept.** who had Knowleged of a crime being

26  committed in a Court of law, but looked the other way, whereas not only has

1  the State violated my **Civil Rights and United States Constitution Rights**,

2  but the State has also committed a crime of **Forgery under Wis. Stats.**

3  **943.38.**

4      **Also Statements of facts:** Whereas the **Wis. Supreme Court** states

5  clearly. As simple stated by the Court in the case law of **Pillsbury 31 Wis.**

6  **2d at 92.** Whereas the Court states in goes no farther then common sense

7  holding that there need not be the issuance of another arrest warrant when

8  the person is already being held in custody under another charge, because

9  the Court can think of no situation in which a defendant is more clearly in

10  custody as envisioned by the Miranda Court, than when a defendant is

11  confined in a prison or jail. Also see **State v. Jennings 2003 WI. 10.**

12      Also let the record reflect that I the defendant Rodney Washington was

13  in prison on **June 25, 2007** which **Illinois,** and **Wisconsin** knew, and all the

14  other States in the Country, but I the defendant was release on **July 2, 2007**

15  because there was no John Doe #5 DNA profile arrest warrant that ever

16  existed from the year and date of **March 16, 2000** that matched the defendant

17  DNA genetic code profile to the crime scene, or the defendant never would

18  have been release from prison on **July 2, 2007** , and that's a fact.

19      Whereas at this time I the defendant **Rodney Washington** is asking the

20  Court for a **"Immediately Release"** on the grounds that the original John Doe

21  #5 DNA arrest warrants and complaints was **Forge** and **Fabricated**, and were too

22  vague to meet the identification standards of the **Fourth Amendment to the**

23  **U.S. Constitution** and **Wis. Stats. 968.04 (3) (A) 4** and, thus could not toll

24  the **Statute of Limitations.**

25      Also see **150 U. PA. L. Rev. 1079** In Meeting The Statute Or Beating It.

26  Using John Doe Indictment Based On DNA To Meet The Statute Of Limitations.

1   Also statement by **Judge Jeffery A. Wagner** whereas he states clearly in that

2   **case law review. Whereas he upheld a warrant that identified the suspect**

3   **only by his own DNA profile,** and states theres no description more

4   reasonable certainty than DNA, and added that there was no evidence in the

5   **State v. Dabney 2003 WI App. 108** case that the police and prosecutors had

6   deliberately delay charging the suspect.

7       Whereas let the record reflect that **Judge Jeffery A. Wagner** also was

8   the defendant **Rodney Washington trial Court Judge in Milwaukee County Court**

9   **House, whereas Judge Jeffery A. Wagner "Intentionally Err"** in his ruling

10   against the defendant, because he knew that the defendant DNA profile was

11   not in the John Doe #5 DNA arrest warrant, because he has ruled before in

12   his courtroom on DNA warrants and arrest warrants whereas he knew that the

13   John Doe #5 DNA arrest warrants from the year of **March 16, 2000** to toll the

14   Statute of limitations must identified the suspect only by his own DNA

15   genetic code profile in order to commence prosecution, whereas he knew the

16   defendant DNA profile was not in the John Doe #5 DNA arrest warrant or the

17   original complaint. Also see **State v. Davis 2005 WI. App. 98 P.9 Court of**

18   **Appeals decision on the DNA identification,** which is **exhibits (30).**

19       Whereas let the record reflect that **Judge Jeffery A. Wagner** and the

20   **Prosecutor Norman Gahn** and **Milwaukee Det. Lori Gaglione** not only

21   deliberately delayed charging the defendant, but also illegally convicted

22   the defendant, by knowing in having knowledge of forged documents being used

23   in a Court of law to illegally convict the defendant, whereas the defendant

24   ask the **Judge Jeffery A. Wagner** to pursuant to the **Wis. Stats. S.C.R 60. 03**

25   whereas it states that a Judge shall respect and comply with the law at all

26   times. Whereas let the record reflect that he did not in this case against

1   the defendant Rodney Washington. Your Court has the evidence, and I am

2   sending **exhibits (27)** to the court which is the case law <u>150 U. PA. L. Rev.</u>

3   <u>1079 p.11</u> which is where <u>Judge Wagner</u> statements can be found. Alone with

4   the first man in the country to be arrest in conjunction with a John Doe DNA

5   arrest warrant that identified him only by his DNA profile, when State

6   computers matched his genetic code DNA with the genetic code giving in the

7   John Doe DNA arrest warrant. Also see <u>People v. Robinson 156 Cal. App. 4th</u>

8   <u>(2007)</u> John Doe DNA arrest warrant identification profile with his genetic

9   code listed in it.

10      <u>Also Statements of facts</u>: Whereas it state clearly on <u>p.11 in exhibit</u>

11   <u>(27)</u> in the case law of the <u>150 U. PA. L. Rev. 1079</u> review of the law, that

12   the DNA profile information in the Defendant <u>Rodney Washington John Doe #5</u>

13   <u>DNA arrest warrant</u> is only listing of DNA locations, whereas it states

14   clearly on p.11, which is the same exact information giving also in the

15   <u>State of Kansas, John Doe DNA arrest warrant issued in the Douglas S. Belt</u>

16   <u>cases</u>, which is D1S7, D2S44, D4S139, D5S110, D10S28, and D17S79, which those

17   are DNA locations that's common to all human beings, and don't identify

18   anyone. See <u>Supreme Court of Kansas v. Belt 285 Kan.949; 179 p.3d 443, 2008</u>

19   <u>Kan. Lexis 77.</u> Also I am sending the <u>Court Record Events Sheet</u> that shows

20   the events on the warrants and dates which is **exhibit (29).** Also I am

21   sending the Court **exhibit (28)** which is the <u>Wisconsin DNA Databank Sample</u>

22   <u>information sheet</u> that shows the date the defendant DNA was collected in

23   went on file here in the <u>State of Wisconsin</u> which that date was <u>Sept. 18,</u>

24   <u>2008.</u>

25      This document will show that the defendant DNA profile was never on

26   file here in Wisconsin, nor was it ever a John Doe #5 DNA arrest warrant on

1   file with the defendant genetic code profile in it, and the State or the

2   National DNA Database. **Statement of Facts**: Because if so,  The defendant

3   would have never been release on July 2, 2007 from the Illinois State

4   Prison, "Especially" seeing that Wisconsin was informed of a  match on the

5   date of June 25, 2007. And they had a John Doe #5 arrest warrant, and that's

6   a fact.

7        But let the record reflect that the State intentionally delayed this

8   case until Augs 8, 2007 to illegally forge a March 16, 2000 John Doe #5 DNA

9   Complaint and Arrest warrant to the Court, because the State never had a

10  John Doe #5 DNA arrest warrant from the year of March 16, 2000 to match the

11  defendant to the crime scene, so the State used a tactical advantage to

12  illegally fabricate Court documents to the Court to illegally prosecute and

13  convict the defendant with false and illegal documents purporting them to be

14  made by another in a Court of law.

15       **Statement of facts**: Because there is not one Judge in the United

16  States that's going to find probable cause to issue a John Doe DNA arrest

17  warrant without there being a DNA genetic code profile in the complaint

18  that's filed, or a profile description by which the defendant can be

19  identified with reasonable certainty drawn in the baseline of the John Doe

20  complaint, or to find probable cause to issue a John Doe DNA arrest warrant

21  knowing that there is no John Doe genetic code DNA profile in it, which is

22  common sense. Also once again see. **United States v. Spilotro 800 F. 2d 959**

23  **963, (9th Cir. 1986)** whereas the **United States Supreme Court** states clearly

24  that at the time warrant issued. That genetic information was necessary to

25  provide an evidentiary baseline for probable cause. And affidavits

26  reference to unattached, unsworn, extrinsic evidence was insufficient to

1  fulfill the Constitutional and Statutory requirement and cure the defective

2  warrants.

3     Also see **United States v. Jarvis 560 F.2d 494 (2d Cir.1977) cert.**

4  **denied with     dissent 435 U.S.934 98 S. Ct. 511,55 L. Ed 2d 532 (1978).**

5  John Doe warrant without name, description by which defendant could be

6  identified with reasonable certainty invalid, could not be cured by

7  availability of extrinsic evidence. Your Court has all the evidence which

8  is **Concrete.**  Also I will like for the Court to see. **18 Widener L.J. 309**

9  **Law review 2009 Widener University School Of Law Widener Law Journal.**

10 Whereas they speak of **Handwriting Comparison** whereas they states clearly

11 that the **Handwriting Experts Examiners** claim that no two people write alike

12 and that no one person writes the same way twice. They argue, therefore

13 that no two writing are ever identical. Whereas let the record reflect in

14 the defendant Rodney Washington case that the two John Doe #5 arrest

15 warrant signatures of the **Judge John Dimotto** and **ADA Norman Gahn** are

16 exactly identical which is "impossible", because the arrest warrants are

17 two completely different warrants issued, once again see **exhibits 20 and**

18 **23**, whereas those warrants were traced and forged.

19    **Also see. 18 Widener L.J. 309 Review Of The Law 2009.** Whereas they

20 speak of the **Statute Of Limitations** and **John Doe warrants** in the **State v.**

21 **Belt Supreme Court Of Kansas cases, whereas the ruling was obvious**. Whereas

22 the John Doe warrants and complaints listed DNA locations **D2S44**, and **D17S79**

23 in them that was common to all human beings and that there was no DNA

24 profile listed in the warrants which those warrants was ruled on as invalid

25 warrants, and also serves as a lesson for prosecutor's seeking to use such

26 warrants to toll the Statute of Limitations.

1    <u>Also Statement of Facts: Whereas let the record reflect that there is</u>

2    <u>no DNA profile listed in the John Doe #5 arrest warrants in the defendant</u>

3    <u>Rodney Washington case either which is also obvious.</u> Whereas I am asking

4    your Court for an "<u>Immediately Release</u>" at this time. On the grounds once

5    again that the <u>Original John Doe #5 DNA Arrest warrants and Complaints</u> was

6    <u>Forge</u> and <u>Fabricated,</u> and were too vague to meet the identification

7    standards of the <u>Fourth Amendment to the U.S. Constitution</u> and <u>Wis. Stats.</u>

8    <u>968.04(3)(A)4,</u> and thus could not toll the <u>Statute Of Limitations.</u>

9    Also let the record reflect clearly that the prosecutor filed charges

10   under <u>Wis. Stats. 940.225(1); 943.32(1)(a)(2); 940.225(2)(a)</u> in the 2000

11   John Doe #5 complaint and warrant for purposes of tolling the statute of

12   limitation and nowhere does it state in the amended complaint or warrant

13   that John Doe #5 had been charged under any other <u>Wis. Statute</u>, whereas at

14   that time this case was barred by the statue of limitation under <u>Wis. Stats.</u>

15   <u>939.74(1).</u> Whereas the court had <u>no jurisdiction</u> to hear the charges against

16   the defendant in a court of law, or to convict him under <u>Wis. Stats.</u>

17   <u>948.02(2)</u> which was amended information filed on the date of <u>June 9, 2008</u> a

18   charge that the defendant was never charged with by the prosecutor in the

19   original John Doe #5 2000 complaint or the 2007 amended complaint filed in

20   this case. Whereas let the reflect that this is the same prosecutor in this

21   case who has already fabricated and forged court documents to the Court to

22   used for a tactical advantage, knowing that the statue of limitations had

23   expired in this case already, but continue to tamper with evidence to cover

24   up his own wrong doing in this case which is obvious.

25   Whereas let the record reflect that prosecutors are not allow to and

26   cannot add amended information filing charges to John Doe complaints and

1   warrants that has been ruled on as invalid court documents by the **United**

2   **States Supreme Court** already. **Whereas statement of facts:** Prosecutors cannot

3   add amended information to John Doe warrants or complaints that's no good.

4   Which is common sense, also once again see **United States v. Spilotro** 800

5   F.2d 959,963,{9th Cir. 1989}. Whereas genetic information was necessary to

6   provide a evidentiary baseline for probable cause to issue a warrant,

7   whereas extrinsic evidence was insufficient to fulfill the constitution and

8   statutory requirement and cure the defective warrant.

9        Also see. **United States v. Jarvis** 560 F.2d {2d Cir. 1977} cert. denied

10  with dissent 435 U.S. 934 98 S. ct. 511,55 L. Ed 2d 532 {1978}. Whereas John

11  Doe warrant without name description by which defendant could be identified

12  with reasonable certainty invalid, could not be cured by the availability of

13  extrinsic evidence. Whereas let the record reflect that the statute of

14  limitations had expired in this case under **Wis. Stats. 939.74 {1}.**

15       Also once again see. **Kansas Supreme Court V. Belt** 285 Kan. 949,179,

16  P.3d 443, 2008 Kan. Lexis 77. **Whereas the courts had no jurisdiction to hear**

17  **the charges against Belt.** Whereas let the record reflect that the defendant

18  **Rodney Washington** cases is no different from **Belt cases**. Whereas the

19  **Milwaukee Circuit Court** had no right to **amend information** and **charge** the

20  defendant under **Wis. Stats. 948.02 {2}** on the date of **June 9 2008** in this

21  case. Whereas the court **"intentionally"** err once again, because the Court

22  knew that they had **no jurisdiction** to hear the charges against the defendant

23  in this case in the first place.

24       Also let the record reflect clearly that the **Wisconsin Supreme Court**

25  upheld cases. Having concluded that the filing of the amended information

26  was barred by the statute of limitations, whereas neither should the amended

1   information been allowed in those cases, whereas the Court had no

2   jurisdiction to hear the charges against the defendants. See. **State v.**

3   **Pohlhammer** 78 Wis. 2d 516; 254 N.W. 2d 478; 1977 Wisc. LEXIS 1262. Also see.

4   **State v. Jennings 2003 WI 10.**

5       Also let the record reflect that once this case is resolved in a

6   decision is made. That any complaint presented by prosecutor's to the Court

7   after that point constitute **Double Jeopardy**, whereas there will be no valid

8   complaint that the Court could review that would resuscitate the now expired

9   statute of limitations governing this case.

10      Also let the record reflect that I also have a John Doe #5 arrest

11  warrant with no Court seal on it and it hasn't been filed with the Clerk of

12  Court in this case, but it has **ADA Norman Gahn** signature on it alone with

13  **Judge John Dimotto** signature on it with the date **March 16, 2000,** but no one

14  has taken the blame or addressed that John Doe#5 DNA arrest warrant in this

15  case yet.

16      Whereas the **Milwaukee County Court** and the **District Attorney office**

17  and the **Attorneys** in this case has continued to down play that John Doe #5

18  arrest warrant with no Court seal on it whereas they continue to play the

19  dumb role like that warrant has never existed in this case. Whereas they

20  have continue to cover up that warrant by keeping it out of the **Milwaukee**

21  **County Court House** files in this case, but let the record reflect that on

22  the date of **March 17, 2008** I filed on my behalf with the Court of Appeals a

23  writ of Habeas corpus which I filed that warrant along with the motion my

24  attorney at that time **Scott F. Anderson** filed to dismiss this case because

25  of that warrant being fabricated and defective with no Court seal on it,

26  whereas let the record reflect that the Court of Appeal acknowledge those

1  documents I sent to the Court of Appeals, but stated that Washington has

2  not established that he does not have another adequate remedy of law, and

3  if he is convicted he may raise these claims in an appeal from the judgment

4  of conviction dated **April 30, 2008** which is **exhibit (31).** Whereas let the

5  record reflect that I am raising these claims in my appeal right now as I

6  speak, because those John Doe warrant were forged and fabricated, and they

7  do not identified anyone genetic code profile in them, whereas let the

8  record reflect they only list DNA locations that's common to all human

9  beings in them which is obvious, whereas there is no if's or but's about

10  it, because that's a fact in this case. Whereas the evidents is concrete.

11  Whereas Statement facts: Whereas DNA expert Janssen states that the unknown

12  person can be expected to have a profile, whereas the John Doe #5 complaint

13  or warrant don't identified anyone. Please see John Doe #5 complaint. **p. 6**

14  "Thank You Very Much"

15          Dated This Date October 7, 2009

16

17                                      By: Rodney Washington

18                                      Rodney Washington #532165
                                        WSPF

19                                      P.O. Box 9900
                                        Boscobel, WI  53805-0900

20

21

22

23

24

25

26

                                 20



OFFICE OF THE CLERK
# WISCONSIN COURT OF APPEALS

110 EAST MAIN STREET, SUITE 215
P.O. BOX 1688
MADISON, WISCONSIN 53701-1688
Telephone (608) 266-1880
Facsimile (608) 267-0640
Web Site: www.wicourts.gov

**DISTRICT I/IV**

RECEIVED
JAN 18 2011
Office of State Public Defender
Post-Conviction Division
Milwaukee, WI

August 31, 2010

*To:*

Donald C. Dudley
Law Office of Donald C. Dudley
230 W. Wells St., Ste. 600
Milwaukee, WI 53203

Gregory M. Weber
Assistant Attorney General
P.O. Box 7857
Madison, WI 53707-7857

Karen A. Loebel
Asst. District Attorney
821 W. State St.
Milwaukee, WI 53233

Rodney Washington 532165
Wisconsin Secure Program Facility
P.O. Box 9900
Boscobel, WI 53805-9900

You are hereby notified that the Court has entered the following order:

---

2009AP2235-CRNM      State of Wisconsin v. Rodney Washington (L.C. # 2000CF1310)

Before Vergeront, P.J.

Appointed counsel for Rodney Washington filed a no-merit report under WIS. STAT. RULE 809.32 (2007-08). After our independent review of the record, we conclude there are four issues that counsel must review and take further action on.

The first issue relates to the statute of limitations. Washington was found guilty by a jury on seven counts of sexual assault arising from four incidents. All the crimes were alleged to have occurred between August 1994 and January 1995. The State filed a criminal complaint in March 2000 naming John Doe no. 5 as the defendant. The State filed an amended complaint in 2007 naming Washington as the defendant. According to the amended complaint, the State had recently obtained a DNA match between evidence in these cases and a DNA sample from Washington. For purposes of this order, we assume that the six-year statute of limitations would have expired in 2000 and 2001 if this prosecution was not commenced by then.

In his response to the no-merit report, Washington argues that this prosecution was commenced after expiration of the statute of limitations. He cites case law holding that a prosecution is commenced by the issuance of an arrest warrant or summons, the issuance of an indictment, or the filing of an information. He argues that because no indictment was issued in this case, and no information was filed until 2007, the timeliness of the prosecution depends on the issuance of the arrest warrant.

The circuit court docket entries show that an arrest warrant was issued in this case on March 16, 2000, and a complaint was filed March 17, 2000. The record includes these documents. Washington argues that the warrant and complaint were not sufficient to timely commence the prosecution because they did not sufficiently identify him. This argument does not appear to have been previously raised in circuit court.

Washington's argument is that the John Doe arrest warrant and complaint did not specifically identify him by his DNA profile, but instead described only genetic locations common to all human beings. The complaint and the warrant use the following description of the defendant in the caption: "Doe, John #5, Unknown Male with Matching Deoxyribonucleic Acid (DNA) Profile at Genetic Locations D1S7, D2S44, D4S139, D5S110, D10S28, AND D17S79."

Washington relies on a Kansas Supreme Court case in which the court held that arrest warrants lacked sufficient identification when they contained only a listing of genetic locations. *State v. Belt*, 179 P.3d 443 (Kan. 2008). In *Belt*, the defendant was facing sexual assault prosecutions in several counties. *Id.* at 444-47. The complaints and warrants were not identical from county to county, but they all contained similar language describing the defendant, such as

2

"John Doe described by deoxyribonucleic (DNA) analysis as LOCI D2S44 and D17S79." *Id.* Belt argued that the DNA loci set out in the warrants ("D2S44 and D17S79") were shared by every human being; that autoradiographs of specific DNA banding patterns were not attached to the complaints, warrants, or supporting affidavits; and that these documents lacked any other identifying information. *Id.* at 447.

To support his motion, Belt presented a DNA expert who testified that the DNA loci listed in the complaints and warrants were common to all humans, and are essentially mere addresses devoid of identifying content. *Id.* at 448. He testified that "D" designates human; the following number designates the chromosome observed; "S" stands for single locus, meaning a sequence is found only one time on the chromosome; and the final number describes the location of the sequence. *Id.* According to the expert, to have more specifically identified a particular person, the documents should have recited that the defendant John Doe's DNA was analyzed at these two loci, and then the documents should have described the genetic information contained at those loci. *Id.*

At the Kansas Supreme Court, the prosecution conceded that the warrants contained insufficient identifying information. *Id.* at 449. The court agreed with that concession. It noted that cases from California and Wisconsin support the general proposition that a warrant identifying the person by description of the person's unique DNA profile, or incorporating by reference an affidavit containing such a unique profile, can satisfy constitutional and statutory requirements for particularity. *Id.* at 450.

The court continued: "We do not disagree with this proposition in the abstract. But this case is concrete. Here, neither the John Doe warrants nor the affidavits supporting them set forth

the unique DNA profile of their subject." *Id.* The court stated that the defect was not merely a technical irregularity that could be overlooked, because the "infirmity was a near-complete lack of identifying information." *Id.* It further noted that "there was no reason the State could not have particularly described the perpetrator's unique DNA profile in the warrants or their supporting affidavits." *Id.*

The prosecution argued that that the facial insufficiency of the warrants was cured by material in the affidavits that were submitted to obtain the warrants. However, the court rejected this argument by stating that the "affidavits' references to unattached, unsworn, extrinsic evidence was insufficient to fulfill the constitutional and statutory requirements and cure the defective warrants." *Id.*

In the no-merit report, Washington's attorney does not acknowledge a possible distinction between genetic locations common to everyone and specific identifying information found at those locations. The no-merit report discusses the statute of limitations, and concludes that Wisconsin cases have "upheld the use of DNA indicators on warrants to meet the identification and descriptors for the filing of warrants and criminal complaints," and thus toll the statute of limitations. The report cites two Wisconsin cases, *State v. Dabney*, 2003 WI App 108, 264 Wis. 2d 843, 663 N.W.2d 366 and *State v. Davis*, 2005 WI App 98, 281 Wis. 2d 118, 698 N.W.2d 823.

In *Dabney*, the prosecution was commenced by a complaint naming John Doe # 12 as defendant. However, the opinion does not describe the specific language in the complaint or warrant. The opinion states only: "The DNA profile was included in the caption of the complaint." *Dabney*, 264 Wis. 2d 843, ¶4. We described Dabney's argument as being "that

4

because the complaint and arrest warrant identified him solely by his DNA profile, the 'reasonable certainty' requirement of WIS. STAT. § 968.04(3)(a)4 was not satisfied." *Id.*, ¶11. We stated that the "question to be addressed is whether a complaint and an arrest warrant, which identify the defendant/suspect as 'John Doe' *with a specific DNA profile*, satisfies the particularity and reasonable certainty requirements." *Id.*, ¶13 (emphasis added).

We concluded:

> Here, the complaint and arrest warrant identified the suspect as "John Doe" and *set forth a specific DNA profile*. We conclude that for purposes of identifying "a particular person" as the defendant, a DNA profile is arguably the most discrete, exclusive means of personal identification possible. … Thus, we agree with the State's arguments that the DNA profile satisfies the "reasonable certainty" requirements for an arrest warrant and answers the "who is charged" question for a complaint.

*Id.*, ¶15 (emphasis added).

In *Davis*, the prosecution was commenced with a complaint naming a John Doe defendant, but again we did not describe specifically what the documents said regarding DNA. *Davis*, 281 Wis. 2d 118, ¶6. However, we did state: "The complaint identified the defendant *by a particular DNA profile* using the RFLP technique." *Id.*, ¶30 (emphasis added). A later change in DNA analysis technology resulted in a match to Davis. *Id.*, ¶7. Davis argued that his case was distinguishable from *Dabney* because the original complaint identified the DNA profile using a different technology than in the amended complaint which eventually led to his identification. *Id.*, ¶33.

We concluded:

> The DNA was the same. Both the RFLP-DNA profile and the PCR-DNA profile contained Davis's DNA exclusively. His

> argument elevates form over substance. *The State specifically identified Davis's DNA in a complaint* before the statute of limitations expired. The fact that the type of DNA analysis technology changed does not somehow alter the accuracy of the identification. The person with the DNA in the original complaint was the same person with the DNA in the amended complaint -- Davis. Thus, his claim that the analysis was different is of no consequence. His DNA did not change, but remained the same.

*Id.*, ¶34 (emphasis added).

Washington's appellate counsel did not file a supplemental no-merit report addressing Washington's argument that the warrant and complaint are not specific enough to identify him. In light of: (1) the ***Belt*** opinion, (2) the language in the Wisconsin cases about "specific" or "particular" DNA profiles; and (3) the documents before us in Washington's case, we conclude that counsel must address whether it would be frivolous to argue that a complaint and/or warrant must set forth DNA information specifically identifying the defendant, rather than mere generic DNA locations; and, whether the documents in Washington's case complied with any such requirement. Because the issue does not appear to have been raised in circuit court, it may be necessary to frame it in terms of ineffective assistance of counsel or some other indirect legal theory.

In addition to this issue raised by Washington, we have identified several other issues that require further review. The following background relates to the second and third issues.

On a day that was originally intended to be the start of the trial, Washington attempted to discharge his attorney.[1]  Washington was apparently willing to represent himself.  The court advised Washington that he would have to comply with the rules of the court and the rules of evidence, and asked Washington if he knew the rules of evidence.  Washington appeared to concede that he did not.  The court then moved to a discussion of whether Washington was competent to represent himself.  It concluded that he was not competent because of the DNA evidence in this case.  The court noted that such evidence is scientific "and very few people outside the legal profession and scientists know how that works."  The court stated that "to develop and cross-examine those witnesses, you have to have some knowledge in doing that."  The court also stated that it is "problematic also since this is a sexual assault case for you to quite frankly cross-examine the witnesses."

Later in that hearing, Washington continued to state that he did not want current counsel to represent him, and wanted another attorney.  The court denied that request on the ground that current trial counsel and the State were ready to proceed with trial.  Washington then stated that he would not attend the trial.  At a hearing the next day, the court ordered an evaluation of Washington for his mental competency to proceed, and the trial was postponed.  At the start of the trial, Washington continued to express lack of confidence in his attorney and, for the most part, refused to attend the trial proceedings.

---

[1]  This is in the transcript appearing in the record as item no. 58.  The typed date on the front of the transcript is April 28, 2008, but there is a handwritten notation changing it to April 29.  This change appears to be incorrect.  The circuit court docket entries show that there were morning and afternoon proceedings on April 28, but only one proceeding on April 29.  In contrast, with the handwritten change, the record contains only one transcript for April 28, but two for April 29.

A defendant has a constitutional right to represent himself, and the standards for denying such a request are described in *State v. Imani*, 2010 WI 66 (case no. 2008AP1521-CR, July 7, 2010), among other cases. The standards for a trial court's denial of a request for a new appointed attorney are discussed in, among other cases, *State v. Darby*, 2009 WI App 50, ¶¶28-36, 317 Wis. 2d 478, 766 N.W.2d 770. The no-merit report does not discuss either of these issues, and therefore we do not know if counsel has concluded these issues are frivolous and, if so, why.

The fourth issue relates to sentencing. At sentencing, the State argued for an indeterminate sentence of four consecutive terms of twenty-five years, with concurrent terms on other counts, for a total of one hundred years. In response, Washington's attorney stated: "I calculated my recommendation exactly the same, 25 years on each of the counts. ... [J]ust by chance that's the way I viewed the case as well. So it becomes a joint recommendation as to the time to be imposed." Defense counsel's role at sentencing is normally not to present his own objective view, but to make an argument for the benefit of the defendant. Here, it is not obvious what benefit to the defendant might come from counsel's complete concession to the State's argument. Appellate counsel must consider whether it would be frivolous to argue that this was ineffective assistance of counsel at sentencing.

In summary, appellate counsel must review the following issues: (1) whether the arrest warrant or complaint identified Washington sufficiently to toll the statute of limitations; (2) whether the trial court erred by denying Washington's request to proceed without counsel; (3) whether the court erred by denying Washington's request to have new counsel appointed; and (4) whether Washington's trial counsel was ineffective at sentencing by agreeing with the State's recommendation.

If counsel concludes that one or more of these issues has arguable merit, and Washington wants to pursue it, then counsel can advise us of that by letter, and we will dismiss the appeal and extend the time to file a postconviction motion. If Washington declines to pursue any of these issues, counsel can inform us of that by letter, and we will continue this appeal as a no-merit appeal. If counsel concludes that none of these issues have arguable merit, but Washington still wants to pursue one or more of them, then counsel must explain his conclusion in a supplemental no-merit report.

We emphasize that nothing in this order should be read as indicating that we have reached any conclusion about any point discussed in it. The purpose of this order is to indicate only that we have found additional questions that must be addressed, and to discuss possible lines of argument that should be considered on those questions. If any of these issues are litigated later, in circuit court or this court, it will still be necessary for counsel to provide a complete presentation to demonstrate the correctness of any argument made.

IT IS ORDERED that by October 15, 2010, appellant's counsel shall respond to this order by letter or supplemental no-merit report.

---

*A. John Voelker*
*Acting Clerk of Court of Appeals*

9

Exhibit 1A



OFFICE OF THE CLERK

# WISCONSIN COURT OF APPEALS

110 EAST MAIN STREET, SUITE 215
P.O. BOX 1688
MADISON, WISCONSIN 53701-1688
Telephone (608) 266-1880
Facsimile (608) 267-0640
Web Site: www.wicourts.gov

### DISTRICT I/IV

October 27, 2010

*To:*

Donald C. Dudley
Law Office of Donald C. Dudley
230 W. Wells St., Ste. 600
Milwaukee, WI 53203

Gregory M. Weber
Assistant Attorney General
P.O. Box 7857
Madison, WI 53707-7857

Karen A. Loebel
Asst. District Attorney
821 W. State St.
Milwaukee, WI 53233

Rodney Washington 532165
Wisconsin Secure Program Facility
P.O. Box 9900
Boscobel, WI 53805-9900

You are hereby notified that the Court has entered the following order:

2009AP2235-CRNM        State of Wisconsin v. Rodney Washington

Before Vergeront, P.J.

Appointed counsel for Rodney Washington has moved for a ninety-day extension of the time we previously set for counsel to address certain additional issues. The ground for the motion is the serious illness of his wife.

One of the issues we identified for further review is whether the case against Washington was commenced within the statute of limitations. If Washington prevails on that issue, the complaint may be dismissed and Washington would be released from custody, unless there is some other charge on which he is being held.

While we conclude that counsel has good cause for the requested extension, we are concerned about whether additional delay would be fair to Washington, given the potential

remedy that he might obtain in postconviction proceedings. The unpredictability of the medical situation counsel faces increases this concern.

Accordingly, we ask counsel to advise us of whether he predicts that he will be able to file the necessary response within the requested extension time, without the need for further extension. If counsel cannot be confident of being able to proceed within that time, it may be that counsel should promptly contact the Office of the State Public Defender and suggest that it appoint a replacement. Although normally we would not inquire of counsel in this fashion, this is an unusual situation in which the uncommonly difficult situation faced by counsel interacts with an uncommon argument that may lead directly to dismissal of all charges against the defendant.

IT IS ORDERED that by November 15, 2010, appellant's counsel shall respond to this order.

A. John Voelker
Acting Clerk of Court of Appeals

( Exhibit 2 A )

STATE OF WISCONSIN          CIRCUIT COURT          MILWAUKEE COUNTY

STATE OF WISCONSIN,

                Plaintiff,

    v.                                       Case No. 2000 CF 1310

RODNEY WASHINGTON,

                Defendant.

## DEFENDANT'S POST HEARING RESPONSE

      On September 29, 2011, the court conducted a hearing on Washington's postconviction motion. Two witnesses testified at the hearing—Karen Dailey, a retired State Crime Laboratory analyst, and Washington's trial attorney Scott Anderson. By remand from the Wisconsin Court of Appeals, this court is tasked to decide whether the State's 2000 complaint charging John Doe #5 included a DNA profile identifying the defendant. Because the complaint fails to specify a DNA profile it fails to identify the defendant with sufficient particularity, and thus the statute of limitations bars prosecution for the four charges under Wis. Stat. § 940.225.

      At issue is whether the six genetic markers or "loci" provided in the caption of the complaint and warrants in this case identified the defendant with specificity. Karen Dailey testified that the 2000 criminal complaint identifying John Doe #5 contained no DNA profile, but only six genetic loci. Dailey further testified that the six loci are common to *every* person and that without more information they cannot identify a single

1

individual.  Instead, to identify an individual, a *specific DNA profile[1]* must be developed from those six locations.  Dailey testified that in the case of Short Tandem Repeat ("STR") DNA testing, such a profile can be expressed through a set of numbers in parentheses following the genetic loci.  In the case of restriction fragment length polymorphism ("RFLP") testing, which was used in this case, Dailey testified that a profile would be developed and the profile could be described in writing[2] or through the use of an autoradiograph or "autorad," which is a photograph showing the alleles at each given location. *See* William C. Thompson, *A Sociological Perspective on the Science of Forensic DNA Testing*, 30 U.C. DAVIS L. REV. 1113, 1124-1130 (1997).  Dailey further testified that at the time the complaint was issued such autorads were created by the Wisconsin crime lab and kept in the file with their lab notes.  Defense counsel was unable to secure the autorads created in this case, however, an example of an autorad created to compare two profiles is attached as Exhibit A.

Despite the fact that a DNA profile had been created, there was no description or autorad showing the profile in in the original warrant or complaint filed in this case.  Wisconsin courts have held that a criminal complaint must identify a defendant with

---

[1]      The legislature currently defines a DNA profile as an "individual's patterned chemical structure of genetic information." WI Stat. § 939.74(2d)(a).  The State correctly notes that this statute, and its tolling provisions, does not apply to Washington's case because it was enacted after the statute of limitations had expired. State's Post-Hearing Memorandum at 6.  However, the legislature had already defined a DNA profile in its Criminal Trials chapter, and this definition included the exact same language—"analysis of deoxyribonucleic acid resulting in the identification of an *individual's patterned chemical structure* of genetic information." WI Stat. § 972.11(5)(a) (emphasis added).

[2]      For examples of a written expression of specific DNA profiles developed through RFLP analysis, *see* What-When-How, *Restriction Fragment Length Polymorphism*, Crankshaft Publishing, http://what-when-how.com/forensic-sciences/restriction-fragment-length-polymorphism/.  Like profiles developed through STR testing, written expressions of RFLP profiles were entered into CODIS, the DNA profile database, to determine whether a sample matched a known profile in CODIS. *See* John M. Butler, FORENSIC DNA TYPING 439 (Mark Listewnik et al. eds., 2nd Ed. 2005) ("DNA profile information inputted into CODIS over the years has included (RFLP)(restriction fragment length polymorphism).")  Although Dailey did not testify to this point, Washington is prepared to offer further expert testimony on this issue should the court find it necessary to decide this case.

sufficient particularity within its "four corners," and that to be sufficiently particular, it must "answer who is being charged and why." *State v. Dabney*, 2003 WI App 108, ¶ 12, 264 Wis. 2d 843, 663 N.W.2d 366 (citing *State v. Adams*, 152 Wis. 2d 68, 72-73, 447 N.W.2d 90 (Ct. App. 1989)).

In *Dabney*, the court examined the question of whether a John Doe complaint tolled the statute of limitations. *Dabney*, 2003 WI App 108, ¶ 9. The court concluded that because the John Doe complaint "set forth a specific DNA profile" and answered the "who is charged question," the State satisfied the sufficient particularity requirements. *Dabney*, 2003 WI App 108 ¶ 15. When the DNA testing methods changed between an original complaint and amended complaint (from RFLP to STR), the court again upheld the use of John Doe complaint, noting that the complaint identified the defendant by a "particular DNA profile." *Davis*, 2005 WI App 98 ¶ 30, 281 Wis. 2d 118, 698 N.W.2d 823. Unlike *Davis*, the DNA testing methods are not at issue here.

Here, no particular DNA profile was included in the original 2000 criminal complaint. Although a specific profile had been developed, no written description or autorad photograph of the profile was attached to the complaint. Because no information was provided that could have identified the defendant, or indeed *any* person, in the document, the complaint failed to meet the particularity requirement and did not toll the statute of limitations.

On October 6, 2011, the State filed a "Post Hearing Memorandum" detailing and summarizing its arguments pertaining to whether its John Doe complaint identified the defendant with sufficient particularity. First, the State argues that the phrase "matching DNA profile" identifies a defendant with sufficient particularity. State's Post Hearing

Memorandum at 2.   The State cites Karen Dailey's testimony to establish that not everyone would have a "matching DNA profile" at the common loci listed, and this "would be a specific identification." *Id.*   The State argues that including the phrase "matching DNA profile" distinguishes the *Dabney*, *Davis*, and *Washington* complaints from the "flawed caption in *Belt* case." *Id.*

Washington agrees that not everyone would have a "matching DNA profile" at the common loci listed, and this would have specifically identified an individual *if* the State had included the DNA profile anywhere in the complaint.   As discussed above, however, there is no description of the DNA profile in the complaint, nor does the complaint include the autorad.   This failure to identify the suspect's DNA profile is unnecessary, and fatally flaws the complaint.

While *Dabney* and *Davis* approved the of John Doe warrants generally, neither of these decisions addressed whether the loci listed in the complaint actually identified a defendant with sufficient particularity.   The State argues that Washington's complaint utilized the same identification method detailed in the *Dabney* and *Davis* decisions, and suggests that the reviewing court approved of John Doe warrants lacking an actual DNA profile. State's Post Hearing Memorandum at 2.  In both *Dabney* and *Davis*, however, the court requires a complaint to identify the suspect with a specific DNA profile.  *Dabney*, 2003 WI App 108, ¶ 15; *State v. Davis*, 2005 WI App 98, ¶ 33.  In *Dabney*, the court specifically states "the DNA profile was included in the *caption* of the complaint." *Dabney*, 2003 WI App 108, ¶ 4 (emphasis added).  This reference indicates that the court mistook the listing of the common loci for an actual DNA profile, not that the loci are enough to comprise a profile.  In *Belt*, the court noted that the complaint and warrant's

4

infirmity was not a "mere technical irregularity," rather, "[t]he unique profile was known and could have been set out." *State v. Belt*, 285 Kan. 949, 961-62, 179 P.3d 443 (Kan. 2008) (citing *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)). Here, the profile was known and available but was not included in the complaint.

Second, the State further attempts to distinguish *Belt* by arguing that the Wisconsin complaints are "sworn documents" which include a detailed description of how the DNA was obtained and analyzed. State's Post Hearing Memorandum at 2-4. In *Belt*, the State also believed that "references to the existence and location of unique DNA autoradiographs in supporting affidavits cured the warrants' lack-of-particularity problems." *Belt*, 285 Kan. at 960. In dismissing this argument, the court reasoned that it supported John Doe complaints in the abstract, however, "this case is concrete" and neither the complaint nor warrants set forth the "unique DNA profile of their subject." *Belt*, 285 Kan. at 960. In fact, the *Belt* court addressed very similar complaints which described the crimes, how the semen was collected, and how the profile was developed. *Belt*, 285 Kan. at 951-54. None of these references cured the deficiency of the complaints and warrants, and the court ruled the statute of limitations barred prosecution. *Belt,* 285 Kan. at 962.

Third, the State contends that the numeric "allelic repeat sequences that the defendant claims should have been included" were not possible with the RFLP technology. State's Post Hearing Memorandum at 4. Karen Dailey testified that when a DNA profile is obtained through modern STR technology, that profile is described by a series of numbers at each locus—the "allelic repeat sequence." When Dailey was asked whether DNA profiles could be described in some way under the older RFLP technique

(as initially used in Washington's case), Dailey answered affirmatively—that it was possible to specify a DNA profile in writing or through the use of autorads. Again, *Belt* is instructive because the defendant argued that the "audoradiographs of specific DNA banding patterns were not attached to the complaints, warrants, or supporting affidavits." *Belt*, 285 Kan. at 956. The Kansas court agreed that the John Doe complaint and warrant failed to "set forth the unique DNA profile" and the State offered no reason why it could not have included this unique profile. *Belt*, 285 Kan. at 960-62.

Finally, the State contends that DNA profiles will always require "extrinsic information" to link a name to a physical person. State's Post Hearing Memorandum at 4. Washington agrees that DNA profiles require an extra step, however, "the fact that it would need to be verified scientifically once defendant was seized did not eliminate the need for this baseline to be drawn in the warrant in the first place." *Belt*, 285 Kan. at 962.

Because the State's John Doe #5 complaint failed to include a DNA profile as required by *Dabney* and *Davis*, the complaint failed to identify Washington with sufficient particularity.   Without a valid complaint in 2000, the statute of limitations barred the State from prosecuting Washington under § 940.225.   Washington reasserts his motion for postconviction relief and reiterates that these charges should be dismissed because the complaint failed to identify him with sufficient particularity, and therefore did not confer personal jurisdiction over Washington to this court.

Dated this 22nd day of October, 2011.

Respectfully Submitted,

John A. Pray
State Bar No. 01019121

Tricia J. Bushnell
State Bar No. 01080889

Kyle Engelke
Law Student

Carolyn Orr
Law Student

Criminal Appeals Project
Frank J. Remington Center
University of Wisconsin Law School
975 Bascom Mall
Madison, WI 53706
(608) 263-7461
Attorneys for Rodney Washington

7

( Exhibit 3A )

STATE OF WISCONSIN

COURT OF APPEALS

DISTRICT I

Appeal No. 2012 AP 001015 CR

STATE OF WISCONSIN,

               Plaintiff-Respondent,

      v.

RODNEY WASHINGTON,

               Defendant-Appellant.

ON REVIEW OF A DENIAL OF A MOTION FOR POSTCONVICTION RELIEF ENTERED ON APRIL 23, 2012, HON. DAVID L. BOROWSKI PRESIDING, AND A JUDGEMENT OF CONVICTION ENTERED AND AMENDED ON JULY 16, 2008, HON. JEFFREY WAGNER PRESIDING.

BRIEF AND APPENDIX OF DEFENDANT-APPELLANT

John A. Pray
State Bar No. 01019121
Tricia J. Bushnell
State Bar No. 01080889
Attorneys for Defendant-Appellant

Criminal Appeals Project
Frank J. Remington Center
Univ. of Wisconsin Law School
975 Bascom Mall
Madison, WI 53706
(608) 263-7461

Exhibit 3 A

STATE OF WISCONSIN

COURT OF APPEALS

DISTRICT I

Appeal No 2012 AP 001015 CR

STATE OF WISCONSIN,

        Plaintiff-Respondent,

   v.

RODNEY WASHINGTON,

        Defendant-Appellant.

ON REVIEW OF A DENIAL OF A MOTION FOR POSTCONVICTION RELIEF ENTERED ON APRIL 23, 2012, HON. DAVID L. BOROWSKI PRESIDING, AND A JUDGEMENT OF CONVICTION ENTERED AND AMENDED ON JULY 16, 2008, HON. JEFFREY WAGNER, PRESIDING.

BRIEF AND APPENDIX OF DEFENDANT-APPELLANT

## ISSUES PRESENTED

1. Was Washington's prosecution on multiple counts of sexual assault barred by the statute of limitations because the 2000 John Doe complaint and warrant failed to identify a particular individual, and instead only listed genetic locations common to all human DNA?

The trial court ruled that the complaint and warrant did identify the defendant because it specified that the unknown perpetrator was a male with "matching DNA" at six genetic locations.

2.  Did the trial court commit reversible error by denying Washington's request to represent himself at trial without first determining that the request was knowing, intelligent, and voluntary, or that he was competent to present a meaningful defense?

The trial court denied Washington's request of self-representation based on its determination that the defendant was incompetent to deal with the DNA evidence in the case.

3.  Did the trial court err in denying Washington's alternative request for substitution of counsel, thus entitling him to a new trial?

The trial court denied Washington's request for substitute counsel based solely on the timing of the request, despite counsel's admission that no attorney-client relationship existed.

## STATEMENT ON ORAL ARGUMENT AND PUBLICATION

Washington welcomes oral argument to clarify any questions the court may have. This is a case of first impression to the Court as to what constitutes a specific DNA profile for the purposes of a John Doe complaint and warrant. Therefore, as to this issue, publication is warranted.

## STATEMENT OF THE CASE AND FACTS

### *Facts related to the insufficiency of the complaint and warrant*

In 1994 and 1995, a series of five related sexual assaults occurred in Milwaukee.   DNA evidence was collected from the crime scenes and each of the victims. Examination by the Wisconsin Crime Lab of the DNA evidence revealed that the same perpetrator committed each crime; however, police were unable to identify the assailant (2) (Attached as Appendix A).  On March 16, 2000, eleven days before the statute of limitations expired on the earliest of the charges, the State filed a John Doe Criminal Complaint in Milwaukee County Circuit Court.   The complaint charged "John Doe #5" with four counts of first degree sexual assault (use of a dangerous weapon) pursuant to Wis. Stat. § 940.225(1)(b), and one count of second degree sexual assault (use of force) pursuant to Wis. Stat. § 940.225(2)(a). (2). "John Doe #5" was also charged with three counts of robbery under Wis. Stat. § 943.32(1)(a) and (2). (2).  The identifying information in the caption of the complaint was as follows:

> Doe, John #5, Unknown Male With Matching Deoxyribonucleic Acid (DNA) Profile at Genetic Locations D1S7, D2S44, D4S139, D5S110, D10S28, and D17S79

(2).  The actual DNA profile of John Doe #5 was not included anywhere in the complaint (2).

Over seven years later, on June 25, 2007 a "cold hit" allegedly matched Rodney Washington's DNA to the DNA on each of the victims (58:21).  The term "cold hit" refers to the process where a DNA profile is run through the

3

Combined DNA Index System (CODIS) and that profile matches the DNA profile of a criminal offender already in the system. *Frequently Asked Questions (FAQ) on the CODIS Program and the National DNA Index System*, Federal Bureau of Investigation, http://www.fbi.gov/about-us/lab/codis/codis-and-ndis-fact-sheet (last visited July 31, 2012). On August 8, 2007, the State filed an amended criminal complaint naming Washington as the defendant. Unlike the 2000 complaint, the 2007 amended complaint listed a series of numbers at each of the genetic locations, thereby providing information as to the perpetrator's specific DNA profile (3).

After a three-day trial in June 2008, a jury found Washington guilty of seven counts of sexual assault (32). On July 15, 2008, the court, Hon. Jeffrey Wagner presiding, sentenced Washington to terms totaling 100 years imprisonment (68) (Attached as Appendix B). Washington's counsel never moved to dismiss the complaint on grounds that are the subject of this appeal (16; 114).

On September 30, 2009, Donald Dudley, Washington's appellate attorney filed a no-merit brief in the Wisconsin Court of Appeals (82). In the report, Atty. Dudley stated that the complaint and warrant were properly filed. He relied on the rulings in *State v. Dabney*, 2003 WI App 108, 264 Wis. 2d 843, 663 N.W.2d 366, and *State v. Davis*, 2005 WI App 98, 281 Wis. 2d 118, 698 N.W.2d 823, to claim that there was no merit to Washington's pro se argument that the statute of limitations was not tolled since there was not sufficient identifying information on the complaint and warrant (82:6-7). Washington then filed a pro se response to the no merit brief and argued that the DNA information in the complaint failed to identify the accused with reasonable certainty (119:2). Washington wrote:

An arrest warrant or supporting affidavit['s] inclusion of

> a unique DNA profile can qualify as a description by
> which a defendant can be identified with reasonable
> certainty. Whereas let the record reflect mere listing of
> DNA locations in the warrant or supporting affidavit
> cannot. Whereas the John Doe #5 DNA arrest warrant
> that was issued in this case did not set fourth [sic] the
> unique DNA profile of their [sic] subject, the John Doe
> #5 DNA arrest warrant was a mere listing of DNA
> locations that's [sic] common to all human beings. . . .

(119:2).

The court of appeals rejected Atty. Dudley's no-merit brief, and concluded that several meritorious issues existed:

> (1) whether the arrest warrant or complaint
> identified Washington sufficiently to toll the
> statute of limitations; (2) whether the trial court
> erred by denying Washington's request to
> proceed without counsel (3) whether the court
> erred by denying Washington's request to have
> new counsel appointed.[1]

(Court of Appeals Order dated August 31, 2010, Appeal #2009AP2235-CRNM, 8).

Through his new counsel, Washington subsequently filed a motion for postconviction relief pursuant to Wis. Stats. §§ 803.30 and 974.02 (88). In the motion, he argued that the 2000 complaint and warrant were deficient since they did not contain a specific DNA profile and therefore failed to identify the accused with any reasonable certainty (88). Washington also claimed his trial counsel was ineffective because he

---

[1] Washington's postconviction motion also claimed that counsel was ineffective at sentencing. However, that claim has been withdrawn and is not the subject of this appeal.

failed to move to dismiss the charges for lack of personal jurisdiction on that basis (88).

A postconviction hearing was held on September 29, 2011 before Hon. David Borowski (114).   The defense presented testimony from Karen Daily, a former forensic scientist at the Wisconsin Crime Lab.  Daily testified that she was familiar with DNA profiling and the methods used to develop a DNA profile (114:9-10).  She identified a DNA profile as "a set of areas of DNA that have been determined to be specific for humans as well as to individualize these humans between each other" (114:10).  When determining a DNA profile, locations on each chromosome, called loci, are examined to ascertain each of the loci's types (114:11-12). Daily testified that the six loci listed in the caption of the criminal complaint did not contain this information and did not constitute a DNA profile:

> Q: Though this — what do you see here in the caption, isn't really a DNA profile, is it?
> A: No, it's just the loci that are examined and then subsequent to that, specific types would be determined to individualize the sample.
> Q: And you would need more information in order to have a specific DNA profile listed there?
> A: Yes.

(114:14).

Daily also stated that the identifying information necessary to provide a complete DNA profile was at that time expressed in x-ray photocopies called autorads or lumigraphs.

> Q: You would have some report that was able to individualize what it is about this profile that makes it an individual profile?

6

A: We would have had autorads or lumigraphs that
would have indicated the locations along that gel and
then —
Q: So there is a written report at some point. Maybe you
can't express it as numbers in parentheses but you have
some kind of report that is saying here is the expression
of this DNA profile and you have that in a report?
A: It would have been in the autorads or the lumigraphs,
would have been kept with the case file at the crime lab.
It would not have been in a police report because it was
strictly to be interpreted by a forensic scientist. Those
were — you know, you couldn't do the number things.
Q: And that's in the crime lab report?
A: Well, the crime lab — it's been a long time.
Q: The crime lab notes?
A: Notes yes, the autorads or lumigraphs would have
been kept in the crime lab notes. They are part of the
notes that were generated on the case. It would have
been kept in a case file regarding that case.

(114:36).

The court did not issue a ruling at the September 29
hearing, but held the matter open for further proceedings
(114:78). Subsequently, on November 17, 2011, the defense
submitted an affidavit by another DNA expert, Dr. Gregory
Hampikian, and offered to present his testimony (106). In his
affidavit, Dr. Hampikian explained that the combination of
loci and their type information, known as "alleles", is what
creates a DNA profile capable of being "matched to a specific
individual with a calculated probability of exclusion." (106).
Hampikian further stated that at the time the original John
Doe complaint was filed, the DNA profiles of any particular
individual could have been expressed by a series of numbers
as to each of the loci as well as by autorads or lumigraphs
(106).

Based on the testimony of Daily and the affidavit of Dr. Hampikian, Washington argued that the complaint was fatally defective, since it did not specify any particular individual, and that the statute of limitations had therefore expired (114:36). The State did not dispute information provided by Daily or Hampikian, but argued that the complaint was sufficient since it stated that the perpetrator was a person who had a "matching" DNA profile at the six genetic locations listed (91:3).

On April 23, 2012, the court, Hon. David Borowski presiding, issued its ruling denying Washington's motion for postconviction relief (111) (Attached as Appendix C). Washington now appeals that decision.

### *Facts related to Washington's requests to proceed pro se and for substitution of counsel*

Four months before trial, Washington submitted a written pro se "notice" to the court (14). He stated, "if [my lawyer] do not file any motions to dismiss this case out of court when I come before you, I will be going pro se to defend myself in this case on that date of Feb. 14, 2008." (14:3). During the *Miranda/Goodchild* hearing on February 14, 2008, Washington reiterated: "I just want to go *pro se* in this case and defend myself." (51:31). After a brief recess, Attorney Anderson informed the court "I talked to Mr. Washington in the back. There's no – he's withdrawing his request to go *pro se*." (55:32).

On April 28, 2008, Washington again requested to represent himself before the court (57:2). After a recess, Atty. Anderson informed the court that it was Washington's intention to proceed pro se:

MR. ANDERSON: Judge, since we were on the record this morning, I've talked to Mr. Washington before this was called this afternoon. I had filed a motion this morning based on Mr. Washington wanting to fire me. He told me on Friday that I was not his lawyer anymore. So I filed. And I talked to him again just a bit ago and it is his desire to have me not represent him. He wants to go pro se. Is that still your desire?

DEFENDANT: That's correct.

THE COURT: And why is that, sir?

DEFENDANT: Because I haven't been properly represented in this courtroom by neither attorney I have had...

(58:2). Later in the proceedings Atty. Anderson offered to explain the situation between him and Washington:

MR. ANDERSON: And I asked him whether he would listen to my advise [sic], take my advise [sic], hear me out on certain issues pertaining to this trial, including offers and as basic as an offer here and he refuses to take any add [sic] advise [sic] that I may give him. He won't listen to me anymore. Which I take that to mean that we don't have an attorney client relationship anymore. Is there anything I said -- Is that wrong or what?

DEFENDANT: That's right. That's correct.

(58:7).

The court then asked whether Washington understood that he was required to follow the rules of the court, to which the defendant replied:

DEFENDANT: I have no problem with that.

9

> THE COURT: Well, do you know the rules of
> evidence, sir?
>
> DEFENDANT: Do I what?
>
> THE COURT: Know the rules of evidence?
>
> DEFENDANT: When they are brought to my
> attention, I will know.

(58:8).

The court made no additional inquiry and found that
Washington was incompetent to represent himself due to the
DNA evidence in the case:

> THE COURT: Well, here is the problem with
> proceeding pro say [sic] like you want to, and you have a
> right to do that unless the court doesn't feel that you're
> competent to do that and the court doesn't believe that
> you're competent to do that and I'll tell you why, because
> of the DNA.

(58:8-9).

In addition, the court stated that "it becomes
problematic . . . since this is a sexual assault case for you to
quite frankly cross-examine the witnesses." (58:9).
Washington again stated "Mr. Anderson is no longer on this
case. If anything I say it again for the record. *I do not not
[sic] trust Mr. Anderson with my case.*" (58:9) (emphasis
added). Atty. Anderson explained to the court that no
communication existed between him and Washington (58:11).

After the court refused to grant his request of self-
representation, Washington requested substitute counsel:

THE COURT: . . . Mr. Anderson, you apparently are prepared to try the case. The court doesn't believe based upon the court's colloquy –

MR. WASHINGTON: I don't want him as my attorney. I told you that once before. So he is not going to be the attorney on here and you're not going to push him on me. That's for the record also.

THE COURT: Okay. I understand that.

MR. WASHINGTON: If anything if I'm not ready to present this case myself I will be asking for another attorney. You're not gonna push him on me. You're not going to team up on me and do me like a dog. You're not going to do it. I'm not going to let it happen.

THE COURT: No one is trying to do that, sir. And you can't obstruct the orderly procedure of the court or manipulate it in the way you're trying to do so.

DEFENDANT: All I ask for is – All I'm asking for is a different lawyer.

(58:30). In response, the court noted that Washington's requests came on the day of trial and that Atty. Anderson was the defendant's second lawyer (58:31).

Later in the same proceeding, the court was about to proceed to trial when Washington again pleaded with the court not to force Atty. Anderson on him:

DEFENDANT: You can do what you want to do. You can take me back. You all can have this trial without me. I don't have a problem with that. I'm not going to come. I am not going to be represented. I'll say it again. You're not going to tag team me up in your courtroom with a loop around my neck. You're not going to do it to me.

(58:40).

11

The court adjourned for the day without proceeding to trial or jury selection (58:47). The court reconvened the next day, April 29, 2008, and granted a continuance in the trial based on a scheduling conflict for Atty. Anderson (59:2). As a result, the trial was postponed until June 9, 2008 (59:7). At Atty. Anderson's request, the court ordered a competency evaluation for Washington (59:3,7). In the competency evaluation Dr. Smail of the Wisconsin Forensic Unit found that Washington was competent to stand trial and exhibited "no evidence . . . of a mental defect of any sort." (25:3).

The trial, which resulted in Washington's conviction, was conducted on June 9 to 11, 2008, during which time Washington was represented by Atty. Anderson. The issues raised in this appeal were identified by the Court of Appeals in its order dated August 31, 2010 and were preserved for appeal at trial. CITE

## ARGUMENT

I. **The trial court erred when it found that the complaint and warrant identified Washington with reasonable certainty and thus tolled the statute of limitations.**

In this case, the statute of limitations was not tolled and the court did not have personal jurisdiction over Washington because the original complaint and warrant did not identify any particular individual—it neither named Washington, nor did it include a *specific* DNA profile.

In order to confer personal jurisdiction, a complaint or indictment must be filed stating there is probable cause to believe a crime has been committed and that the defendant probably committed it. *State v. Smith,* 131 Wis. 2d 220, 238,

388 N.W.2d 601 (1986). Importantly, the complaint must set forth a written statement of the essential facts constituting the offense, including answering the question of *who* is being charged and why. *State v. Dabney*, 2003 WI App 108, ¶13, 264 Wis. 2d 842, 663 N.W.2d 366. Pursuant to Wis. Stat. § 968.04(3)(a)(4), a warrant must "state the name of the person to be arrested, if known, or if not known, designate the person to be arrested by any description by which the person to be arrested can be identified with reasonable certainty."[2] The filings must also comply with the applicable statute of limitations. *State v. Pohlhammer,* 78 Wis. 2d 516, 523, 254 N.W.2d 478 (1977).

On review, this court is asked to consider an interpretation of Wis. Stats. §§ 939.74 and 968.04(3)(a)(4) and whether the 2000 John Doe complaint and warrant was sufficient to toll the statute of limitations. Statutory interpretation is a question of law which the court will review de novo. *State v. Jennings*, 2003 WI App 10, ¶ 11, 259 Wis. 2d 523, 657 N.W.2d 393. While challenges to personal jurisdiction can be forfeited, *see State v. Dietzen*, 164 Wis. 2d 205, 210, 474 N.W.2d 753 (Ct. App. 1996), Washington preserved this challenge at trial.[3]

---

[2] Additionally, this is a constitutional requirement under the 4th and 14th Amendments to the U.S. Constitution. *See Baker v. McCollan*, 443 U.S. 137 (1979) (indicating that an attack on the validity of a warrant could give rise to a claim under the Constitution); *Powe v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981) (holding that "an arrest warrant that incorrectly names the person to be arrested will usually be deemed insufficient to meet the fourth amendment's particularity requirement. . . .").

[3] The objection was preserved when Washington pleaded "not guilty subject to all jurisdictional objections." (51:3); *see also Blenski v. State*, 73 Wis. 2d 685, 691, 245 N.W.2d 906 (holding that jurisdictional objection was preserved by pro se motion to dismiss on various grounds). Washington made several in court and pro se objections to the court's jurisdiction on numerous grounds. *See e.g.* (5); (14); (18:2,4); (19); (28:2).

13

The State had six years from the dates of the offenses to charge Washington. *See* Wis. Stat. § 939.74(1) (imposing six year time frame for prosecution of felonies); (88). The John Doe complaint and warrant were filed on March 16, 2000, eleven days before the statute of limitations was set to expire on the first two counts of the original complaint (2).[4] However, these documents did not satisfy the reasonable certainty requirement because the DNA profile listed was not unique or specific—instead, only genetic locations common to all human beings were included. Because the complaint and warrant failed to name the accused with reasonable certainty, they were insufficient and did not toll the statute of limitations. As a result, the trial court did not have personal jurisdiction over Washington.

Washington raised these issues in his March 18, 2010 postconviction motion before the trial court. After several briefings and two postconviction hearings, Judge Borowski issued a ruling on April 23, 2012, finding that the initial John Doe complaint and warrant were sufficiently specific because the caption identified "John Doe #5 with *matching* DNA profile at six genetic loci" (111:5). In his ruling, Judge Borowski relied upon this court's decisions in *State v. Davis,* 2005 WI App 98, and *State v. Dabney,* 2003 WI App 108. Judge Borowski's decision, however, ignores the testimony of Karen Dailey and Dr. Gregory Hampikian regarding what constitutes a specific profile and erroneously extended the holdings of *Davis* and *Dabney* to reach questions not previously presented to this court. The testimony clearly established that no specific DNA profile was presented in the

---

[4] The crimes occurred on March 27, 1994, August 11, 1994, November 29, 1994, December 20, 1994, and January 14, 1995 (2:1-2). The statute of limitations would toll for each of these crimes on March 27, 2000, August 11, 2000, November 29, 2000, December 20, 2000, and January 14, 2001, respectively.

2000 complaint and warrant. Therefore, this court should reverse Washington's convictions as the statute of limitations expired well before the State filed an amended complaint that contained a specific DNA profile.

### A. The original complaint and warrant did not identify *any* specific individual.

In his postconviction motion, Washington presented evidence that the caption listed in the complaint and warrant did not provide a unique or specific DNA profile; instead, it merely listed the loci that were examined during the testing process. Former Wisconsin Crime Lab DNA Analyst Karen Dailey testified that in order to specifically identify a DNA profile, certain locations on each chromosome (loci) are examined to determine the information (alleles) at each location (114:11-12). According to Dr. Hampikian, it is the *combination* of alleles and the location (loci) where the allele was found that constitute a unique or specific DNA profile "which could be matched to a specific individual with a calculated probability of exclusion." (106).

Indeed, Daily testified that the information as set out in the caption did not contain a specific profile and thus could not identify anyone:

> Q: Though this – what do you see here in the caption, isn't really a DNA profile, is it?
> A: No, it's just the loci that are examined and then subsequent to that specific types would be determined to individualize the sample.
> Q: And you would need more information in order to have a specific DNA profile listed there?
> A: Yes.

(114:14).

15

As Daily's testimony explains, without the allelic information, the complaint contained no DNA profile and thus failed to answer the question of "who" was being charged.  Notably, the allelic information was missing not just from the caption of the complaint, but from the complaint in its entirety.  Because no allelic information was provided, it would thus have been impossible to match the DNA information listed in the complaint and warrant to *any* particular person; instead, the caption would identify *every* human being (114:16).

No Wisconsin caselaw directly answers the issue that is presented before this court; namely, what constitutes a specific DNA profile.   However, this issue was squarely addressed in *State v. Belt*, 179 P.3d 443 (Kan. 2008).  There, the Kansas Supreme Court held that a complaint does not identify an individual with reasonable certainty unless it includes a *unique* DNA profile.  In *Belt*, similar John Doe warrants and complaints were issued listing a set of DNA locations as the identifying information. *Id.* at 444-47.  The documents did not define the unique or specific allelic information found at these locations. *Id.* at 448.  Rather, the complaints stated either that "the semen donor's DNA LOCI is D2S44 and D17S79" or that "the [donor's] LOCI is D2S44, D1S7, D10[S]28, D4S139," and that the corresponding DNA description would be unique to the perpetrator. *Id.*   No specific DNA profile was provided until a decade after the initial offense and after the statute of limitations had run. *Id.* at 447.  It was only after a blood draw was taken from Belt (who had been arrested for capital murder) and his DNA matched to the profiles from the earlier offenses that the original complaints were amended to specifically name Belt as the defendant. *Id.* at 447.

As in Washington's case, Belt sought dismissal on the grounds that the original warrants did not sufficiently identify

him, could not toll the statute of limitations, and thus the court lacked jurisdiction. *Id.* As in Washington's case, expert testimony explained that the locations listed were common to all humans, and that without additional allelic information, the complaint did not include any identifying content.

The Kansas Supreme Court held that because neither the warrant nor complaint identified Belt with a specific DNA profile, the warrant was invalid, and thus prosecution did not commence within the statute of limitations. *Id.* at 451. According to the Court, this failure to provide a specific DNA profile including alleles amounted to "a near-complete lack of identifying information." *Id.* at 450.

The complaint in Washington's case is deficient in the same way as in *Belt* and thus compels the same result.

Notably, the court in *Belt* also observed that:

> there was no reason the State could not have particularly described the perpetrator's unique DNA profile in the warrants or their supporting affidavits. The unique profile was known and could have been set out. That genetic information was necessary to provide an evidentiary baseline for probable cause.

*Id.* at 450-51.

Here, as in *Belt*, there is no reason the State could not have similarly provided that genetic information. Although the warrants and complaints did not contain a specific DNA profile, such a profile was available and could have easily been included. In Washington's case, the six loci listed in the original complaint and warrant were examined using Restriction Fragment Length Polymorphism ("RFLP") technology. (114:5). According to Karen Daily and Dr.

17

Hampikian, allelic information identified through RFLP technology can be expressed in a variety of ways: numerically (as a number pair) (106), or using actual pictures of the analysis called autorads or lumigraphs (114:35-36). Further, Dailey testified that this allelic information was available within the crime laboratory report or within the case notes of the lab technician that performed the testing (114:17).

Because allelic information is necessary to specify an individual with reasonable certainty and satisfy the requirements of Wisconsin law, and because this information could have easily been provided by the State, no individual was identified in the original complaint as required by law.

Moreover, although the State amended the complaint seven years later to identify Washington by name, this did not cure the defects in the original complaints and warrants because the amendment occurred well after the statute of limitations had expired. Because Washington's case mirrors the defendant's in *Belt*, this court should follow the ruling in *Belt* and reverse Washington's convictions.

## B. The fact that the complaint charged John Doe #5 "with *Matching* [] DNA Profile at [six] Genetic Locations" does not remedy the deficiency of the complaint.

In finding that the complaint specified an individual to the extent required to toll the statute of limitations, Judge Borowski relied on the use of the word "matching" to assert that an individual had been identified. He stated that "the caption was specific by referring to John Doe #5 with *matching* DNA profile at six genetic loci." (111:5).

Judge Borowski attempted to distinguish *Belt* from Washington's case by noting that the caption in the complaint

in *Belt* did not include the word "matching" with the loci that were listed (111:5). The court concluded that because the caption in Washington's case included the word "matching" while the *Belt* case did not, the complaint and warrant name the accused with specificity. This was error.

Merely using the additional word "matching" cannot remedy the insufficiency of the complaint because the complaint and warrant *did not contain a DNA profile at all.* Including the word "matching" in regards to the loci listed would be similar to stating that John Doe has "matching" hair color or "matching" height without giving any particular color or measurement to match—instead, this description could fit all people and is thus not specific enough to name the accused with reasonable certainty. Because there was no specific DNA profile listed in the caption or anywhere else in the complaint or warrant, it was impossible to "match" it to anyone. The use of the word "matching" does not specify the allelic information necessary for a specific DNA profile, and thus this court should follow *Belt*, and reverse Washington's conviction.

### C. This issue has not been previously presented before this court.

Judge Borowski also relied on an inaccurate extension of *Dabney* and *Davis* to find that a specific DNA profile was unnecessary. However, relying on these cases as controlling precedent is erroneous because *Dabney* and *Davis* addressed issues distinct from Washington's case. Instead, this issue is one of first impression to this court.

Washington does not contest the use of John Doe warrants as a means to identify an accused in order to toll the statute of limitations. Nor does he contest the DNA testing methods used to obtain a DNA profile. *Dabney* and *Davis* are

controlling on those basic principals.  However, these cases
do not address the issue as to what constitutes a specific DNA
profile.      Instead,   both   *Dabney*   and   *Davis*   *support*
Washington's claim because they state that in order to toll the
statute of limitations, the complaint or warrant must contain a
"specific DNA profile."   However, neither case addresses
what specific information must be included to establish such a
profile because that was not the questions before the court.  In
fact, the court in both *Dabney* and *Davis* were asked to
address entirely different issues.  *See Dabney*, 2003 WI App
108,  ¶ 15  ("The question to be addressed is whether a
complaint  and  an  arrest  warrant,  which  identify  the
defendant/suspect as 'John Doe' with a specific DNA profile,
satisfies   the   particularity   and   reasonable   certainty
requirements."); *Davis*, 2005 WI App 98, ¶ 33 ("Specifically,
[defendant]  argues  that  because  the  original  complaint
identified the DNA profile using a different technology than
the  amended  complaint  which  eventually  led  to  his
identification, this case is distinguishable from *Dabney*.").

In this case, the State attempted to place the complaint
within  the  holdings  of  *Dabney*  and  *Davis*  by  erroneously
extending them to address a question not presented.    At
Washington's postconviction hearing the State introduced the
complaints that were used in *Dabney* and *Davis*, and pointed
out  that  they  also  failed  to  identify  any  specific  allelic
information (114:66).  Like the complaint and warrant in this
case,  the  captions  provided  only  the  genetic  location
information (loci) and incorporated the word "matching."
(114:66).  The State argued that the holdings in *Dabney* and
*Davis* thus somehow ratified this practice.   In his ruling,
Judge Borowski agreed with the State, finding that these
warrants were facially similar and that *Dabney* and *Davis*
were controlling (114:3-6).

Contrary to Judge Borowski's view, however, the question of what constitutes a specific DNA profile has not yet been addressed by Wisconsin courts. The question now before this court is what constitutes a specific DNA profile to answer the question of "who" is being charged to satisfy the reasonable certainty requirement of Wis. Stat. § 968.04(3)(a)(4).

As Karen Daily's testimony revealed, the answer is that use of the word "matching" is not specific and does not answer this question. No one, not even a trained analyst, can identify a defendant through DNA analysis without *both* the location and allelic information (114:13-14). Although a specific profile had been developed in this case, the information was not contained within the four corners of the document and thus did not meet the requirements of *Dabney* and *Davis*. *See Dabney*, 2003 WI App 108, ¶ 12 (noting that a criminal complaint must identify a crime and the defendant who probably committed it within the "four corners" of the document). The State could have easily included this information, whether through a written description of the profile or an attachment of the autorads or lumigraphs, but it did not. *Dabney* and *Davis* therefore do not address the issue presented in Washington's case. Because this question has not previously been presented to this court, it is not bound by the decisions in *Dabney* and *Davis*. This court should overturn Judge Borowski's decision and find that no specific DNA profile was included in the 2000 complaint and warrant.

\* \* \*

Neither the criminal complaint nor the warrant included a specific DNA profile that was capable of being matched to anyone. Consequently, the accused was not identified with reasonable certainty pursuant to § 968.04(3)(a)(4). Therefore, the statute of limitations did not

toll, and the court did not have personal jurisdiction over Washington. This court must reverse Washington's convictions.

> ### D. Trial counsel was ineffective for failing to move to dismiss all charges because the original warrant and criminal complaint failed to identify the accused with reasonable certainty.

In order to maintain a successful claim of ineffective assistance of counsel, Washington must show that counsel's performance was deficient and that the performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668 (1984). To establish deficient performance, the defendant must show that counsel's representation fell below objective standards of reasonableness. *State v. Thiel,* 2003 WI 111, ¶ 19, 264 Wis. 2d 571, 665 N.W.2d 305. To establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. Here, trial counsel was ineffective for failing to move to dismiss all charges because the original warrant and criminal complaint failed to identify the accused with reasonable certainty and thus did not toll the statute of limitations.

> #### i. Trial counsel's performance was deficient.

The 2000 criminal complaint and accompanying warrant did not contain a specific DNA profile and therefore did not identify the accused with reasonable certainty. Because the complaint and warrant were deficient and because a more comprehensive amendment was not made prior to the statute of limitations expiring, the prosecution did not commence within the statute of limitations and this court

did not have personal jurisdiction over Washington. *See supra*
Point Heading I: A-C.   Trial counsel's failure to move to
dismiss all charges against Washington on grounds that the
court did not have personal jurisdiction over him was
deficient performance.

At the *Machner* hearing, Atty. Anderson testified that
he was aware that he could have made the argument that the
complaint and warrant lacked the information to name the
accused with reasonable certainty but chose not to do so.

> Q: And you understand our argument that the original
> complaint did not list a DNA profile, right?
> A: Yep.
> Q: Now, you didn't make – when you were representing
> Mr. Washington, you didn't make that argument that we
> have made at any point during your representation, is
> that right?
> A: No.  Looked at it but didn't bring it.
> Q: And can I ask you why you didn't bring a similar
> type of motion or argument?
> A: Felt that, in the totality of the complaint, I mean, what
> we've heard here today, what's in the body of the
> complaint in line with the case law as it existed in
> Wisconsin at that time was that it described the person
> with enough particularity.
> Q: So basically you didn't bring it because you didn't
> feel it had sufficient merit but you didn't fail to bring it
> for any kind of strategic reasons or tactical reasons,
> correct?
> A: That's correct.

(114:41-42).

Atty. Anderson failed to act as a reasonable attorney
would have when he decided not to pursue the argument that

23

the complaint and warrant did not name Washington with reasonable certainty. He admitted that his decision was not made for any strategic reason—he said he was aware of the argument to be made, but dismissed it due to his own impression of its merit. His performance was therefore deficient.

### ii. Washington was prejudiced by trial counsel's deficient performance.

Atty. Anderson's deficient performance clearly prejudiced Washington because had he raised the aforementioned issue, the charges would have been dismissed and Washington would not have been charged, let alone convicted. Instead, Washington was charged, tried, convicted and sentenced to 100 years in prison. Because trial counsel failed to raise this critical issue, this court should find that trial counsel was ineffective and reverse Washington's conviction.

## II. Alternatively, the trial court improperly denied Washington's requests to proceed pro se.

The Constitution protects the right of self-representation not only because its improper denial would be an infringement upon a fundamental right, but also because it "can only lead [a defendant] to believe that the law contrives against him." *Faretta v. California*, 422 U.S. 806, 834 (1975). Thus, "his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Id.*; *see also Indiana v. Edwards*, 554 U.S. 164, 186-87 (2008) (Scalia, J., dissenting) ("[T]here is equally little doubt that the loss of 'dignity' the right is designed to prevent is *not* the defendant's making a fool of himself . . . Rather the dignity at issue is the supreme human dignity of being master of one's

fate rather than a ward of the State—the dignity of individual choice.").

Moreover, the Wisconsin Constitution explicitly guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right *to be heard by himself* and counsel." Wis. Const. art. I, § 7 (emphasis added). The Wisconsin Supreme Court has affirmed this right for at least a century. *See Dietz v. State*, 149 Wis. 462, 136 N.W. 166, 173 (1912) ("Every person sui juris, who is charged with crime, has the right to try his own case if he so desires."); *Browne v. State*, 24 Wis. 2d 491, 510-11, 129 N.W. 2d 175 (1964) ("due process also requires that throughout the criminal process the state must treat a defendant as a person possessing human dignity . . . and . . . a defendant would be denied this treatment if counsel were imposed upon him against his wishes.").

Due to the fundamental nature of the right to self-representation "there appear to be few circumstances under which a court may deny a timely request for self-representation." *State v. Klessig*, 211 Wis. 2d 194, 216, 564 N.W.2d 716 (1997) (Abrahamson, C.J., concurring). Therefore, a "denial of the right to self-representation is not amenable to harmless error analysis . . . 'the right is either respected or denied; its deprivation cannot be harmless.'" *Id.* at n.1 (quoting *McKaskle v. Wiggins*, 465 U.S. 168 (1984)).

Because the right to self-representation is a "basic right of free people," a request by a defendant to be heard by himself may only be denied after the trial court has determined that he has not knowingly, intelligently and voluntarily waived the right to counsel *or* that he is incompetent to proceed on his own. *Klessig*, 211 Wis. 2d at 203-04. If the trial court does not make such a determination *on the record*, it has improperly denied the defendant's request and therefore committed structural error subject to

automatic reversal. *State v. Imani*, 2010 WI 66, ¶ 21, 326 Wis. 2d 179, 786 N.W.2d 40.

Whether an individual is denied his or her right to self-representation "presents a question of constitutional fact, which this court determines independently." *Id.* ¶ 19 (quoting *Klessig*). Such a determination requires a review of the facts "independent of the circuit court." *Id.* A reviewing court will consider a "circuit court's determination of whether a defendant is competent to proceed pro se under what is essentially a clearly erroneous standard of review." *Id.* (quoting *State v. Marquardt*, 2005 WI 157, 207 Wis. 2d 204, 705 N.W.2d 878) (internal citations omitted).

### A. The trial court failed to engage Washington in the full colloquy mandated by *Klessig*.

The trial court did not meet the clear standards mandated by the Court in *Klessig* and affirmed in *Imani*. At no point in responding to Washington's requests to exercise his constitutional right to self-representation did the court substantively engage in any of the four lines of questioning mandated by *Klessig*:

> [T]he circuit court must conduct a colloquy designed to ensure that the defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him.

*Klessig*, 211 Wis. 2d at 206.

There is no question as to whether Washington expressed to the court his desire to represent himself at trial.

26

He repeatedly asked the court to let him represent himself. Prior to the start of the trial, the following exchange occurred with the court:

> MR. ANDERSON: He told me on Friday that I was not his lawyer anymore. So I filed. And I talked to him again just a bit ago and it is his desire to have me not represent him. He wants to go pro se. Is that still your desire?
>
> DEFENDANT: That's correct.
>
> THE COURT: Why is that, sir?
>
> DEFENDANT: Because I haven't been properly represented in this courtroom by neither attorney I have had…

(58:2).

Later in the same hearing, Washington explicitly stated his desire to "enjoy the right to be heard by himself." (58:8). The court then asked Washington if he understood the difficulties inherent in self-representation, and Washington responded "I have no problem with that" (58:8).

Based on this response, the court was required to continue questioning Washington under *Klessig* and *Imani* before denying his request, but no additional questioning occurred. Instead, those were the only questions asked by the court that could be considered part of a proper *Klessig* colloquy.

In *Imani*, the Supreme Court addressed the specific issue presented here: what is required of the trial court when it denies a defendant's request to represent himself? *Imani*, 2010 WI 66, ¶ 25. The Court reaffirmed the *Klessig* standard and required a colloquy "in every case where a defendant seeks to proceed pro se." *Id.* ¶ 34 (citing *Klessig*). On review,

a court may only uphold a trial court's decision if the court engaged in the colloquy mandated by *Klessig* and it appears on the record. *Imani*, 2010 WI 66, ¶ 23.

While *Imani* is the "converse scenario of *Klessig*," the colloquy requirement remains in force. *Id.* ¶ 25. In *Klessig*, the defendant was allowed to proceed pro se without engaging in any sort of a colloquy. *Klessig*, 211 Wis. 2d at 201. On appeal, Klessig claimed that the trial court erred because it had not determined whether he had knowingly, intelligently and voluntarily waived his right to counsel. *Id.* The Court agreed with Klessig and reversed his conviction. *Id.* at 197. The only clarification made by the *Imani* Court is that, in denying a defendant's request to proceed pro se, a court need not engage in all four of the *Klessig* lines of questioning *if* the court determines that at least one of those factors is not met. *Imani*, 2010 WI 66, ¶ 34. Therefore, the record must show that the court has engaged in at least part of the *Klessig* colloquy *and* determined that the defendant did not meet at least one of the four standards.

Based on the record here, no such determination could be made because the court did not inquire into Washington's request. In contrast to the court's determination, there is evidence that Washington was knowingly, intelligently and voluntarily waiving his right to counsel.

### i. Washington made a deliberate choice to proceed without counsel.

As discussed above, the record is clear that Washington was deliberate and unequivocal in making his request to proceed pro se. He made his first request at the *Miranda/Goodchild* hearing on February 14, 2008 (55:31); again at the beginning of the proceedings on April 28, 2008

(58:2); and again when the court asked him directly that same day (58:8).

### ii. Washington was aware of the difficulties and disadvantages of self-representation.

The following exchange demonstrates that Washington was aware of the risks associated with self-representation:

> THE COURT: Okay.  But you understand that by doing so you would have to comply with any and all the rules of the court and rules of evidence and case law, do you understand that?
> DEFENDANT: I have no problem with that.
> THE COURT: Well, do you know the rules of evidence, sir?
> DEFENDANT: Do I what?
> THE COURT: Know the rules of evidence?
> DEFENDANT: When they are brought to my attention, I will know.

(58:8).   This exchange provides strong evidence that Washington was aware of the challenges inherent in self-representation.  His response to the court's question required additional inquiry, but none was made.  At the very least, there is no basis in this exchange on which to deny Washington's request to defend himself.

### iii. Washington was aware of the seriousness of the charges against him.

The court ordered a competency evaluation on April 29, 2008 (59:7).  Nine days later, Dr. Smail reported to the court that:

> Mr. Washington was clearly alert as to the name and
> nature of the allegations against him.  He did summarize
> the information set forth in the complaint and he
> understood his liability if found guilty for these offenses.
>
> ....
>
> [i]t is my opinion that Mr. Washington displayed
> substantial capacity to reasonably and rationally
> understand these charges, understand court proceedings,
> aid in his defense and make decisions that are essentially
> his to make.

(25:3).  Clearly, Washington was aware of the seriousness of
the charges against him.

### iv.  Washington was aware of the general range of penalties that could have been imposed on him.

When Washington first requested to proceed pro se on
February 14, 2008, he stated: "I'm facing a lot of time, Your
Honor. . ." (55:31).  In addition, Dr. Smail's competency
report, informed the court that "[Washington] surmised that
he would be given a life sentence if he received even a small
fraction of that time." (25:3).  Washington was clearly aware
of the penalties he faced.

### B. The trial court used improper standards to determine Washington's competency to proceed pro se.

The court made no inquiry into Washington's ability to
communicate a possible defense to the jury and instead based
its decision entirely on its assumption that he was unable to
understand the intricacies of DNA evidence.  This is a clear
violation of well-settled precedent and a denial of
Washington's constitutional right to self-representation.

"In Wisconsin, there is a higher standard for determining whether a defendant is competent to represent oneself than for determining . . . competenc[y] to stand trial." *Klessig*, 211 Wis. 2d at 212.   Although the Wisconsin Supreme Court has not explicitly defined this distinction, it has warned that "technical legal knowledge is *not relevant*." *Pickens v. State*, 96 Wis. 2d 549, 568, 292 N.W.2d 601 (1980) (emphasis added).   Even under this higher standard, "[a] defendant of average ability may still be adjudged competent for self-representation." *Imani*, 2010 WI 66, ¶ 37. Factors the court may consider include "education, literacy, fluency in English, and any physical or psychological disability which may significantly affect his ability to communicate a possible defense." *Id.* at 569.

If the court denies a defendant's request for self-representation on competency grounds, "the record must demonstrate an identifiable problem or disability that may prevent a defendant from making a meaningful defense." *State v. Marquardt*, 2005 WI 157, ¶ 61, 286 Wis. 2d 204, 705 N.W.2d 878.   Therefore, a "'timely and proper request' should be denied only where the circuit court can identify a *specific* problem or disability. . . ." *Imani*, 2010 WI 66, ¶ 39 (quoting *Pickens*).

Under this standard it is plain the court failed to determine Washington's competency to represent himself. Based on the record, the court decided—absent any inquiry whatsoever—that Washington was unable to conduct his own defense because he lacked expertise in DNA evidence (58:8-9).   The court told the defendant:

> COURT:   [T]he court doesn't believe that you're competent to do that and *I'll tell you why, because of the DNA.*   The DNA that's involved in this case which is

scientific and very few people outside the legal profession and scientists know how that works.

. . .

I mean, we have to move on. And you know, you don't have the expertise even though you may think so of dealing with the DNA evidence. And you need that expertise because that's apparently what this case is about.

(58:8,11).

The court's conclusion is not only unsupported due to the lack of an inquiry into Washington's education or actual knowledge, but also directly contradicted by Washington's statement at sentencing and his response to the No Merit Report (68:12-20; 119:2). In his response to the No Merit Report, Washington demonstrated enough knowledge of DNA to explain the jurisdictional defense he wanted to present. He wrote:

An arrest warrant or supporting affidavit inclusion of a unique DNA profile can qualify as a description by which a defendant can be identified with reasonable certainty. Whereas let the record reflect mere listing of DNA locations in the warrant or supporting affidavit cannot. Whereas the John Doe #5 DNA arrest warrant that was issued in this case did not set fourth [sic] the unique DNA profile of their subject, the John Doe #5 arrest warrant was a mere listing of DNA locations that's common to all human beings, whereas it was a near complete lack of identifying information, whereas neither the John Doe #5 arrest warrant nor the complaint or a [sic] affidavit supporting them set forth the unique DNA profile of their subject.

(119:2).

Later, Washington specifically identified the deficiency of the John Doe complaint:

> When the name is unknown, the person may be identified with the best description available, and that a John Doe arrest warrant satisfied the particularity requirements, if it describes the person [sic] occupation, his appearance, peculairities [sic], place or other means of residents of identification. Wisconsin case law suggest that the complaint and warrant satisfy the sufficient standard when description clearly demonstrates that the law enforcement authorities have probable cause to arrest a particular person of committing a crime. . . . Whereas let the record reflect that do [sic] not mean listing DNA locations in the warrant that's common to all human beings as a **Profile** which is **D1S7, D2S44, D4S139, D5S110, D10S28,** *and* **D17S79.** Which those are DNA locations and don't identified [sic] anyone [sic] genetic code DNA profile in the arrest warrants in order to commence the prosecution and thus avoid the running of the statute.

(119:3-4).   These passages serve as strong evidence that Washington was competent to present his own defense.

Washington's understanding of DNA notwithstanding, the court cannot deny a defendant's right to self-representation based *solely* on a lack of legal skill or expertise. *Cf. Marquardt*, 2005 WI 157, ¶ 62.  Instead, the court must inquire into the defendant's ability to present and communicate a meaningful defense to the jury. *Id.*, ¶ 61.  On this point, the record shows that Washington was prepared to offer a jurisdictional defense based on the insufficiency of the John Doe complaint and an expiration of the statute of limitations (*See* 58; 119:2-6).   "What the Constitution

requires is that a defendant be given the right to challenge the State's case against him using the arguments *he* sees fit." *Edwards*, 554 U.S. at 184 (Scalia, J. dissenting). The record indicates that this right was frustrated by the court's actions and those of his attorney (58:27) (Atty. Anderson: "that's Mr. Washington's position. I mean, I'm not joining in that.").

In this light, the trial court's error in determining Washington's competency is both legal and factual. First, the court did not follow the clear precedent in *Pickens*, *Klessig*, and *Imani*, and based its decision on improper grounds, namely its unfounded opinion that Washington lacked legal expertise in DNA evidence. Secondly, Washington was, in fact, prepared to present a meaningful defense, which was established by the pro se motions filed by Washington, particularly his response to the No Merit Notice filed with the Court of Appeals. In that response, Washington outlined the same issues raised in Section I, *supra*. Because Washington raised such a complex jurisdictional issue, a strong inference can be made that he was more than competent to present a defense.

As for the timeliness of Washington's request, the record shows that he did not wait until the day of trial to make his first request of self-representation. Washington first invoked the right of self-representation at the February 14, 2008 *Miranda/Goodchild* hearing:

> THE DEFENDANT: Your Honor, can I say something since this case is about me and –
>
> ATTORNEY ANDERSON: No.
>
> THE DEFENDANT: -- I'm going to represent –
>
> ATTORNEY ANDERSON: No, you can't. No, you can't.
>
> THE DEFENDANT: I'm represented – I'm not – I'm facing a lot of time, Your Honor, and I need to talk

too. . . . I just want to go *pro se* in this case and defend myself.

(55:31).   Though Washington was persuaded that day to accept counsel, it is strong evidence that his later requests on April 28, 2008 were made after thoughtful consideration and were not spur of the moment.

Instead of focusing exclusively on the timeliness of the request, "the determinative question is whether the request is proffered merely to secure delay or tactical advantage." *Hamiel v. State*, 92 Wis. 2d 656, 673, 285 N.W.2d 639 (1979).   The record in this case does not give any indication that Washington was attempting to unnecessarily delay the proceedings.   Instead, he made repeated references to having his attorney forced upon him and due to the breakdown of communication with Atty. Anderson the court was unable to give him a fair trial (*See, e.g.,* 55:31; 58:9, 13).   This demonstrates that Washington's request for self-representation was made in the interest of securing a fair trial, not for tactical advantage.

Therefore, the court need not weigh competing interests such as the convenience of the witnesses or the court's schedule because the request was made for good cause. *See Hamiel*, 92 Wis. 2d at 673.   It is clear that both Washington and Atty. Anderson believed that a total lack of communication existed between them which prevented an adequate defense from being argued.   When a breakdown in the attorney-client relationship happens as it did here, there is little chance that a defendant will see his trial as anything other than rigged against him if his attorney is forced upon him.   This is precisely the evil that the Supreme Court identified as remedied by the right to self-representation. *See Faretta*, 422 U.S. at 834.

## C. The proper remedy is automatic reversal and remand for a new trial.

As stated above, when a court has improperly denied a request of self-representation it has committed structural error subject to automatic reversal. *Imani*, 2010 WI 66, ¶ 21. Therefore, in the event that the court concludes that Washington's case should not be dismissed under the statute of limitations claim, he is entitled to a new trial. In *Imani*, the Court did not discuss the issue of remedy in depth because it found that the trial court had not erred. *Id.* ¶ 33. Nonetheless, the Court clearly stated the proper remedy for situations, such as here, when a trial court improperly denies the defendant's right to self-representation is automatic reversal. *Id.* ¶ 21.

There may be some debate as to the proper remedy in these types of cases given the fact that *Klessig* provided a different procedure on remand.   Specifically, the Court remanded the case to the circuit court to "determine whether it can make an adequate and meaningful nunc pro tunc inquiry into the question of whether Klessig was competent to proceed pro se." *Klessig*, 211 Wis. 2d at 213.  If the circuit court determined that it could do so, then it was required to hold an evidentiary hearing. *Id.*  If it determined that no such hearing could be held, then Klessig was entitled to a new trial. *Id.*  However, the *Klessig* Court noted that "such an evidentiary hearing may not be necessary in every case where the circuit court has not made a determination that a pro se defendant was competent…" *Id.* at n.9.  Indeed the Court acknowledged that in some cases the record will clearly demonstrate a hearing would be unnecessary. *Id.*  Thus the majority's remedy in *Klessig* is at best a case-by-case remedy for the discretion of the appellate court.

Furthermore, in her concurring opinion in *Klessig*, Chief Justice Abrahamson expressed serious concerns about

the efficacy of the nunc pro tunc inquiry and the trial court's ability to conduct such an examination. She cautioned that the United States Supreme Court had disapproved of nunc pro tunc inquiries in similar situations and, as a practical matter, the Court "should recognize the difficulty, if not the impossibility, of conducting a meaningful nunc pro tunc competency inquiry. *Klessig*, 211 Wis. 2d at 222 (Abrahamson, C.J., concurring). The Chief Justice also stated that the inquiries threatened to "trivialize a fundamental constitutional right by allowing the State to try its case as to the waiver of that right by trial and error." *Id*. (quoting *State v. Merrill*, 155 Vt. 422, 584 A.2d 1129, 1133 (1990) (Mahady, J., concurring)). Due to these concerns, Chief Justice Abrahamson "consider[ed] the nunc pro tunc inquiries suggested [in *Klessig*] to be an experiment." *Id*. at 223.

Given the clear statement by the majority in *Imani* that an improper denial of the right to self-representation is structural error, and the Chief Justice's concerns in *Klessig*, Washington's conviction should be reversed and remanded for a new trial. If, however, the court disagrees and believes that the nunc pro tunc inquiry is the proper remedy, then based on the record, such an inquiry would be unnecessary. The Court contemplated that in some cases the record would preclude the necessity of an inquiry. *Klessig*, 211 Wis. 2d at n.9. As discussed above, the record shows that Washington's waiver was "knowing, voluntary and intelligent." *See supra* Point Heading II: A. In addition, there is sufficient evidence that Washington was competent to present a meaningful defense on his behalf (25; 58:16-17; 68:15).

### III. Alternatively, the trial court improperly denied Washington's request for substitution of counsel.

Having been denied his request to represent himself, Washington requested that Atty. Anderson be replaced with

new counsel (58:30).   The court erred when it denied Washington's request based solely on its timing.   It is clear from the record that the conflict between Washington and his attorney went far beyond mere disagreement over strategy. Washington had no faith in his attorney and did not trust him to represent his interests at trial.

The right to counsel includes "a qualified right to representation by counsel of the accused's choice." *State v. Wanta*, 224 Wis. 2d 679, 592 N.W.2d 645 (Ct. App. 1999).   It is up to the discretion of the trial court whether to grant a request. *State v. Darby*, 2009 WI App 50, 317 Wis. 2d 478, 766 N.W.2d 770.   However, on review, a court must address:

> (1) the adequacy of the court's inquiry into a defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict was so great that it likely result in a total lack of communication that prevented an adequate defense and frustrated a fair representation of the case.

*Wanta*, 224 Wis. 2d at 702-03.

The decision to approve or deny a request for substitute counsel is "a matter of the circuit court's discretion." *State v. Darby*, 2009 WI App 50, ¶28.   On review, the court must determine if the circuit court's decision is based on a logical interpretation of the facts and applied the proper legal standard to those facts in order to reach a reasonable conclusion. *Id.*

It is clear that Washington and his attorney had reached a point where no meaningful communication existed between them.   Washington and his attorney repeatedly argued on the record:

THE DEFENDANT: -- I'm going to represent –

ATTORNEY ANDERSON: No, you can't.  No, you can't.

THE DEFENDANT: I'm represented – I'm not – I'm facing a lot of time, Your Honor, and I need to talk too.

ATTORNEY ANDERSON: You can't talk right now.

(55:31).

Later, at sentencing, the following exchange occurred:

MR. ANDERSON: He's heard all of this

DEFENDANT: Let me – you didn't read it to him so let me tell him.  You didn't do it for me.  You didn't represent me.

MR. ANDERSON: You're wasting the court's time.

DEFENDANT: I am facing 100 years so what is 30 minutes of my time.

MR. ANDERSON: You're rehashing everything you said before.

DEFENDANT: Please, let me finish.  I want it on record.  You can excuse yourself from the court.  He said I could put it on the record.

....

DEFENDANT: . . . I want all this on the record.

MR. ANDERSON: I'm not your gopher now.

DEFENDANT: You've been their gopher since you been here, you might as well be mine now.

THE COURT: We'll take those, sir, and we'll have those marked and we'll have those filed with the court.  We'll take those, Mr. Anderson.

DEFENDANT: I'm doing your job for you because you didn't do it.  Ineffective.

(68:24, 30-31).

More importantly, however, when asked by the court about Washington's decision to fire him, Atty. Anderson stated that:

> He won't listen to me anymore. Which I take that to mean that we don't have an attorney client relationship anymore.

(58:7). Given that the lack of any meaningful relationship between the defendant and his attorney cannot be disputed, the court must focus on the adequacy of the trial court's inquiry and timeliness of the motion.

Again, the court did not engage the defendant in any meaningful inquiry into Washington's complaint. In fact, the court asked Atty. Anderson about the complaint rather than the defendant (58:7).

Finally, the timeliness of Washington's request for substitute counsel does not outweigh his constitutional right to counsel of his choice. As noted above, the determinative question concerning timely requests is whether the request is made for a legitimate purpose. Washington's request was motivated by a complete breakdown in the communication and trust with Atty. Anderson. Furthermore, the request for substitute counsel was made only after it had become clear that the court would not allow Washington to exercise his constitutional right to self-representation:

> MR. WASHINGTON: If anything if I'm not ready to present this case myself I will be asking for another attorney. You're not gonna push him on me. You're not

going to team up on me and do me like a dog. You're not going to do it. I'm not going to let it happen.

THE COURT: No one is trying to do that, sir. And you can't obstruct the orderly procedure of the court or manipulate it in the way you're trying to do so.

DEFENDANT: All I ask for is – All I'm asking for is a different lawyer.

(58:30).

Based on the above record, Washington did not ask for a continuance to stall the proceedings, and in any event, any delay would have been irrelevant because the court granted a continuance anyway. After forcing the defendant to continue with Atty. Anderson, the court postponed the trial for six weeks. The court noted "a number of reasons. And one that the court is concerned about is that Mr. Anderson has to be in . . . court . . . and picking a jury for next week." (59:1).

In light of the court's decision to postpone the trial in large part due to scheduling conflicts, there is no legitimate argument that the "societal interest in prompt and efficient administration of justice," *Wanta*, 224 Wis. 2d at 703, would have been harmed by granting the defendant's request for new counsel. Atty. Anderson was only the second counsel who had appeared on behalf of the defendant and a complete breakdown of communication had occurred. Therefore, Washington was improperly denied his right to counsel of his choice.

## CONCLUSION

For the above reasons, Washington is entitled to a reversal of his convictions under the John Doe complaint and warrant and dismissal of those charges based on the arguments set forth in Point Heading I. Alternatively, he is

entitled to a new trial based on the arguments set forth in Point Headings II and III.

Respectfully submitted this $\underline{28^{th}}$ day of August, 2012.

Tricia J. Bushnell
State bar No. 01010889

John A. Pray
State bar No. 01019121

## CERTIFICATION AS TO FORM

I hereby certify that this brief conforms to the rules contained in § 809.19(8)(b) and (c) for a brief and appendix produced with a proportional serif font. The length of the brief is 10,754 words.

Tricia J. Bushnell

## ELECTRONIC CERTIFICATION

I hereby certify that the text of the electronic copy of this brief is identical to the text of the paper copy of the brief. I also hereby certify that I have submitted an electronic copy of the appendix, which complies with the requirements of s. 809.19 (13). I further certify that this electronic appendix is identical in content to the printed form of the appendix filed as of this date. A copy of this certificate has been served with the paper copies of this appendix filed with the court and served on all opposing parties.

Tricia J. Bushnell

( Exhibit 4 A )

STATE OF WISCONSIN

IN SUPREME COURT

Appeal No. 2012AP1015 -CR

---

STATE OF WISCONSIN,

    Plaintiff-Respondent,

    v.

RODNEY WASHINGTON,

    Defendant-Appellant-Petitioner.

---

PETITION FOR REVIEW

---

John A. Pray, State Bar No. 01019121
Tricia Bushnell, State Bar No. 01080889

Micheal Hahn
Mary Hoynacki
Law Students

Attorneys for Defendant-Appellant-Petitioner

Criminal Appeals Project
Frank J. Remington Center
Univ. of Wisconsin Law School
975 Bascom Mall,
Madison, WI 53706
(608) 263-7461

# Table of Authorities

## Cases

*Brown v. State,*
  24 Wis. 2d 491, 129 N.W.2d 175 (1964) .............................. 19

*Dietz v. State,*
  149 Wis. 462, 136 N.W.166 (1912) ...................................... 19

*Faretta v. California,*
  422 U.S. 806 (1975) ............................................. 19-20, 23, 26

*Hamiel v. State,*
  92 Wis. 2d 656, 285 N.W.2d 639 (1979) ......................... 28-29

*Indiana v. Edwards,*
  554 U.S. 164 (2008) .............................................................. 26

*Pickens v. State,*
  96 Wis. 2d 549, 292 N.W.2d 601 (1980) ................... 20-22, 25

*State v. Belt,*
  179 P.3d 443 (Kan. 2008) ..................................................... 16

*State v. Dabney,*
  2003 WI App 108, 264 Wis. 2d 843, 663 N.W.2d 366 ......... 15

*State v. Davis,*
  2005 WI App 98, 281 Wis. 2d 118, 698 N.W.2d 823 ........... 15

*State v. Imani,* 2010 WI 66,
  236 Wis. 2d 179, 786 N.W.2d 40 ................... 19-20, **22, 24, 27**

*State v. Jennings*,
    2003 WI 10, 259 Wis. 2d 523, 657 N.W.2d 393...................14

*State v. Klessig*,
    211 Wis. 2d 194, 564 N.W.2d 716 (1997)..........21, 23, 26, 27

*State v. Marquardt*,
    2005 WI 157, 286 Wis. 2d 204, 705 N.W.2d 878...........22-23

*State v. Merrill*,
    155 Vt. 422, 584 A.2d 1129 (1990) ......................................27

*State v. Wanta*,
    224 Wis. 2d 679, 592 N.W.2d 645 (Ct. App. 1999) .............28

## Wisconsin Statutes

Wis. Stat. § 968.04(3)(a)4 .........................................................14, 17

## Table of Contents

Table of Authorities ...................................................................... iii

Statement of Issues ...................................................................... 1

Criteria for Review ....................................................................... 2

Statement of the Case and Facts ................................................... 4

Argument ...................................................................................... 14

   I.  This Court should accept review to decide what
       constitutes a specific DNA profile for the purposes
       of a John Doe warrant ...................................................... 14

      A. The question of what constitutes a specific
          DNA profile has never been addressed by the
          Court ........................................................................ 14

      B. There is confusion in the Court of Appeals as to
          what constitutes a specific DNA profile ................... 17

  II.  This Court should review this case to clarify the
       proper procedure to determine a defendant's
       competency to represent himself ..................................... 19

      A. This Court has not specifically defined the
          proper procedure for determining competency
          for self-representation ................................................ 19

      B. The implication of the Court of Appeals ruling
          would effectively eliminate the right to self-
          representation in cases with technical forensic
          evidence ................................................................... 23

C. The Court of Appeals did not address the open question of what is the proper remedy when a circuit court improperly denies a request for self-representation ...................................................... 26

III. This Court should review this case because the Court of Appeals misapplied the law regarding requests for substitute counsel ........................................ 28

Conclusion .............................................................................. 29

Table of Appendices ................................................................ 32

## STATEMENT OF ISSUES

1. Was Washington's prosecution for multiple counts of sexual assault barred by the statute of limitations because the 2000 John Doe complaint and warrant failed to identify a particular individual, and instead only listed genetic locations common to all humans?

   The trial court ruled that the complaint and warrant identified the defendant with sufficient particularity because it specified that the unknown perpetrator was a male with "matching DNA" at six genetic locations.

   The Court of Appeals affirmed the trial court's decision and held that the complaint and warrant were not deficient due to the phrase "matching DNA profile."

2. Did the trial court commit reversible error by denying Washington's request to represent himself at trial without first determining that the request was knowing, intelligent, and voluntary, or that he was competent to present a meaningful defense?

   The trial court denied Washington's request of self-representation based on its determination that he was incompetent to deal with the DNA evidence in the case.

   The Court of Appeals affirmed the trial court's decision, relying upon the trial court's determination that Washington did not possess sufficient knowledge about DNA evidence to represent himself.

3. Did the trial court err in denying Washington's alternative request for substitution of counsel, thus entitling him to a new trial?

The trial court denied Washington's request for substitute counsel based solely on the timing of the request.

The Court of Appeals held that the trial court was within its discretion to deny Washington's untimely request and any disagreement between him and trial counsel was over strategy, not a complete breakdown of communication.

## CRITERIA FOR REVIEW

1. **A real and significant question of federal or state constitutional law is presented. Wis. Stat. § 809.62(1r)(a).** The first issue in this case—whether the complaint and warrant sufficiently identified Washington—directly implicates the Fourth Amendment to the United States Constitution, and Article 1, §11 of the Wisconsin Constitution. The Fourth Amendment is implicated by the question of whether the 2000 complaint and warrant issued for John Doe #5 identifies Washington with particularity. Because of the increased use of DNA profiles in John Doe warrants, the definition of what constitutes a specific DNA profile represents a significant question under the federal and state constitutions. This issue also implicates Article 1, § 11 of the Wisconsin Constitution, which states, in part, "no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

The second issue involves interpretation of the Sixth Amendment to the United States Constitution, and Article 1, § 7 of the Wisconsin Constitution, insofar as they address important questions as to whether Washington should have been allowed to represent

himself in the absence of a colloquy that would explore his level of competence to represent himself.

The third issue—whether the trial court should have appointed new counsel when it denied Washington's motion to represent himself—also involves interpretation of the Sixth Amendment to the United States Constitution, and Article 1, § 7 of the Wisconsin Constitution.

2.   **A decision by the Supreme Court will help develop, clarify or harmonize the law.   Wis. Stat. § 809.62(1r)(c)2.**  The issue of what constitutes a specific DNA profile for purposes of tolling the statute of limitations has never been addressed by this Court. While previous Court of Appeals' decisions have stated that a complaint and warrant must specifically identify an individual and that a DNA profile is an acceptable method of identifying that individual, no court has defined what *constitutes* a specific profile.  This Court should provide needed guidance to circuit courts and district attorney's offices across the State to ensure that the requirements of Due Process are met when John Doe DNA warrants are issued in Wisconsin.

Review by this Court would help clarify the proper procedure circuit courts must use to determine the competency of a pro se defendant.   Additionally, the circuit courts' determination about a defendant's competency to proceed pro se raises novel issues regarding a defendant's right to self-representation when technical forensic evidence is part of the state's case.

3.   **The court of appeals' decision is in conflict with controlling opinions of the United States Supreme Court or the Supreme Court or other court of**



3

appeals' decisions.  Wis. Stat. § 809.62(1r)(d).  The Court of Appeals decision on the issue of Washington's request for substitute counsel conflicts with this Court's decision in *Hamiel v. State*, 92 Wis. 2d 656, 285 N.W.2d 639 (1979), and should be reviewed in order to avoid conflicting opinions or confusion among the lower courts.

## STATEMENT OF THE CASE AND FACTS

### *Facts related to the insufficiency of the complaint and warrant*

In 1994 and 1995, a series of five related sexual assaults occurred in Milwaukee.  DNA evidence was collected from the crime scenes and each of the victims. Examination by the Wisconsin Crime Lab of the DNA evidence revealed that the same perpetrator committed each crime; however, police were unable to identify the assailant (2).  On March 16, 2000—eleven days before the statute of limitations expired on the earliest of the charges—the State filed a John Doe Criminal Complaint in Milwaukee County Circuit Court.  The complaint charged "John Doe #5" with four counts of first degree sexual assault (use of a dangerous weapon) pursuant to Wis. Stat. § 940.225(1)(b), and one count of second degree sexual assault (use of force) pursuant to Wis. Stat. § 940.225(2)(a). (2).  "John Doe #5" was also charged with three counts of robbery under Wis. Stat. § 943.32(1)(a) and (2). (2).  The identifying information in the captions of both the complaint and warrant was as follows:

Doe, John #5, Unknown Male With Matching Deoxyribonucleic Acid (DNA) Profile at Genetic Locations D1S7, D2S44, D4S139, D5S110, D10S28, and D17S79

(2).   While this information provided the *genetic sites* describing *where genetic material existed*, the actual DNA profile of John Doe #5 at those locations was not included anywhere in the complaint (2).

Over seven years later, on June 25, 2007, a "cold hit" allegedly matched Rodney Washington's DNA to the DNA on each of the victims (58:21).  The term "cold hit" refers to the process where a DNA profile is run through the Combined DNA Index System (CODIS) and that profile matches the DNA profile of a criminal offender already in the system.   On August 8, 2007, the State filed an amended criminal complaint naming Washington as the defendant. Unlike the 2000 complaint, the 2007 amended complaint listed a series of numbers within parentheses, called alleles, at each of the genetic locations.  Because each genetic location listed its corresponding alleles, the amended complaint and warrant contained a specific DNA profile capable of being matched to the perpetrator (3).[1]

After a three-day trial in June 2008, a jury found Washington guilty of seven counts of sexual assault (32).  On July 15, 2008, the court, Hon. Jeffrey Wagner presiding, sentenced Washington to terms totaling 100 years imprisonment (68).  Washington's counsel never moved to

---

[1] The caption of the amended complaint read as follows:

> Rodney Washington, DOB 3/31/58; Formerly Known as Doe, John #5, Unknown Male with matching Deoxyribonucleic Acid (DNA) Profile at Genetic Locations D127, D2S44, D4S139, D5S110, D10S28, and D17S79 and Further Identified with Matching DNA profile at Genetic locations D3S1358(16), vWA(15, 16), FGA(19, 26), D8S1179(14), D21S11(28), D18S51(15, 20), D5S818(8, 13), D13S317(12, 13), D7S820 (10, 11), D16S539 (12, 13), THO1(6, 9, 3), TPOX (8, 10), AND CSF1PO (12)

(3).

sentenced Washington to terms totaling 100 years imprisonment (68). Washington's counsel never moved to dismiss the complaint on grounds that are the subject of this appeal (16; 114).

On September 30, 2009, Washington's appellate attorney filed a no-merit brief in the Wisconsin Court of Appeals, asserting that the complaint and warrant were properly filed (82), and that there were no other issues of arguable merit. Washington filed a pro se response to the no merit brief and argued that the DNA information in the complaint failed to identify the accused with reasonable certainty (119:2).

The Court of Appeals rejected appellate counsel's no-merit brief, and concluded that several meritorious issues existed:

> (1) whether the arrest warrant or complaint identified Washington sufficiently to toll the statute of limitations; (2) whether the trial court erred by denying Washington's request to proceed without counsel; (3) whether the court erred by denying Washington's request to have new counsel appointed; and (4) whether Washington's trial counsel was ineffective at sentencing by agreeing with the State's recommendation.

(Court of Appeals Order dated August 31, 2010, Appeal #2009AP2235-CRNM, 8).

Through his new counsel, Washington subsequently filed a motion for postconviction relief raising each of the

6

issues identified by the Court of Appeals, pursuant to Wis. Stat. §§ 803.30 and 974.02 (88).[2]

In his postconviction motion, Washington argued that the 2000 complaint and warrant were deficient since they did not contain a specific DNA profile and therefore failed to identify the accused with any reasonable certainty (88). Washington also claimed his trial counsel was ineffective because he failed to move to dismiss the charges for lack of personal jurisdiction on that basis (88).

On September 29, 2011, the court, Hon. David Borowski, conducted a postconviction hearing on the ineffective assistance of counsel claims (114).  The defense presented testimony from Karen Daily, a former forensic scientist at the Wisconsin Crime Lab.  Daily testified that she was familiar with DNA profiling and the methods used to develop a DNA profile (114:9-10).  She identified a DNA profile as "a set of areas of DNA that have been determined to be specific for humans as well as to individualize these humans between each other" (114:10).  When determining a DNA profile, locations on each chromosome, called loci, are examined to ascertain each of the loci's types (114:11-12). Daily testified that the six loci listed in the caption of the criminal complaint did not contain this information and did not constitute a DNA profile:

> Q: Though this – what do you see here in the caption, isn't really a DNA profile, is it?
> A: No, it's just the loci that are examined and then subsequent to that, specific types would be determined to individualize the sample.

---

[2] The fourth issue identified by the Court of Appeals was raised by Washington in a postconviction motion, but he later withdrew that claim and did not raise it on appeal.

Q: And you would need more information in order to
have a specific DNA profile listed there?
A: Yes.

(114:14).

Daily also stated that the identifying information
necessary to provide a complete DNA profile was at that time
expressed in x-ray photocopies called autorads or lumigraphs.

Q: You would have some report that was able to
individualize what it is about this profile that makes it an
individual profile?
A: We would have had autorads or lumigraphs that
would have indicated the locations along that gel and
then –
Q: So there is a written report at some point. Maybe you
can't express it as numbers in parentheses but you have
some kind of report that is saying here is the expression
of this DNA profile and you have that in a report?
A: It would have been in the autorads or the lumigraphs,
would have been kept with the case file at the crime lab.
It would not have been in a police report because it was
strictly to be interpreted by a forensic scientist. Those
were – you know, you couldn't do the number things.
Q: And that's in the crime lab report?
A: Well, the crime lab – it's been a long time.
Q: The crime lab notes?
A: Notes yes, the autorads or lumigraphs would have
been kept in the crime lab notes. They are part of the
notes that were generated on the case. It would have
been kept in a case file regarding that case.

(114:36).

At the hearing, trial counsel also testified that he did not object to any deficiencies in the complaint and warrant because he did not believe there were any defects (114).

The court did not issue a ruling at the September 29 hearing, but held the matter open for further proceedings (114:78). Subsequently, on November 17, 2011, the defense submitted an affidavit by another DNA expert, Dr. Gregory Hampikian, and offered to present his testimony (106). In his affidavit, Dr. Hampikian explained that the combination of loci and their type information, known as "alleles," is what creates a DNA profile capable of being "matched to a specific individual with a calculated probability of exclusion." (106.) Hampikian further stated that at the time the original John Doe complaint was filed, the DNA profiles of any particular individual could have been expressed by a series of numbers as to each of the loci as well as by autorads or lumigraphs (106).

Based on the testimony of Daily and the affidavit of Dr. Hampikian, Washington argued that the complaint and warrant were fatally defective, since they did not specify any particular individual, and that the statute of limitations had therefore expired (114:36). The State did not dispute information provided by Daily or Hampikian, but argued that the complaint was sufficient since it stated that the perpetrator was a person who had a "matching" DNA profile at the six genetic locations listed (91:3).

On April 23, 2012, the court, Hon. David Borowski presiding, issued its ruling denying Washington's motion for postconviction relief (111) (Appendix B). The court held that the complaint and warrant sufficiently identified Washington because they indicated that the alleged perpetrator was an unknown male with a "matching DNA profile" at various genetic locations (111).

Washington appealed. On March 26, 2013, the Court of Appeals affirmed the trial court decision, holding that the trial court had personal jurisdiction over Washington because the warrant identified him with reasonable certainty and therefore counsel was not ineffective for raising the issue at trial. *State v. Washington*, 2012AP1015 (Ct. App. Mar. 26, 2013) (hereinafter Slip op.) (Appendix A).

### *Facts related to Washington's requests to proceed pro se and for substitution of counsel*

Four months before trial, Washington submitted a written pro se "notice" to the court (14). He stated, "if [my lawyer] do not file any motions to dismiss this case out of court when I come before you, I will be going pro se to defend myself in this case on that date of Feb. 14, 2008." (14:3). During the *Miranda/Goodchild* hearing on February 14, 2008, Washington reiterated: "I just want to go *pro se* in this case and defend myself." (51:31). After a brief recess, his attorney, Scott Anderson, informed the court "I talked to Mr. Washington in the back. There's no – he's withdrawing his request to go *pro se.*" (55:32).

On April 28, 2008, Washington again requested to represent himself before the court (57:2). After a recess, Atty. Anderson informed the court that it was Washington's intention to proceed pro se:

> MR. ANDERSON: Judge, since we were on the record this morning, I've talked to Mr. Washington before this was called this afternoon. I had filed a motion this morning based on Mr. Washington wanting to fire me. He told me on Friday that I was not his lawyer anymore. So I filed. And I talked to him again

just a bit ago and it is his desire to have me not represent him. He wants to go pro se. Is that still your desire?

 DEFENDANT: That's correct.

 THE COURT: And why is that, sir?

 DEFENDANT: Because I haven't been properly represented in this courtroom by neither attorney I have had...

(58:2).  Later in the proceedings Atty. Anderson offered to explain the situation between him and Washington:

> MR. ANDERSON: And I asked him whether he would listen to my advise [sic], take my advise [sic], hear me out on certain issues pertaining to this trial, including offers and as basic as an offer here and he refuses to take any add [sic] advise [sic] that I may give him. He won't listen to me anymore. Which I take that to mean that we don't have an attorney client relationship anymore.  Is there anything I said -- Is that wrong or what?
>
> DEFENDANT: That's right.  That's correct.

(58:7).

The court then asked whether Washington understood that he was required to follow the rules of the court, to which the defendant replied:

> DEFENDANT: I have no problem with that.
>
> THE COURT: Well, do you know the rules of evidence, sir?
>
> DEFENDANT: Do I what?
>
> THE COURT: Know the rules of evidence?
>
> DEFENDANT: When they are brought to my attention, I will know.

(58:8).

The court made no additional inquiry and found that Washington was incompetent to represent himself due to the DNA evidence in the case:

> THE COURT: Well, here is the problem with proceeding pro say [sic] like you want to, and you have a right to do that unless the court doesn't feel that you're competent to do that and the court doesn't believe that you're competent to do that and I'll tell you why, because of the DNA.

(58:8-9).

In addition, the court stated that "it becomes problematic . . . since this is a sexual assault case for you to quite frankly cross-examine the witnesses." (58:9). Washington again stated "Mr. Anderson is no longer on this case. If anything I say it again for the record. *I do not not [sic] trust Mr. Anderson with my case.*" (58:9) (emphasis added). Atty. Anderson explained to the court that no communication existed between him and Washington (58:11).

After the court refused to grant his request of self-representation, Washington requested substitute counsel:

> THE COURT: . . . Mr. Anderson, you apparently are prepared to try the case. The court doesn't believe based upon the court's colloquy –
>
> MR. WASHINGTON: I don't want him as my attorney. I told you that once before. So he is not going to be the attorney on here and you're not going to push him on me. That's for the record also.
>
> THE COURT: Okay. I understand that.

12

> MR. WASHINGTON: If anything if I'm not ready
> to present this case myself I will be asking for another
> attorney. You're not gonna push him on me. You're not
> going to team up on me and do me like a dog. You're
> not going to do it. I'm not going to let it happen.
>
> THE COURT: No one is trying to do that, sir. And
> you can't obstruct the orderly procedure of the court or
> manipulate it in the way you're trying to do so.
>
> DEFENDANT: All I ask for is – All I'm asking for
> is a different lawyer.

(58:30).   In response, the court noted that Washington's requests came on the day of trial and that Atty. Anderson was the defendant's second lawyer (58:31).

Later in the same proceeding, the court was about to proceed to trial when Washington again pleaded with the court not to force Atty. Anderson on him:

> DEFENDANT: You can do what you want to do.
> You can take me back. You all can have this trial
> without me. I don't have a problem with that. I'm not
> going to come. I am not going to be represented. I'll say
> it again. You're not going to tag team me up in your
> courtroom with a loop around my neck. You're not
> going to do it to me.

(58:40).

The court adjourned for the day without proceeding to trial or jury selection (58:47). The court reconvened the next day and granted a continuance based on a scheduling conflict for Atty. Anderson (59:2). As a result, the trial was postponed until June 9, 2008 (59:7). At Atty. Anderson's request, the court ordered a competency evaluation for Washington (59:3,7). In the competency evaluation, Dr.

Smail found that Washington was competent to stand trial and exhibited "no evidence . . . of a mental defect of any sort." (25:3).

In his appeal, Washington claimed that the trial court erred in denying his motion to conduct the trial pro se. He also claimed, alternatively, that the court erred in denying his request for another attorney. The Court of Appeals affirmed the trial court's decisions on both issues. **Slip op.**

## ARGUMENT

I.   **This Court should accept review to decide what constitutes a specific DNA profile for the purposes of a John Doe warrant.**

This case presents an opportunity for this Court to provided much needed guidance on the issue of what constitutes a specific DNA profile to toll the statute of limitations with a John Doe warrant. Despite the fact that the Court of Appeals has held that a specific DNA profile is necessary, it has never defined what a specific DNA profile actually is, resulting in significant confusion in the lower courts on this issue. Thus Washington's case presents an issue of first impression for this Court with implications that reach far beyond this case.

### A. The question of what constitutes a specific DNA profile has never been addressed by this Court.

The issue in this case is what constitutes a specific DNA profile capable of identifying a suspect with reasonable certainty as required by Wis. Stat. § 968.04(3)(a)4. Both the original complaint and warrant failed to include a specific DNA profile, and only stated that John Doe #5 was an unknown male with "matching" DNA profiles at six genetic

locations (76).[3]   It is undisputed that those six genetic locations are common to all humans and could not be used to identify any specific individual.   However, both the circuit court and the Court of Appeals ruled that the DNA information listed was sufficient because the caption stated that the perpetrator's profile would contain "matching" DNA at the listed loci (111); **Slip op.** ¶ 21.

Neither this Court nor the Court of Appeals has ruled on the issue presented here:   whether a complaint and/or warrant must contain the actual DNA profile of the suspect, or whether it is sufficient to merely indicate that the John Doe has a DNA profile that "matches" crime scene evidence.

The Court of Appeals has decided two cases addressing the use of DNA profiles in John Doe warrants: *State v. Dabney*, 2003 WI App 108, 264 Wis. 2d 843, 663 N.W.2d 366, and *State v. Davis*, 2005 WI App 98, 281 Wis. 2d 118, 698 N.W.2d 823.   In *Dabney*, the Court addressed whether a John Doe warrant with a DNA profile used to identify the suspect could toll the statute of limitations in general.   The court found that a John Doe complaint or warrant *setting forth a specific DNA profile* is "arguably the most discrete, exclusive means of personal identification possible," and is thus sufficient to toll the statute of limitations. *Dabney*, 2003 WI App 108, ¶ 15.

In *Davis*, the Court addressed whether an original complaint and warrant containing a DNA profile used to identify a suspect could be amended after applying new

---

[3] Under Wisconsin law, either a valid complaint or a valid warrant is sufficient to toll the statute of limitations. *State v. Jennings*, 2003 WI 10, ¶ 23, 259 Wis. 2d 523, 657 N.W.2d 393.   In Washington's case, both the original complaint and warrant contained identical information and were deficient.   Therefore, the complaint failed to answer the question of "who" is being charged, and the warrant did not identify the defendant with "reasonable certainty." *Dabney*, 2003 WI App 108, ¶ 12.

testing technology to the profile. The Court approved of the amended John Doe complaint because it "specifically identified Davis's DNA in a complaint before the statute of limitations expired." *Davis,* 2005 WI App 98, ¶ 34.

Neither court, however, defined what a specific DNA profile is, and did not address the question presented here— whether the required particularity can be furnished by indicating on the warrant that the perpetrator was an unknown person whose unspecified DNA profile "matches" DNA found at the crime scene. Indeed, this issue has not been addressed by any Wisconsin court previously.

The Kansas Supreme Court's ruling in *State v. Belt,* 179 P.3d 443 (Kan. 2008) provides guidance. There, the court held that a complaint does not identify an individual with reasonable certainty unless it specifies the actual DNA profile of the suspect. In *Belt,* John Doe warrants and complaints were issued listing a set of DNA locations as the identifying information. *Id.* at 444-47. As here, the documents did not define the unique or specific allelic information found at these locations. *Id.* at 448. Rather, the complaints stated either that "the semen donor's DNA LOCI is D2S44 and D17S79" or that "the [donor's] LOCI is D2S44, D1S7, D10[S]28, D4S139," and that the corresponding DNA description would be unique to the perpetrator. *Id.* No specific DNA profile was provided until after the statute of limitations had run. *Id.* at 447. The Kansas Supreme Court held that because neither the warrant nor complaint identified Belt with a specific DNA profile, the warrant was invalid, and thus prosecution did not commence within the statute of limitations. *Id.* at 451.

In Washington's case, the Wisconsin Court of Appeals distinguished *Belt* solely based on the fact that the warrant

and complaint in that case did not contain the word "matching" as it did in Washington's case. **Slip op.** ¶ 22.

This case presents the opportunity to define what a specific DNA profile is for the purpose of identifying suspects in John Doe warrants and tolling the statute of limitations. Because there is no law on point in Wisconsin as to what a specific DNA profile is, this is an issue of first impression on which this court should rule.

### B. There is confusion in the Court of Appeals as to what constitutes a specific DNA profile.

The Court of Appeals is mistaken in its determination of what constitutes a specific DNA profile capable of being matched to a perpetrator.    Although it concedes that "Washington is correct that the original complaint and arrest warrant in this case do not include an individual DNA profile," it insists that using the word "matching" identified Washington with reasonable certainty. **Slip op.** ¶ 20. That is incorrect.  Loci are genetic locations common to all human beings.  The loci's *alleles* are what distinguish one person's DNA profile from another (114).  It is only the combination of loci and their corresponding alleles that make up a specific DNA profile (106).  Indeed, loci alone cannot be "matched" to an individual's DNA profile (106).    This would be analogous to asking a person to find an exact match of a playing card but only providing him with the suit of the card. It is impossible for him to find the exact match unless he has the suit's corresponding number.

Akin to the card example, an exact DNA profile match can only be found if the loci's corresponding alleles are provided.  If there are loci but no alleles, there is no specific DNA profile.    If there is no specific DNA profile it is impossible to "match" it to the true perpetrator.  And if it is

impossible to "match" the DNA profile to the true perpetrator, the warrant is not capable of identifying the perpetrator with reasonable certainty as required by Wis. Stat. § 968.04(3)(a)4.

If the Court of Appeals' ruling stands, its consequences will reach far beyond Washington's case. If the statute of limitations is tolled simply by issuing John Doe warrants with incomplete information for identifying a suspect with reasonable certainty, there is effectively no need for a statute of limitations. As long as police use the "matching" language, regardless of how little information is given, a complaint can be issued days before the statute of limitations is set to expire and a suspect can be prosecuted decades later once additional identifying information is found.

These concerns extend to many types of cases beyond those involving DNA. For example, the State could issue warrants for a John Doe who has "matching fingerprints," but then fails to provide any such information describing the actual fingerprint. Similarly, a warrant could state that the suspect is an individual who "matches" a grainy robbery video without providing any such image. Indeed, in either of these circumstances, it would be impossible to know if the evidence the State possessed was even in a condition in which it *could* be matched—perhaps the image is too grainy or the prints incomplete. Such a result would have profound impact on the statute of limitations, making it all but nonexistent.

Yet that is what the Court of Appeals' decision allows. Because this is an issue of first impression with far reaching implications and because there is confusion in the lower courts, this Court should grant the petition for review and make a ruling on what constitutes a specific DNA profile.

## II. This Court should review this case to clarify the proper procedure to determine a defendant's competency to represent himself.

Washington's appeal presents an opportunity for this Court to provide needed clarity in the law on the issue of a defendant's right to self-representation under both the United States and Wisconsin Constitutions. Specifically, this appeal offers opportunities to clarify the proper procedure by which a trial court should determine a defendant's competency to proceed pro se, whether technical legal knowledge is relevant to competency, and what the remedy is for an improper denial of a defendant's right to self-representation.

The right of self-representation is fundamental to our notions of due process. *Faretta v. California*, 422 U.S. 806, 819-20 (1975) ("the right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails."). Indeed, this Court has affirmed the right of self-representation for at least a century. *See Dietz v. State*, 149 Wis. 462, 136 N.W. 166, 173 (1912) ("Every person sui juris, who is charged with crime, has the right to try his own case if he so desires."); *Browne v. State*, 24 Wis. 2d 491, 510-11, 129 N.W. 2d 175 (1964) ("a defendant would be denied [due process] if counsel were imposed upon him against his wishes."). Thus, the procedure to determine when a defendant is competent to represent himself should be clear and uniformly applied in all cases where the right is requested. Given the importance of these issues for defendants and courts throughout the state, a decision by this Court will have an impact far beyond the specific facts of this case.

### A. This Court has not specifically defined the proper procedure for determining competency for self-representation.

Currently, Wisconsin courts must perform a two-part inquiry when a defendant seeks to represent himself. *State v. Imani*, 2010 WI 66, ¶ 21, 236 Wis. 2d 179, 786 N.W.2d 40. First, the circuit court must determine whether the defendant is knowingly and voluntarily waiving his right to counsel. *Id.* Second, the circuit court must determine whether the defendant is competent to present a meaningful defense. *Id.* The procedure for making such a competency determination, however, remains unclear.

In *Pickens v. State*, 96 Wis. 2d 549, 292 N.W.2d 601 (1980), this Court set out the standard by which a trial court should determine whether a defendant, requesting to represent himself, is competent and possesses the "ability to present at least a meaningful defense." *Id.* at 568.   To make this determination, the Court advised that the trial court:

> should *examine [the defendant] on the record . . .* to determine whether he possesses the minimal competence necessary to conduct his own defense.   Factors to consider in making this [competency] determination include the defendant's education, literacy, fluency in English, and any physical or psychological disability which may significantly affect his ability to communicate a possible defense to the jury.

*Id.* at 568-69 (emphasis added).   The Court also cautioned that "technical legal knowledge is not relevant" and that a "timely and proper request should be denied only where a specific problem or disability can be identified." *Id.* (citing *Faretta*, 422 U.S. at 835).

Nonetheless, while the *Pickens* Court advised making such an examination on the record, it did not require a colloquy for determining competency. Instead, it held that a

reviewing court may look *anywhere* in the record to support a trial court's finding regarding competency. *Pickens*, 96 Wis. 2d at 569-70 ("On review, therefore, its determination that the defendant is or is not competent to represent himself will be upheld *unless totally unsupported* by the facts apparent in the record.") (emphasis added.)

The Court again addressed the issue of self-representation in *State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997). In *Klessig*, the Court for the first time *required* a trial court to enter into a colloquy with the defendant on the issue of waiver. However, the Court did not make a similar requirement regarding the competency determination and left in place *Pickens'* suggestion that trial courts "examine the defendant on the record" to determine competency. *Id.* at 212.

As a result, trial courts and appellate courts alike have struggled to determine whether the Court's suggestion that to make a competency determination on the record—implying a colloquy—has any substance.  This is highlighted by the standard of review in both *Pickens* and *Klessig*, stating that an appellate court must find the trial court's determination valid unless it is completely unsupported by facts anywhere in the record.  In theory, a trial court may make a determination without a colloquy and without any supporting evidence and which survive on appeal if the reviewing court can find any support in the record.

This Court should accept this case to declare that a trial court must engage in a colloquy with the defendant to determine competency for self-representation.  The Court was correct in suggesting in *Pickens* and *Klessig* that this was a good idea, but without any teeth to that suggestion, it trivializes the fundamental constitutional right of self-representation.

This problem is illustrated in subsequent decisions by this Court. For example, in *State v. Marquardt*, the trial court conducted a hearing specifically to determine Marquardt's competency, so the issue of whether a hearing or colloquy is required was not addressed by the Court. *See State v. Marquardt*, 2005 WI 157, ¶ 62, 286 Wis. 2d 204, 705 N.W.2d 878. Rather, in determining competency, the Supreme Court addressed whether the record demonstrated "an identifiable problem or disability that may prevent a defendant from making a meaningful defense." *Id.* ¶ 61. The Court held that "we do not share Marquardt's view that the circuit court must always make an express finding as to which specific problem or disability prevented a defendant from being able to meaningfully represent himself." *Id.* ¶ 68. This holding highlights the confusion of whether a colloquy is required, because so long as *any* reason can be found in the record, a defendant may be judged incompetent to proceed pro se without a colloquy or hearing.

Most recently, in *State v. Imani*, the Court emphasized that a determination by the trial court that a defendant is incompetent to proceed pro se will be upheld unless "totally unsupported by the facts apparent on the record." 2010 WI 66, ¶ 37 (quoting *Pickens*, 96 Wis. 2d at 569-70). The language chosen by the Court again indicates that a colloquy or hearing is unnecessary so long as *any* identifiable reason appears somewhere in the record.

As a result of these cases, the circuit courts do not have a clear procedure by which to judge a defendant's competency to represent himself or herself. Under this Court's precedents it is unclear whether a colloquy or hearing is required, or whether a trial court can simply declare a defendant incompetent, knowing that a reviewing court will search the record for *some* justification of the determination.

This Court should accept this case to both clarify and require a colloquy to determine competency for self-representation.

### B. The implication of the Court of Appeals ruling would effectively eliminate the right to self-representation in cases with technical forensic evidence.

This Court should also review Washington's case because the outcome has serious implications for the constitutional rights of all criminal defendants. The Sixth Amendment protects the right of self-representation in large part because a denial of the right "can only lead [a defendant] to believe that the law contrives against him." *Faretta*, 422 U.S. at 834. Thus, "although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Id.* As a result, "there appear to be few circumstances under which a court may deny a timely request for self-representation." *Klessig*, 211 Wis. 2d at 216 (Abrahamson, C.J., concurring). Nonetheless, the effect of the trial court's ruling in this case—and the result of the Court of Appeals in affirming it—would all but eliminate the right in any case where technical or scientific evidence is at issue.

In the opinion below, the Court of Appeals noted that "DNA evidence was critical to determining Washington's guilt, and Washington needed to be able to understand and decipher that evidence to properly represent himself." **Slip op.** ¶ 31. This assumes that, in order to represent himself at trial, Washington would need to attack the accuracy of the DNA tests or the protocols by which the evidence was handled. One problem with this approach is that a pro se defendant is not required to present the defense that the court believes is the correct one, but rather *any* meaningful defense. *See Marquardt*, 2005 WI 157, ¶ 61. Furthermore, the Court

23

of Appeals completely ignored that Washington was in fact able to identify a meaningful defense: in his response to the No Merit Report, Washington proved he possessed enough knowledge of DNA to explain a meaningful defense. He wrote:

> An arrest warrant or supporting affidavit inclusion of a unique DNA profile can qualify as a description by which a defendant can be identified with reasonable certainty. Whereas let the record reflect mere listing of DNA locations in the warrant or supporting affidavit cannot. Whereas the John Doe #5 DNA arrest warrant that was issued in this case did not set fourth [sic] the unique DNA profile of their subject, the John Doe #5 arrest warrant was a mere listing of DNA locations that's common to all human beings, whereas it was a near complete lack of identifying information, whereas neither the John Doe #5 arrest warrant nor the complaint or a [sic] affidavit supporting them set forth the unique DNA profile of their subject.

(119:2).

This contradicts the trial court's conclusion, yet the Court of Appeals dismisses it: "the question before us is not whether there is evidence in the record demonstrating that Washington had the minimal competence to evaluate the voluminous discovery materials relating to the DNA matches and to address that evidence at trial, but whether there is evidence in the record supporting the trial court's decision that he did not." **Slip op. ¶ 32.** If the Court of Appeals is correct, then it flips this Court's precedents on their head. Time and again this Court has held that "a defendant of average ability and intelligence may still be adjudged competent for self-representation, and accordingly, a defendant's 'timely and proper request' should be denied only

24

where the circuit court can identify a specific problem or disability that may prevent the defendant from providing a meaningful defense." *Imani*, 2010 WI 66, ¶ 37 (quoting *Pickens*, 96 Wis. 2d at 569). Thus, only those defendants who are incapable of presenting *any* meaningful defense should be deemed incompetent. Instead, the Court of Appeals would uphold the circuit court's decision so long as *any* reason to deny the right of self-representation can be identified—even if that reason turns out to be false.

In addition, the basis on which the circuit court denied the request would all but eliminate the right of self-representation when scientific evidence is presented at trial. Here, the circuit court denied Washington's request solely because of his assumed lack of knowledge of DNA evidence:

> COURT: [T]he court doesn't believe that you're competent to do that and I'll tell you why, because of the DNA. The DNA that's involved in this case which is scientific and very few people outside the legal profession and scientists know how that works.

(58:8). This same rationale could be used to deny *any* defendant the right of self-representation. In any criminal prosecution that relies on technical forensic evidence, a defendant would almost certainly be unfamiliar with that technology or science and unable to analyze the evidence on his or her own. As a result, even if the defendant is otherwise competent to represent himself, the circuit court could still find him incompetent on the basis of a lack of technical knowledge.[4]  Such a result would run afoul of the Court's

---

[4] This is not an issue solely for DNA cases, but is also implicated in cases that involve such evidence as ballistics, photogrammetry, bloodstain pattern analysis, fingerprints, or medical analysis such as shaken baby syndrome. Even well-educated individuals can often be unfamiliar with these sciences.

warning that "technical legal knowledge is not relevant." *Pickens*, 96 Wis. 2d at 568.

If the circuit court's basis for finding Washington incompetent is valid, it not only makes technical legal knowledge *relevant*, but a *requirement* of self-representation. Such a rule would infringe upon the protections of the Constitution by forcing a defendant to go to trial with unwanted counsel. *See Faretta*, 422 U.S. at 821 ("An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction."); *Indiana v. Edwards*, 554 U.S. 164, 186-87 (2008) (Scalia, J., dissenting) ("[T]here is equally little doubt that the loss of 'dignity' the right is designed to prevent is *not* the defendant's making a fool of himself . . . Rather the dignity at issue is the supreme human dignity of being master of one's fate rather than a ward of the State—the dignity of individual choice."). For these reasons, the Court should accept review of Washington's case to consider the far-reaching impact it would have on the fundamental right to self-representation.

> ### C. The Court of Appeals did not address the open question of what is the proper remedy when a circuit court improperly denies a request for self-representation.

This Court should accept review of this case because it is unclear what the appropriate remedy is when a defendant is improperly denied the right of self-representation. The Court of Appeals recognized that the trial court did not engage in the full *Klessig* colloquy, so if the trial court also failed to adequately determine Washington's counsel, the question of remedy must be resolved. *See* **Slip op.** ¶ 30.

In *Klessig*, the Court found that a remand was the proper remedy. There, it remanded the case to the circuit

court to "determine whether it can make an adequate and meaningful nunc pro tunc inquiry into the question of whether Klessig was competent to proceed pro se." *Klessig*, 211 Wis. 2d at 213. If the circuit court determined that it could conduct such an inquiry, then it was required to hold an evidentiary hearing. *Id.* If it determined that no such hearing could be held, then Klessig was entitled to a new trial. *Id.* However, the Court acknowledged that in some cases the record will clearly demonstrate a hearing would be unnecessary. *Id.*

In her concurring opinion, Chief Justice Abrahamson expressed serious concerns about the usefulness of the nunc pro tunc inquiry and the trial court's ability to conduct such an examination. She cautioned that, as a practical matter, the Court "should recognize the difficulty, if not the impossibility, of conducting a meaningful nunc pro tunc competency inquiry. *Klessig*, 211 Wis. 2d at 222 (Abrahamson, C.J., concurring). The Chief Justice also stated that the inquiries threatened to "trivialize a fundamental constitutional right by allowing the State to try its case as to the waiver of that right by trial and error." *Id.* (quoting *State v. Merrill*, 155 Vt. 422, 584 A.2d 1129, 1133 (1990) (Mahady, J., concurring)).

After *Klessig*, the Court accepted review of *Imani* initially for the sole purpose of answering whether "the proper remedy [is] a new trial or a retrospective evidentiary hearing." *Imani*, 2010 WI 66, ¶ 41 (Crooks, J. dissenting). The Court, however, did not reach the issue of remedy because the majority found that the circuit court's denial of Imani's request for self-representation was proper. *Id.* ¶ 40 (Ziegler, J.). Even so, the majority stated that an improper denial of the right of self-representation is "structural error subject to automatic reversal." *Id.* ¶ 21. The dissent, however, focused intently on the question of remedy and would "remand to the circuit court for the required

retrospective evidentiary hearing in accord with *Klessig*." *Id.*
¶ 76 (Crooks, J. dissenting).   Based on this history, the
question of remedy remains open and Washington's case
provides another opportunity for the Court to address it.

### III. This Court should review this case because the Court of Appeals misapplied the law regarding requests for substitute counsel.

Finally, this case presents an opportunity to address
whether a court may deny a defendant's request for substitute
counsel based solely on the timing of the request.   The right
to counsel includes "a qualified right to representation by
counsel of the accused's choice." *State v. Wanta*, 224 Wis.
2d 679, 592 N.W.2d 645 (Ct. App. 1999)   On review, a court
must address:

> (1) the adequacy of the court's inquiry into a defendant's
> complaint; (2) the timeliness of the motion; and (3)
> whether the alleged conflict was so great that it likely
> result in a total lack of communication that prevented an
> adequate defense and frustrated a fair representation of
> the case.

*Id.* at 702-03.   Furthermore, a court cannot deny such a
request solely on the timeliness of it, but rather "whether the
request is proffered merely to secure delay or tactical
advantage." *Hamiel v. State*, 92 Wis. 2d 656, 673, 285
N.W.2d 639 (1979).   The Court of Appeals did not properly
apply this standard and ignored the total breakdown of
communication between Washington and trial counsel.
(55:31; 68:24, 30-31).   This included trial counsel's own
assessment that "we don't have an attorney client relationship
anymore." (58:7).

Washington's request for substitute counsel was not
for mere tactical delay and therefore the timeliness of the

request could not be determinative.  Rather, the determinative question is whether the request is made for a legitimate purpose.  *See Hamiel*, 92 Wis. 2d at 673.  The Court of Appeals did not address this and instead held that Washington's request would "unnecessarily delay" the trial and there "was simply no indication that Washington would be any happier with new counsel."  **Slip-op.** ¶ 40.  However, after denying Washington's request, the circuit court delayed the trial for six weeks due to a scheduling conflict, and there is nothing in this Court's precedents that allow a circuit court to consider the likelihood of cooperation with new counsel. (59:1).

Because the Court of Appeals' decision misapplies the law to Washington's request for substitute counsel, this Court should accept review.

## CONCLUSION

For the reasons stated, Washington requests that this Court accept his case for review.

Respectfully submitted this 25th day of April, 2013.

John A. Pray
State Bar No. 01019121

Attorney for Defendant-Appellant-Petitioner

Criminal Appeals Project
Frank J. Remington Center
University of Wisconsin Law School
975 Bascom Mall
Madison, WI 53706
(608) 263-7461

## CERTIFICATION AS TO FORM AND LENGTH

I hereby certify that this petition conforms to the rules contained in s. 809.19(8)(b) and (d) for a brief and appendix produced with a proportional serif font, minimum printing resolution of 200 dots per inch, 13 point body text, 11 point for quotes and footnotes, leading of minimum of 2 points and maximum of 60 lines.   The length of the petition is 7,819 words.

John A. Pray
State Bar No. 01019121

## CERTIFICATION AS TO APPENDICES

I hereby certify that filed with this petition, either as a separate document or as a part of this brief, is an appendix that complies with § 809.19(2)(a) and that contains: (1) a table of contents; (2) relevant trial court record entries; (3) the findings or opinion of the trial court; and (4) portions of the record essential to an understanding of the issues raised, including oral or written rulings or decisions showing the trial court's reasoning regarding those issues.   Further, I certify that I have included a copy of the Court of Appeals' decision in this case pursuant to Rule 809.62(2)(f)1.

I further certify that if the record is required by law to be confidential, the portions of the record included in the appendix are reproduced using first names and last initials instead of full names of persons, specifically including juveniles and parents of juveniles, with a notation that the portions of the record have so reproduced to preserve confidentiality and with appropriate references to the record.

John A. Pray
Attorney for Defendant-Appellant-Petitioner

30

## ELECTRONIC CERTIFICATION

I hereby certify that the text of the electronic copy of this brief is identical to the text of the paper copy of the brief

John A. Pray

Exhibit S-A

1

2

3 STATE OF WISCONSIN      CIRCUIT COURT      MILWAUKEE COUNTY
                              BRANCH 38

4 ------------------------------------------------------------

5 STATE OF WISCONSIN,

6            Plaintiff,

7 Vs.                              Case No. 00CF001310

8 RODNEY WASHINGTON,

9            Defendant.

10 ------------------------------------------------------------

11                         JURY TRIAL

12 ------------------------------------------------------------

13 April 28, 2008                    HON. JEFFREY WAGNER
                                   CIRCUIT COURT JUDGE

14

15

16 A P P E A R A N C E S:

17
            NORM GAHN, Assistant District Attorney,
18          appearing on behalf of the State.

19          SCOTT ANDERSON, Attorney at Law,
            appearing on behalf of the defendant.
20
            Defendant in custody, produced.
21
            Barbara J. Bohl, Official Reporter
22

23

24

25

                              1

1     would be litigating this issue.  I'm still confused

2     as to what Mr. Washington's issue is.

3               THE COURT:  Well, why don't you

4     state your reasons why you believe that the statute

5     of limitations has run and regarding the John Doe

6     warrants, I think the John Doe warrants, when

7     you're issuing, why they were issued on that day.

8     I think that needs some clarification.

9               MR. GAHN:  Your Honor, on March 16th

10    of the year 2000, I issued the criminal complaint

11    sworn to by Detective Gaglione who is seated next

12    to me.  And it was issued as a John Doe warrant.

13    In other words, the caption of the case read State

14    of Wisconsin versus John Doe #5 and it had the

15    genetic profile of the male individual that was

16    derived from semen in five incidents of sexual

17    assault.

18               The first incident of sexual assault

19    occurred on March 27th of 1994.  The second on

20    August 11th of 1994, the third on November 29th of

21    1994, the fourth on December 20th of 1994, and the

22    5th on January 14th of 1995.

23               THE COURT:  And that was filed on

24    March 16th, 2000?

25               MR. GAHN:  I'm sorry, please?

19

1                           THE COURT:   That was filed on March

2      16, 2000?

3                           MR. GAHN:   That is correct which

4      would have been about 11 days prior to the

5      expiration of the statute of limitations on a case

6      that occurred on March 27th of 1994.

7                           Now, when I issued these we did not

8      have any Court of Appeals decisions on these cases,

9      but a number of them were issued out of Milwaukee

10     County.   Subsequent to issuing this there was

11     another case called State of Wisconsin versus Bobby

12     Dabny and that was our John Doe number 12 which was

13     also issued based upon the genetic profile.   And

14     that case went in front of -- up to the Appellate

15     Court.   And the Appellate Court ruled that the

16     issuance of John Doe warrants if done within the

17     statutory -- within the limitations of the statute

18     of limitations, if it commences proceedings and the

19     state then has jurisdiction of that case because

20     the proceedings were commenced within the statute

21     of limitations.

22                          This was ruled on in that case and

23     also ruled on in the Davis case which was also a

24     John Doe case and that can be found at the first

25     case I referred to, State v. Dabnay 663 NW2nd,

                               20

1      366.   It is WI Appellate decision from 2003 and at

2      State V. Davis, 698 NW2nd, 823.   It is a 2005 WI

3      Appellate court decision.   And both of those

4      maintain that the state is permitted to file a

5      warrant complaint which identifies the defendant

6      only by his DNA profile and that both those two

7      Wisconsin Court of Appeals decisions both concluded

8      that the issuance of a John Doe DNA criminal

9      complaint and warrant for arrest are sufficient to

10     commence prosecution for purposes of the statute of

11     limitations.

12             So there were two Court of Appeals

13     decisions approving this procedure before we got to

14     the, "hit" in the case that is before us now with

15     Mr. Washington.   And that happened last summer.   We

16     were notified that there was a "hit" out of the

17     data bank.   Detective Gaglione here was notified of

18     that by the State Crime Lab and as we have done in

19     all of these cases, Detective Gaglione brought me

20     an information, an amended criminal complaint was

21     issued and that it was done a little differently

22     than the other cases.   Every other case the

23     individual was an inmate in the State of Wisconsin

24     prison system.

25             So we therefore did what was called

```
1        an order to produce.  This was a little different

2        because Mr. Washington was in the state of

3        Illinois.  He was not in the Wisconsin prison

4        system and he was out on the streets having been

5        released from the Illinois state prison.  So we

6        then issued the amended information, the amended

7        criminal complaint substituting the name of Rodney

8        Washington for the DNA profile on the original

9        criminal complaint.  And as you can see the

10       caption, I worded this a little differently than

11       the others.  It is Rodney Washington.  Gives his

12       date of birth, and I have it listed as formally

13       known as John Doe #5, unknown male with matching

14       the deoxyribonucleic profile at the genetic

15       locations and I also included some more information

16       and further identified with matching DNA profile

17       genetic locations and those following genetic

18       locations are the newer STR which were done.

19                     So this was even a more complete

20       description of Mr. Rodney Washington.  But we knew

21       that the U.S. Marshall's would have to pick him up

22       and we would be going to the Illinois courts to

23       have him extradicted back.  So that's why we issued

24       the amended criminal complaint.  And commissioner

25       Slagle signed the warrant for us to go down to
```

1       Illinois and pick him up.

2                   THE COURT:  Okay.

3                   DEFENDANT:  Your Honor, I would like

4       to respond to that.  On CCAP it's got down 3-16,

5       2000.  Arrest warrant issued by court official John

6       Dimotto.  Court Reporter was Sakora, David on 3-16,

7       2000.  The arrest warrant was issued for

8       Washington's arrest.  This was on CCAP.

9                   Whereas let the record reflect that

10      the complaint wasn't filed until 3-17, 2000 which

11      makes that arrest warrant invalid because there

12      never was a warrant issued on the complaint which

13      the complaint wasn't filed until March 17th, 2000.

14                  THE COURT:  Whether it was done on

15      March 16th or March 17th, it was still within the

16      --

17                  THE COURT:  They were still within

18      the required statute of limitations.

19                  DEFENDANT:  The complaint was

20      filed.  A complaint does not stop the statute of

21      limitations from running stated by Shirley

22      Abrahamson in the Jennings case.  They tried that

23      case and a complaint does not stop the statute of

24      limitation from running.  The warrant was invalid.

25      It was issued without a complaint even being

                              23

1     filed.  On the date of August 16th that warrant was

2     invalid back then, and I think that stuff was just

3     put into the computer just last year anyway.

4                 MR. GAHN:  Your Honor, the last time

5     we addressed this issue briefly in court, I filed

6     with the court that original warrant and it should

7     be in your file.  And it clearly will show that

8     Judge John Dimotto signed that warrant and attached

9     to it is the criminal complaint.

10                DEFENDANT:  We also have these

11    warrants over here.  The first one that was filed,

12    Your Honor, is a warrant with no seal, court seal

13    on it.  Haven't been filed with the court and for

14    the record I would like for you to look at these

15    warrants, Your Honor.  I have them right here.

16                MR. ANDERSON:  It is attached to

17    the -- The one without the seal is attached to my

18    motion on this issue.

19                DEFENDANT:  Yeah, it is attached

20    where the lawyer here put in a motion to dismiss

21    this case because of the defective warrants that

22    was issued with no court seal, no filing date

23    stamped on it or anything.  Whereas when it was

24    brought to the court's attention, Norman Gahn on

25    the date of March 3rd issued warrants with a seal

24

1          on it saying that it is the original.  Whereas the

2          original is completely different from the copy of

3          the original which makes it impossible for it to be

4          the original.

5                    THE COURT:  There was a John Doe

6          warrant that was issued on March 16, 2000, by Judge

7          Dimotto.  And it was given a case number and with

8          the profile on it.  That's in the file along with

9          the attached criminal complaint.  It appears that

10         on that date, there was a criminal complaint that

11         was issued which is a John Doe that was marked as

12         the state stated was number five of a genetic

13         profile that was filed and commenced within the

14         statutory time period.  And subsequently in 2007

15         there was apparently a hit from the data bank as to

16         Mr. Washington.  And then a complaint was amended

17         to include Mr. Washington's name for the reasons

18         stated on the record.

19                    Based upon what everybody has said,

20         and the court believes again if I haven't done so

21         already that it was filed within the statutory

22         period.

23                    DEFENDANT:  The complaint was filed.

24                    THE COURT:  That commenced the

25         action.

25

( Exhibit 6 A )

STATE OF WISCONSIN          CIRCUIT COURT          MILWAUKEE COUNTY
                              BRANCH 12

STATE OF WISCONSIN,

             Plaintiff,

     v.                          JAN 1 1 2012          Case No. 2000CF1310

RODNEY WASHINGTON,

           Defendant.

## STATE'S RESPONSE TO DEFENDANT'S POST HEARING FILINGS

The State is compelled to respond to the defendant's two post hearing filings (Defendant's Post Hearing Response, hereinafter PHR, dated October 22, 2011 and the Affidavit of Dr. Greg Hampikian, dated November 17, 2011), because the defendant in those filings states misleading information.

In the PHR at page 2, the defendant suggests that autorads should have been attached to the criminal complaint. The defendant furnishes an example of such autorads by including attachments to his brief. The defendant's example makes no sense whatsoever. The attached autorads pertain to some unknown case involving a comparison between an apparent evidentiary DNA sample and two suspects. They have absolutely no relevance to the case before this court. Each of the autorads shows degradation of various samples and unclear and non-distinct size markers, as well as artifacts that complicate interpretation. The examples themselves display the inherent problems of attaching such information. This example provided by the defendant shows the weakness of his argument. How would the attachment of these autorads further identify John Doe? As the State pointed out in its Post Hearing Memorandum, dated October 6, 2011, at page 4, no matter how well a warrant describes someone; extrinsic information will be needed to execute it. In other words, a cold hit out of the databank followed by a comparison with a confirmation sample from the defendant. Clearly, attached autorads in the hands of a police officer mean nothing. In truth, the attachment of autorads unnecessarily complicates the

procedure. For instance, the defendant has as one of his attachments an autorad from D16S85. This genetic marker was not used by the Wisconsin State Crime Lab. If a jurisdiction does not test for a certain genetic marker, what relevance does it have in the identification of John Doe? The defendant states in his response that he was "unable to secure the autorads created in this case …" (PHR at page 2). The question then becomes why the defendant was unable to examine the autorads in this case. The discovery in this case was available from the trial attorney. The trial attorney is available as he testified at the September 29, 2011 hearing before this court. If the defendant had gone to the trouble of examining the DNA test results in this case, he would have realized that autorads were not produced, but lumigraphs. Autorads and lumigraphs are similar. If the defendant did secure the lumigraphs in this case, he knows that his argument to attach them to the criminal complaint would be difficult to propose, if not impossible to accomplish. How would the defendant go about attaching the lumigraphs to the criminal complaint? The Washington case involved 5 victims of sexual assault. There were approximately 85 lumigraphs produced among the 5 sexual assault cases. Over 30 of the lumigraphs were sized. Which lumigraphs would the defendant suggest be attached to the criminal complaint? All 85? Only all sized lumigraphs? Or, just some of the sized lumigraphs? If only some of the sized lumigraphs, which ones? Even if all of the lumigraphs were attached to the criminal complaint, what difference would it make? At the end of the day, the only way that John Doe #5 was going to be caught was through a DNA databank hit followed by securing a confirmation sample from this convicted offender for final comparison. The unnecessary attachment of the lumigraphs in this case would make the John Doe DNA warrant procedure unwieldy. It would be an unnecessary, cumbersome requirement. The State recognized this and crafted the RFLP John Doe DNA warrants to account for specificity and particularity by requiring that John Doe have the "matching DNA profile" at the designated genetic locations listed. Please see State's Post Hearing Memorandum, dated October 6, 2011, for a more thorough explanation of the RFLP John Doe warrant and criminal complaint.

By letter dated November 22, 2011, the defendant supplied the court with an affidavit from Dr. Greg Hampikian. This affidavit again shows the weakness of the defendant's argument. Dr. Hampikain, in his affidavit at paragraph 3, describes the RFLP technique as a procedure that measures variances at the designated loci. The State agrees. At the September 29, 2011 hearing, the defendant's expert, Karen Daily, also testified about the measurement variances and recalled how different length fragments were binned according to a lab's match criteria. Karen Daily

noted that the current DNA STR technology with its identifying numbers representing allelic repeat sequences that the defendant wants in this case was not possible with RFLP technology. Also, at paragraph 5 of his affidavit, Dr. Hampikian gives an example of how an RFLP profile "could be designated." Emphasis added. If the defendant had taken the time to review the DNA discovery and the lumigraphs in this case, he would know that, as Dr. Hampikian states, the measured variances at the designated loci for the 5 different sexual assaults are different. Which variance would the defendant select? Or, would the defendant require 5 different tables be put in the caption of the warrant as in Dr. Hampikian's example at paragraph 5 of his affidavit? Furthermore, what numeric form, as suggested by Dr. Hampikian, should be used?   Dr. Hampikian apparently uses (kb) as his numeric form. If the defendant had reviewed the DNA data from this case, he would know that the Wisconsin State Crime Lab did not measure variances in kilobases (kb).   The State Crime Lab measures the variances and migration distances in base pairs. Other labs used other match criteria measuring techniques with the RFLP procedure. What numeric form does the defendant suggest be the proper form for a John Doe DNA warrant? Most noteworthy, Dr. Hampikain basically states in paragraph 4 of his affidavit exactly what the State did in this case and in the *Dabney* and *Davis* cases. What Dr. Hampikian describes as "[t]his allelic information" is what the State describes as the "matching Deoxyribonucleic Acid (DNA) profile" in its John Doe DNA warrant and complaint.   Dr. Hampikian further states that this information, whether one calls it allelic information or a matching DNA profile, together with the designated loci "created a DNA profile which could be matched to a specific individual..." Again, this is exactly what the state did when it required that John Doe #5, the unknown male, have the "matching Deoxyribonucleic Acid (DNA) profile at Genetic Locations D1S7, D2S44, D4S139, D5S110, D10S28, and D17S79."   Furthermore, Dr. Hampikian states in his affidavit at paragraph 4 that "This allelic information together with the designated loci created a DNA profile which could be matched to a specific individual with a calculated probability of exclusion." Again, this is exactly what the state did when it provided in the criminal complaint the statistical rarity of the matching DNA profile at the designated loci.

The defendant wants this court to believe that everyone made a mistake in this case. The defendant wants this court to find that a Milwaukee County Circuit Court Judge was wrong when he signed the John Doe #5 arrest warrant after reading the attached criminal complaint. The defendant wants this court to find that other Milwaukee County Circuit Court Judges at the trial court level were wrong in finding that the State met jurisdictional requirements with the John

Doe DNA warrant. The defendant wants this court to believe that Wisconsin Appellate court judges on two occasions in *Dabney* and *Davis* "mistook" the John Doe DNA warrant description and also made a mistake. (PHR, at page 4, 2nd full paragraph). The arrogance of the defendant's "mistook" characterization of thoughtful judicial reasoning is astonishing.

There has been no mistake in this case. In 1994 and 1995, five young girls/women on five separate occasions were taken off the streets of Milwaukee at gun point, forced to a remote area, and raped. The assailant left his semen at each scene. That semen was tested at the State Crime Lab and a DNA profile was developed. Shortly before the expiration of the statute of limitations, the State issued an arrest warrant and criminal complaint against the unknown male who would have the same matching DNA profile as the DNA profile developed from the semen from the 5 victims of rape. This DNA profile eventually resulted in a "cold hit" out of the DNA convicted offender databank and a subsequent DNA sample from that convicted offender, Rodney Washington, matched the DNA from the semen from all five rapes and Rodney Washington was determined to be the source of the semen. There is no mistake that Rodney Washington raped these five young victims. And now, based upon a case out of Kansas with flawed, bad facts and various dreamed up scenarios of how a John Doe DNA warrant should look, the defendant claims that the warrant and criminal complaint in his case were insufficient to confer jurisdiction. The defendant wants this court to accept his unfounded claim that all the judges who have looked at his case have made a mistake.

The State requests that this court reject the defendant's unwieldy, cumbersome, and unmanageable suggestions for what a John Doe DNA warrant and complaint should contain or for how a caption of a John Doe DNA warrant should read. Milwaukee County Circuit Court judges and Wisconsin Appellate Court judges have found that the manner in which the John Doe DNA warrant and criminal complaint filed in this case was proper. The State is asking this court to read the caption in the warrant and criminal complaint in this case in an uncomplicated and common sense fashion and apply established Wisconsin case law. Basically, a simple reading shows that the State, when it issued this case, was hoping that someday a DNA databank cold hit would identify the unknown male assailant who had the same, matching DNA profile at designated genetic locations as the DNA profile obtained from the semen from the 5 rapes cases, thereby preserving jurisdiction so that the assailant could be brought to justice.

Based upon the reasons detailed in this response brief and other briefs filed by the State, and based upon the previous two appellate court decisions in *Dabney* and *Davis*, wherein both courts ruled that the state is permitted to file a warrant and complaint which identifies the defendant only by his DNA profile, and that the issuance of a John Doe DNA criminal complaint and warrant is sufficient to commence prosecution for purposes of the statute of limitations, the State asks this court to conclude that trial counsel's failure to raise these issues did not constitute ineffective assistance of counsel.

Dated this 11th day of January, 2012.

Respectfully Submitted,

Norman Gahn
Assistant District Attorney
State Bar No. 1003025

821 West State Street
Milwaukee, WI 53233
414-278-4646

```
04/01/2016 15:38                WISCONSIN DEPARTMENT OF CORRECTIONS              PAGE   154 OF 481
DOC  TZ                          WISCONSIN SECURE PROGRAM FACILITY                      CABTASAE

                          T R U S T   A C C O U N T   S T A T E M E N T

                                FROM 03/01/2016 TO 03/31/2016
                          Monthly Account Transactions - Keep for your Records
                           New Menu issued 4/8/16 with Additions & Deletions
                              Some Price Increases Go in Effect 4/8/16

          DOC#: 00532165
          NAME: WASHINGTON, RODNEY
           DOB: 05/31/1958
      LOCATION: WSPF-C-R4-424-L
```

ACCOUNT BALANCES:

| SUB-ACCOUNT | 03/01/2016 START BALANCE | 03/31/2016 END BALANCE |
|---|---|---|
| REGULAR | 335.76 | 357.84 |
| RELEASE | 324.13 | 337.65 |
| TOTAL : | 659.89 | 695.49 |

HOLD: 0.00

DEBTS AND OBLIGATIONS:

| PAYABLE | INST | INFO NUMBER | OUTSTANDING AMOUNT | FIFO | % |
|---|---|---|---|---|---|
| COURT ORD OBLG (PAY ONLY) | WSPF | 2000CF001310 | 284.49 | Y | 25 |

ACCOUNT ACTIVITY:

| DATE | SUB ACCT | UNIT | TRANSACTION DESCRIPTION | RECEIPT/ INFO NUMBER | AMOUNT |
|---|---|---|---|---|---|
| 03/01/2016 | REG | | CANTEEN PURCHASES | | (15.51) |
| 03/02/2016 | REG | | CS  /PCA1 PRM/F-1 20 @0.37    02/14/16-02/27/16 | | 7.40 |
| 03/02/2016 | REG | | DEDUCTION - REGULAR ACCOUNT | | (0.74) |
| 03/02/2016 | REL | | ALLOCATION - RELEASE ACCOUNT | | 0.74 |
| 03/02/2016 | REG | | WITHHOLDING - COURT ORD OBLG (PAY ONLY) | 2000CF001310 | (1.67) |
| 03/02/2016 | REG | | CS  /PCA1 REG/F-1 60 @0.35    02/14/16-02/27/16 | | 21.00 |
| 03/02/2016 | REG | | DEDUCTION - REGULAR ACCOUNT | | (2.10) |
| 03/02/2016 | REL | | ALLOCATION - RELEASE ACCOUNT | | 2.10 |
| 03/02/2016 | REG | | WITHHOLDING - COURT ORD OBLG (PAY ONLY) | 2000CF001310 | (4.73) |
| 03/07/2016 | REG | | COPIES | | (0.60) |
| 03/08/2016 | REG | | CANTEEN PURCHASES | | (7.07) |
| 03/15/2016 | REG | | CANTEEN PURCHASES | | (6.50) |
| 03/16/2016 | REG | | CS  /PCA1 PRM/F-1 20 @0.37    02/28/16-03/12/16 | | 7.40 |
| 03/16/2016 | REG | | DEDUCTION - REGULAR ACCOUNT | | (0.74) |
| 03/16/2016 | REL | | ALLOCATION - RELEASE ACCOUNT | | 0.74 |
| 03/16/2016 | REG | | WITHHOLDING - COURT ORD OBLG (PAY ONLY) | 2000CF001310 | (1.67) |
| 03/16/2016 | REG | | CS  /PCA1 REG/F-1 60 @0.35    02/28/16-03/12/16 | | 21.00 |
| 03/16/2016 | REG | | DEDUCTION - REGULAR ACCOUNT | | (2.10) |
| 03/16/2016 | REL | | ALLOCATION - RELEASE ACCOUNT | | 2.10 |
| 03/16/2016 | REG | | WITHHOLDING - COURT ORD OBLG (PAY ONLY) | 2000CF001310 | (4.73) |
| 03/18/2016 | REG | | CHECK DISB. FROM REGULAR ACCT. | | (5.80) |
| | | | Payee: UNION SUPPLY COMPANY, INC. Check#: 38365 | | |
| 03/21/2016 | REG | | POSTAGE | | (6.80) |
| 03/21/2016 | REG | | COPIES | | (8.40) |
| 03/22/2016 | REG | | CANTEEN PURCHASES | | (9.97) |
| 03/28/2016 | REG | | MAIL ROOM RECEIPTS (AUTO) | WSPF0029520 | 25.00 |
| | | | Remitter: DORIS BRYANT | | |
| 03/28/2016 | REG | | DEDUCTION - REGULAR ACCOUNT | | (2.50) |
| 03/28/2016 | REL | | ALLOCATION - RELEASE ACCOUNT | | 2.50 |
| 03/28/2016 | REG | | MAIL ROOM RECEIPTS (AUTO) | WSPF0029521 | 25.00 |
| | | | Remitter: DORIS BRYANT | | |
| 03/28/2016 | REG | | DEDUCTION - REGULAR ACCOUNT | | (2.50) |
| 03/28/2016 | REL | | ALLOCATION - RELEASE ACCOUNT | | 2.50 |
| 03/29/2016 | REG | | CANTEEN PURCHASES | | (19.75) |
| 03/30/2016 | REG | | CS  /PCA1 PRM/F-1 20 @0.37    03/13/16-03/26/16 | | 7.40 |
| 03/30/2016 | REG | | DEDUCTION - REGULAR ACCOUNT | | (0.74) |
| 03/30/2016 | REL | | ALLOCATION - RELEASE ACCOUNT | | 0.74 |
| 03/30/2016 | REG | | WITHHOLDING - COURT ORD OBLG (PAY ONLY) | 2000CF001310 | (1.67) |

```
04/29/2016 15:30                 WISCONSIN DEPARTMENT OF CORRECTIONS           PAGE   137 OF 451
DOCFTZ                           WISCONSIN SECURE PROGRAM FACILITY                    CABTASAE

                            T R U S T   A C C O U N T   S T A T E M E N T

                                   FROM 04/01/2016 TO 04/29/2016
                                     Monthly Account Statement
                                       Keep for your Records
                         Item #0767 Facial Tissue - limit change to 5 for GP inmate only


          DOC#: 00532165
          NAME: WASHINGTON, RODNEY
           DOB: 05/31/1958
      LOCATION: WSPF-C-R4-424-L
```

ACCOUNT BALANCES:

| SUB-ACCOUNT | 04/01/2016 START BALANCE | 04/29/2016 END BALANCE | |
|---|---|---|---|
| REGULAR | 357.84 | 354.88 | |
| RELEASE | 337.65 | 345.33 | |
| TOTAL : | 695.49 | 700.21 | HOLD: 0.00 |

DEBTS AND OBLIGATIONS:

| PAYABLE | INST | INFO NUMBER | OUTSTANDING AMOUNT | FIFO | % |
|---|---|---|---|---|---|
| COURT ORD OBLG (PAY ONLY) | WSPF | 2000CF001310 | 271.69 | Y | 25 |

ACCOUNT ACTIVITY:

| DATE | SUB ACCT | UNIT | TRANSACTION DESCRIPTION | RECEIPT/ INFO NUMBER | AMOUNT |
|---|---|---|---|---|---|
| 04/01/2016 | REG | | MEDICAL CO-PAY - RN ASSESSMENT 3/31/16 | | (7.50) |
| 04/05/2016 | REG | | CANTEEN PURCHASES | | (5.51) |
| 04/08/2016 | REG | | CANTEEN REFUND 4/05/16 | | 1.55 |
| 04/12/2016 | REG | | CANTEEN PURCHASES | | (15.92) |
| 04/13/2016 | REG | | CS  /PCA1 PRM/F-1 20 @0.37    03/27/16-04/09/16 | | 7.40 |
| 04/13/2016 | REG | | DEDUCTION - REGULAR ACCOUNT | | (0.74) |
| 04/13/2016 | REL | | ALLOCATION - RELEASE ACCOUNT | | 0.74 |
| 04/13/2016 | REG | | WITHHOLDING - COURT ORD OBLG (PAY ONLY) | 2000CF001310 | (1.67) |
| 04/13/2016 | REG | | CS  /PCA1 REG/F-1 60 @0.35    03/27/16-04/09/16 | | 21.00 |
| 04/13/2016 | REG | | DEDUCTION - REGULAR ACCOUNT | | (2.10) |
| 04/13/2016 | REL | | ALLOCATION - RELEASE ACCOUNT | | 2.10 |
| 04/13/2016 | REG | | WITHHOLDING - COURT ORD OBLG (PAY ONLY) | 2000CF001310 | (4.73) |
| 04/15/2016 | REG | | CHECK DISB. FROM REGULAR ACCT. | | (7.57) |
| | | | Payee: JACK L. MARCUS CO. Check#: 38547 | | |
| 04/19/2016 | REG | | CANTEEN PURCHASES | | (17.44) |
| 04/20/2016 | REG | | MAIL ROOM RECEIPTS (AUTO) | WSPF0029763 | 20.00 |
| | | | Remitter: TRACY WASHINGTON | | |
| 04/20/2016 | REG | | DEDUCTION - REGULAR ACCOUNT | | (2.00) |
| 04/20/2016 | REL | | ALLOCATION - RELEASE ACCOUNT | | 2.00 |
| 04/22/2016 | REG | | CANTEEN REFUND 2/19/16 | | 2.50 |
| 04/26/2016 | REG | | CANTEEN PURCHASES | | (9.39) |
| 04/27/2016 | REG | | CS  /PCA1 PRM/F-1 20 @0.37    04/10/16-04/23/16 | | 7.40 |
| 04/27/2016 | REG | | DEDUCTION - REGULAR ACCOUNT | | (0.74) |
| 04/27/2016 | REL | | ALLOCATION - RELEASE ACCOUNT | | 0.74 |
| 04/27/2016 | REG | | WITHHOLDING - COURT ORD OBLG (PAY ONLY) | 2000CF001310 | (1.67) |
| 04/27/2016 | REG | | CS  /PCA1 REG/F-1 60 @0.35    04/10/16-04/23/16 | | 21.00 |
| 04/27/2016 | REG | | DEDUCTION - REGULAR ACCOUNT | | (2.10) |
| 04/27/2016 | REL | | ALLOCATION - RELEASE ACCOUNT | | 2.10 |
| 04/27/2016 | REG | | WITHHOLDING - COURT ORD OBLG (PAY ONLY) | 2000CF001310 | (4.73) |

```
05/31/2016 15:02              WISCONSIN DEPARTMENT OF CORRECTIONS      PAGE   159 OF  448
DOCFTZ                         WISCONSIN SECURE PROGRAM FACILITY               CABTASAE

                         T R U S T    A C C O U N T    S T A T E M E N T


                              FROM 05/01/2016 TO 05/31/2016
                               Monthly Account Transactions
                                  Keep for your Records


         DOC#: 00532165
         NAME: WASHINGTON, RODNEY
          DOB: 05/31/1958
     LOCATION: WSPF-C-R4-424-L


   ACCOUNT BALANCES:                    05/01/2016       05/31/2016
              SUB-ACCOUNT             START BALANCE     END BALANCE
              REGULAR                     354.88          334.16
              RELEASE                     345.33          345.94

                            TOTAL :       700.21          680.10          HOLD: 0.00


   DEBTS AND OBLIGATIONS:                               OUTSTANDING
              PAYABLE               INST   INFO NUMBER    AMOUNT    FIFO   %
              COURT ORD OBLG (PAY ONLY)   WSPF  2000CF001310   270.32     Y     25

   ACCOUNT ACTIVITY:
              SUB                                            RECEIPT/
   DATE      ACCT UNIT   TRANSACTION DESCRIPTION             INFO NUMBER          AMOUNT
   05/03/2016 REG        CANTEEN PURCHASES                                        (2.24)
   05/10/2016 REG        CANTEEN PURCHASES                                        (7.39)
   05/10/2016 REG        CS  /PCA1 PRM/F-1 5 @0.37    04/24/16-05/07/16            1.85
   05/10/2016 REG        DEDUCTION - REGULAR ACCOUNT                              (0.19)
   05/10/2016 REL        ALLOCATION - RELEASE ACCOUNT                              0.19
   05/10/2016 REG        WITHHOLDING - COURT ORD OBLG (PAY ONLY)    2000CF001310  (0.42)
   05/10/2016 REG        CS  /PCA1 REG/F-1 12 @0.35   04/24/16-05/07/16            4.20
   05/10/2016 REG        DEDUCTION - REGULAR ACCOUNT                              (0.42)
   05/10/2016 REL        ALLOCATION - RELEASE ACCOUNT                              0.42
   05/10/2016 REG        WITHHOLDING - COURT ORD OBLG (PAY ONLY)    2000CF001310  (0.95)
   05/10/2016 REG        070 /VUN  NON/FUL 56 @0.00   02/20/11-05/07/16            0.00
   05/10/2016 REG        070 /VUN  OBS/FUL 8 @0.00    02/20/11-05/07/16            0.00
   05/17/2016 REG        CANTEEN PURCHASES                                        (6.22)
   05/20/2016 REG        CANTEEN REFUND 5-17-16 ORDER                              0.99
   05/24/2016 REG        CANTEEN PURCHASES                                        (7.05)
   05/25/2016 REG        070 /VUN  NON/FUL 80 @0.00   05/08/16-05/21/16            0.00
   05/31/2016 REG        CANTEEN PURCHASES                                        (2.88)
```

```
07/01/2016 15:35                 WISCONSIN DEPARTMENT OF CORRECTIONS              PAGE    16 OF 448
DOCFTZ                           WISCONSIN SECURE PROGRAM FACILITY                        CABTASAE

                        T R U S T   A C C O U N T   S T A T E M E N T


                               FROM 06/01/2016 TO 06/30/2016
                                 Monthly Account Transactions
                                    Keep for your Records


         DOC#: 00532165
         NAME: WASHINGTON, RODNEY
          DOB: 05/31/1958
     LOCATION: WSPF-A-R3-308-L


  ACCOUNT BALANCES:                          06/01/2016          06/30/2016
              SUB-ACCOUNT                  START BALANCE        END BALANCE

              REGULAR                           334.16             300.47
              RELEASE                           345.94             345.94
                                             ----------         ----------
                            TOTAL :             680.10             646.41            HOLD: 0.00


  DEBTS AND OBLIGATIONS:                                    OUTSTANDING
              PAYABLE                     INST   INFO NUMBER     AMOUNT   FIFO    %
              COURT ORD OBLG (PAY ONLY)   WSPF   2000CF001310    270.32    Y     50

  ACCOUNT ACTIVITY:
              SUB                                                RECEIPT/
  DATE        ACCT UNIT   TRANSACTION DESCRIPTION                INFO NUMBER      AMOUNT
  06/07/2016  REG         CANTEEN PURCHASES                                      (13.74)
  06/07/2016  REG         070 /VUN  NON/FUL 72 @0.00   05/22/16-06/04/16           0.00
  06/14/2016  REG         CANTEEN PURCHASES                                       (6.77)
  06/21/2016  REG         CANTEEN PURCHASES                                       (8.18)
  06/22/2016  REG         070 /VUN  NON/FUL 80 @0.00   06/05/16-06/18/16           0.00
  06/22/2016  REG         KWIK TRIP DUNKERS                                       (5.00)
  06/28/2016  REG         CANTEEN PURCHASES                                      (13.40)
  06/30/2016  REG         CANTEEN REFUND 6/27/2016                                13.40
```

```
07/29/2016 14:09                    WISCONSIN DEPARTMENT OF CORRECTIONS          PAGE    170 OF  447
DOCMFI                              WISCONSIN SECURE PROGRAM FACILITY                     CABTASAE

                         T R U S T   A C C O U N T   S T A T E M E N T


                               FROM 07/01/2016 TO 07/29/2016
                               Monthly Account Transactions
                                  Keep For Your Records


          DOC#: 00532165
          NAME: WASHINGTON, RODNEY
           DOB: 05/31/1958
      LOCATION: WSPF-D-R1-116-L


   ACCOUNT BALANCES:                        07/01/2016        07/29/2016
               SUB-ACCOUNT                 START BALANCE      END BALANCE
               REGULAR                          300.47           270.38
               RELEASE                          345.94           346.05
                                              _____       _____
                                   TOTAL :       646.41           616.43         HOLD: 0.00


   DEBTS AND OBLIGATIONS:                                     OUTSTANDING
               PAYABLE                     INST   INFO NUMBER    AMOUNT   FIFO    %
               COURT ORD OBLG (PAY ONLY)   WSPF   2000CF001310    269.85   Y     50

   ACCOUNT ACTIVITY:
               SUB                                               RECEIPT/
   DATE        ACCT UNIT   TRANSACTION DESCRIPTION               INFO NUMBER          AMOUNT
   07/05/2016  REG         CANTEEN PURCHASES                                         (13.40)
   07/06/2016  REG         070 /VUN   NON/FUL 40 @0.00  06/19/16-07/02/16              0.00
   07/06/2016  REG         070 /VUN   TLU/FUL 8 @0.00   06/19/16-07/02/16              0.00
   07/06/2016  REG         070 /DS    REG/FUL 32 @0.00  06/28/16-07/02/16              0.00
   07/18/2016  REG         POSTAGE                                                    (0.68)
   07/19/2016  REG         CANTEEN PURCHASES                                          (8.15)
   07/20/2016  REG         070 /INVU  IUN/FUL 21 @0.05  03/29/15-07/16/16              1.05
   07/20/2016  REG         DEDUCTION - REGULAR ACCOUNT                                (0.11)
   07/20/2016  REL         ALLOCATION - RELEASE ACCOUNT                                0.11
   07/20/2016  REG         WITHHOLDING - COURT ORD OBLG (PAY ONLY)  2000CF001310      (0.47)
   07/20/2016  REG         070 /DS    REG/FUL 48 @0.00  07/03/16-07/16/16              0.00
   07/26/2016  REG         CANTEEN PURCHASES                                          (8.33)
```

```
08/12/2016 14:11              WISCONSIN DEPARTMENT OF CORRECTIONS        PAGE  161 OF 422
DOCBJQ                        WISCONSIN SECURE PROGRAM FACILITY                 CABTASAE

                        T R U S T    A C C O U N T    S T A T E M E N T


                                 FROM 08/06/2016 TO 08/12/2016
                                   WEEKLY ACCOUNT STATEMENT
                                     KEEP FOR YOUR RECORDS


           DOC#: 00532165
           NAME: WASHINGTON, RODNEY
            DOB: 05/31/1958
       LOCATION: WSPF-D-R1-116-L


   ACCOUNT BALANCES:                         08/06/2016        08/12/2016
                 SUB-ACCOUNT                 START BALANCE     END BALANCE
                 REGULAR                          261.91          252.15

                                 TOTAL :          261.91          252.15        HOLD: 0.00


   DEBTS AND OBLIGATIONS:                                    OUTSTANDING
                 PAYABLE                   INST   INFO NUMBER   AMOUNT  FIFO   %
                 COURT ORD OBLG (PAY ONLY)  WSPF  2000CF001310   268.27   Y    50

   ACCOUNT ACTIVITY:
                 SUB                                          RECEIPT/
   DATE         ACCT UNIT  TRANSACTION DESCRIPTION           INFO NUMBER        AMOUNT
   08/09/2016 REG          CANTEEN PURCHASES                                    (9.76)
```

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
OFFICE OF THE CLERK
219 SOUTH DEARBORN STREET
SUITE 2722
CHICAGO, ILLINOIS 60604


Dear Appeals Deputy,


        I am enclosing a Certificate of Appealability that was received by this office on
August 22, 2016. A review of our case index does not list a pending appeal in this case.



        We request that you file this as a Notice of Appeal. Please file this Notice of Appeal
using our received stamped date pursuant to F.R.A.P. 4(d).  Please forward a short record to this
court at your earliest convenience.  If you have already received this document, please disregard.



                Sincerely,
                Pro Se Clerk

fon # 53216 5

ogram Facility

53805-0900



TO: CLERK of COURT Agnello, Gino

United STATES COURT of APPEALS

(SEVENTh CircuiT) U.S. COURT HOUSE

219 So. DEARbORN St. INSPECTED

Chicago, IL. 60604 U.S. Marshals

8-18-16



ORITY
IL
STATES POSTAL SERVICE TM
usps.gov



**UNITED STATES POSTAL SERVICE®**

**USPS TRACKING #**

9114 9999 4431 3978 0035 13

